IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7-15-16
```

SADIS & GOLDBERG, LLP,

        Plaintiff,

v.

SUMANTA BANERJEE,

        Defendant.

Case No. 1:14-CV-913 (LTS)

## MOTION TO OPPOSE REQUEST FOR ADDITIONAL TIME FILED ON JULY 12, 2016

      Sumanta Banerjee, the defendant, respectfully submits the following response to the letter submitted to the Court by Sadis & Goldberg, Plaintiffs dated July 12, 2016.

      Mr. Banerjee opposes Mr. Hirsch's request for several reasons. Mr. Banerjee filed his Motion to Vacate Default Judgment with the *pro se* department of the US District Court of the Southern District of New York on April 25, 2016 and it was docketed on Aril 27, 2016.  In the letter to your Honor, Mr. Hirsch's associate admits that although the Plaintiff received the filing from the Court on May 2, 2016, he "inadvertently overlooked" the court filing. I'm sure your honor will agree thqt 2 ½ months is an excessively long time to "overlook" a court communication, as well as calling into question what suddenly alerted the Plaintiff that a response should be filed after the said 2 ½ months. As your Honor is aware, Mr. Hirsch (being a senior partner in the firm) should be the last person to ask the Honorable Court to "bypass and overlook" the Federal Rules of Civil Procedure ("FRCP")that govern and restrict the response time to a Motion to 14 days. The fact that two of the associates of the Plaintiff's firm were no longer at the firm is irrelevant as Mr. Hirsch, himself, received the Court communication.

Mr. Banerjee followed the FRCP as soon as he was aware of the Default Judgment and filed a timely motion. Mr. Hirsch, the Plaintiff and an attorney, was aware of the communication from the Court as per the *pro se* Rules (see exhibit A) but decided not to respond for 2 ½ months and now is suddenly asking the Court to "ignore" the FRCP rules, to his benefit thereby causing irreparable harm to the defendant, Mr. Banerjee. Mr. Hirsch should be held to the same standards as any defendant would be.

Secondly, the Plaintiff has no valid arguments in this baseless and meritless lawsuit that can be presented to your Honor, as the Plaintiff's own documents clearly state that the Complaint Papers as well as Default Papers were returned to sender (see exhibit B, Document 48, pg 79 of 81, attached), thereby proving that Mr. Banerjee never received the documents in question and were never served as required by the FRCP. The fact is, Your Honor, that proper service has not been effectuated on Mr. Banerjee (and he has highlighted all the deficiencies in Mr. Hirsch's specious arguments in his Motion to Vacate Default (see exhibit B, Document 48)).

Based on the above comments, Mr. Banerjee respectfully submits that Your Honor not grant the Plaintiff request for an extension and request that the Court hold an attorney to the Standards set forth in the Federal Rules of Civil Procedure.

DATED: July 14, 2016

Respectfully Submitted,
SUMANTA BANERJEE
*pro se*
58/1 Ballygunje Cir Road
Kolkata-700019
West Bengal
India

# EXHIBIT A

U.S. District Court • Southern District of New York

---

## Representing Yourself in Federal Court *(Pro Se)*

**Appearing *Pro Se***

The information on this site provides information to individuals who are representing themselves in the Southern District of New York without the assistance of an attorney. This website is intended as an informative and practical resource for these litigants and is not a substitute for legal advice from an experienced attorney. The information is procedural in nature and should be read in conjunction with the Federal Rules of Civil Procedure, the Local Rules of this Court and the Individual Practices of the judge assigned to your case.

When you are without an attorney, you are proceeding "pro se." If you represent yourself in Court, you are called a "pro se litigant" or a "self-represented litigant." "Pro se" is a Latin term, meaning "on one's own behalf"and a "litigant" is someone who is either suing someone or is being sued in court.

The right to appear pro se in a civil case in federal court is contained in a statute, 28 U.S.C. § 1654. Thus, anyone can appear pro se, and anyone who appears before the Court without an attorney is considered pro se. There are, however, certain limitations to self-representation, such as:

    A. corporations and partnerships must be represented by an attorney.

    B. a pro se litigant may not represent a class in a class action.

    C. a non-attorney parent may not appear pro se on behalf of a child, except to appeal the denial of the child's social security benefits.

**Notice To Pro Se Litigants**

**New ECF Rules 9.1 and 9.2 Regarding Service of Documents by Filing on the Electronic Case Filing (ECF) System**

After you mail or deliver a document to the Pro Se Intake Unit for filing, the Clerk's Office staff will scan and docket it onto the court's ECF system. The ECF system will then email all other parties who have lawyers, notifying them that you have filed a document. Those parties will then be able to get a copy of the document. This process for docketing on ECF is deemed to be service under Rule 5(b) of the Federal Rules of Civil Procedure. **Therefore, if your documents are docketed on ECF, you will not have to mail them to any other parties who have lawyers, and you will not have to attach an affirmation of service to those documents.**

So that your documents can be properly docketed on ECF, make sure that they are in the right format—they should have original signatures, a caption, and a title. The court provides form documents, including a form motion, for you to complete.

---

500 Pearl Street, New York, New York 10007-1312 • 300 Quarropas Street, White Plains, New York 10601-4150

# EXHIBIT B

Docket and File

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

SADIS & GOLDBERG, LLP,
Plaintiff,

v.

SUMANTA BANERJEE,

Defendant.

Case No. 1:14-CV-913 (LTS)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/27/16

RECEIVED
APR 27 2016
CHAMBERS OF
LAURA TAYLOR SWAIN
U.S.D.J.

## MOTION TO SET ASIDE DEFAULT JUDGMENT and MOTION TO VACATE DEFAULT

### and

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO SET ASIDE DEFAULT JUDGMENT

Respectfully Submitted,
SUMANTA BANERJEE

*Pro se Litigant*
*58/1 Ballygunje Circular Rd*
*Kolkata-19*
*West Bengal*
*India*
*Email: zbacllc@gmail.com*

1

## MOTION TO SET ASIDE DEFAULT JUDGMENT

Pursuant to Fed. R. Civ. P. 60(b), Defendant Sumanta Banerjee, a US citizen and resident of India at 58/1 Ballygunje Circular Rd, Kolkata -19 (Please Exhibit 1 Affidavit from Sumanta Banerjee), respectfully asks that the Court vacate the Default Judgment as void.  Mr. Banerjee recently found out about this lawsuit from a friend and had to go into the PACER system to extract all the specious claims of Mr. Douglas Hirsch ("Hirsch" or the "Plaintiff") and Sadis & Goldberg ("Sadis" or the "Plaintiff").  Mr. Banerjee is appearing *pro se* in the interest of time and has not had time to obtain legal representation.   Mr. Banerjee would respectfully submit that both Service of Process and the entry of the Default Judgment violated the Hague Convention.[1] The Default Judgment should also be vacated under Rule 60(b)(1)(2)(3). Additionally, the declaration from the Plaintiff, Sadis & Goldberg ("Sadis" or "Plaintiff") stating that Mr. Banerjee is in receipt of the Summons, Complaint and Judgment is clearly a blatant attempt to mislead this Court and violation of  FRCP Rule 4.

Furthermore, the claims are meritless and baseless since a pledge agreement was agreed upon as part of July 2008 Agreement in which the Plaintiff was expected to foreclose on Pledge Collateral (Mr. Banerjee's converted GP interest worth many multiples of the Sadis Invoice as of January 31, 2009).  This mechanism was built into the July Agreement after extensive verbal negotiations and was supposed to "settle" the invoice initially, avoid any lawsuit and "zero out" the Invoice when the Collateral would have paid cash to the Plaintiffs at or near the end of the Term of the GDF Fund where Mr. Banerjee was a 50% member of the General Partner.  Plaintiff

---

[1] The standard for setting aside the entry of default is lower than that for vacating a default judgment. *Brand Scaffold Builders, Inc. v. Puerto Rico Elec. Power Auth.*, 364 F. Supp. 2d 50, 54 (D.P.R. 2005).  Accordingly, if the Court vacates the Default Judgment, Mr. Banerjee asks that it also set aside the entry of default. The Articles of the Hague Convention are found in Exhibit 2, annexed hereto.

never foreclosed and chose to violate the July 2008 Agreement and waste the Courts' time with this frivolous lawsuit.

## I.   FACTS

The Court has been misled by the Plaintiff by not disclosing to the Court (see Attached Exhibit A) that the July 2008 Agreement had a mechanism where the invoice was "settled" by the Plaintiff triggering the Pledge Agreement (see email Exhibit B showing Douglas Hirsch had triggered it) and foreclosing on Mr. Banerjee's 50% share in Tuckerbrook|SB Global Distressed Fund GP.   The Plaintiff intentionally misled the Court and has wasted the Court's time by bringing this suit in violation of the Pledge Agreement and the July 2008 Agreement.   When the July 2008 Agreement was executed, Hirsch was expected to foreclose on the GP interest (the collateral) as payment for the invoices (see Exhibit C showing email exchange between Mr. Banerjee and Doug Hirsch).

Douglas Hirsch and his firm Sadis & Goldberg should face stiff penalties for gross misconduct and violation of ethics. The Plaintiff has not followed the Hague Convention Rules for Service Abroad, in this specific case and has misrepresented the facts in order to file a lawsuit in direct violation of the July 2008 Agreement.   Additionally, the declaration of service from the associate of Sadis is clearly a blatant attempt to mislead this Court—the package was never delivered and was returned to Sender as evident in the exhibits *of the Plaintiff*. The Default Judgment should also be vacated under Rule 60(b)(1)(2)(3) and the Court should dismiss all charges.   Mr. Banerjee is a victim of this "unethical" law firm and its "unethical" partner Mr. Douglas R. Hirsch and the Court should recognize that it has been misled with all the ex parte communication from the Plaintiff and hopefully will set things right in the interest of Justice.

## BACKGROUND FACTS

1. Mr. Banerjee is an ivy league-educated investment professional. At the time of the initial case, in 2008, Banerjee was an investment portfolio manager who specialized in turnaround, distressed, restructuring, and credit investments. He had over 15 years in these fields and had worked for well-known investment advisors and investment banks, including JP Morgan, Evercore Partners and CommonFund.

2. In late 2005, Banerjee left CommonFund, where he had been serving as the managing director and portfolio manager for two distressed and credit-focused private equity fund of funds to start his own private equity/hedge fund of funds. Upon his departure from CommonFund, several of the investors followed him and invested in his new venture. Banerjee needed a partner to shoulder some of the start-up costs and the partner he chose was Tuckerbrook Alternative Investments ("TB").

3. Banerjee and TB had launched two funds in 2007, TB|SB Global Distressed Fund ("GDF") and TB|SB Global Special Situations Fund ("GSF"). TB and Banerjee were 50-50 partners of the General Partner and Banerjee was the 50% managing member of the two funds. Due to various disagreements with TB, Banerjee approached Sadis to resolve the issues between the two partners.  Ron Geffner's "incompetence" and desire to enrich the firm forced Mr. Banerjee into a legal battle for control of the Funds that Mr. Banerjee managed ($125MM). Due to Banerjee's disappointment of Geffner's handling of the case, Sadis gave Banerjee a $5,000 discount that was reflected in the July 2008 Agreement.

4. In July of 2008, after several conversations with Hirsch about the large bills that were accumulating, Hirsch intimated that he would no longer represent Banerjee in this case until and unless he was paid. Banerjee had told Hirsch that he could not pay his inflated

bill and as a result Hirsch devised another form of payment using Banerjee's GP interest

in the Fund as collateral. Banerjee offered to give Hirsch his share of the fees from the GP

interest in GDF that Banerjee had co-managed. Hirsch readily and happily accepted

Banerjee's collateral which was expected to be worth many multiples of Hirsch's bills. The

agreement would allow for Hirsch to foreclose on the Collateral and "settle" the invoice,

avoid any lawsuit and "zero out" the Invoice when Sadis/Hirsch was paid the Incentive

Fees from GDF at the or near the end of the term of GDF.

5.  The July 2008 Agreement is attached hereto as Exhibit A. As the Court can see the second

page contemplates how the pledge agreement will be used to "settle and zero-out" the

amount that Banerjee owes to the Plaintiff.

> Finally your signature below will acknowledge that you will enter into an
> agreement that you will pledge your converted GP interest into limited
> partnership interest in GDF as collateral for any outstanding legal fees owed,
> should you fail to zero out your balance on or before September 30[th] 2008.
> **We will forward you a *pledge agreement* at that time for review by your
> personal counsel. The pledge agreement shall provide that Sadis &
> Goldberg LLP cannot foreclose on the interest until January 31[st] 2009.**
> **[emphasis added]**

Furthermore the Court should note that the Plaintiff intentionally omitted to include this

information about the July 2008 Agreement in all of the duplicate pleadings to the Court

and has misrepresented and misled the Court with this baseless lawsuit.

6.  Hirsch ensured that he got four additional clauses (1)Banerjee was agreeable to the invoice

till that date ($249,000); (2) Banerjee was happy with his work; and (3)Banerjee would

accept any Settlement that Hirsch deemed "reasonable"; and (4)Banerjee pay $25,000 from

the release of the funds which the Court had escrowed at the start of the litigation with TB.

Hirsch threatened to resign as counsel unless Banerjee accepted the July 2008 agreement

in its entirety as drafted by Hirsch and Sadis which included the above clauses.

7. The case between TB and Banerjee continued from April 2008 until Banerjee accepted a settlement agreement in September 2008. Once the escrowed fees were released at the end of 2008, Banerjee did pay Sadis the agreed upon amount of $25,000. The Plaintiff had billed an additional $130,000 after the signing of the July 2008 Agreement. Banerjee never agreed to that additional amount, but had no choice as per the July 2008 agreement as Sadis would foreclose on the collateral and offset any amount outstanding. Banerjee at the end of 2008, did not have gainful employment nor had he started another other fund.

8. As of January 31st 2009, Sadis had not sent Banerjee any Pledge Agreement as dictated by the terms of the July 2008 Agreement, nor had Sadis sent a foreclosure agreement and as a result had not foreclosed on the collateral. Please see Exhibit A annexed hereto as well as ¶ 5 above.

9. In January 2009, Banerjee and his family had moved to India for family reasons. From April 2009 to Oct 2009, Hirsch and Banerjee communicated several times about the assignment agreement, collateral, and the foreclosure of the collateral. It included,

> **April 21, 2009:**
> Hirsch to Banerjee---"Sam, I need to speak with you. I want to get your interest in the GDF Fund assigned to us and have them make the distributions to us as per our agreement. Please call me. Thank you.
>
> **July 21, 2009:**
> Hirsch to Banerjee--Sam, I will look at the bill- you are correct-nothing should have been recently added to the bill.
> However, if and when we receive assignment of the GP interest, it does not "settle" the bill. Once we are paid in full, from proceeds of the GP interest, or otherwise, will the bill be settled.
>
> I will work on finalizing the assignment paperwork with you in the next two weeks.
>
> **Sept 1, 2009:**
> Banerjee to Hirsch----I have not seen anything from you. Please send me the doc that directs the cash flows to be paid to you. I will take it to Alkek. Thx
>
> Hirsch to Banerjee---I have to draft it and I am on vacation. In the meantime, send me Scott's phone number so that I can get the info I need.

Banerjee to Hirsch----Scott will not talk to my counsel. Let me know what you need and I can get it for you. Alt, you can call his counsel and get what you need that way. I believe you have his counsels no.

**Oct 15, 2009:**

Banerjee to Hirsch ---See attached.  I was trying to get you the benchmarks--hence it took time.  I could not locate them.  Anyway, the Funds performance is in the top quintile for similar funds.  Also, keep in mind that valuations in PE land (FOF) are mostly one quarter lag --- in other words the valuation is for March 2009.  So the market rally from March 2009 onwards is not reflected in the numbers.

I thought you were supposed to send me the revised agreement -- have not received it yet. [Emails attached as Exhibit C]

As is evident from the emails included above, they were in agreement as to the process--regarding the payout procedure and the "settling and zeroing out" of the invoice through the foreclosure of the collateral as agreed upon in the July 2008 Agreement. Additionally, Banerjee was diligent in following up regarding the revised agreement that he was waiting for but never received. Though they communicated on other matters and despite Banerjee reminding Hirsch of the outstanding revised agreement, Hirsch never sent it. Banerjee had not heard from Hirsch until Banerjee called him in early in 2013 about another matter. Thereafter, it appears that Hirsch filed the first case-13cv-7355. This case has no merit because the July 2008 Agreement provide for a settlement of the invoice through the pledge agreement contemplated in the July 2008 agreement and the foreclosure of the collateral. **The plaintiff is clearly in breach of the July 2008 Agreement. Furthermore, the Court should note that the Plaintiff completely omitted any reference to this part of the July 2008 Agreement, thereby, misleading the Court. Hirsch has also misrepresented to the Court that Banerjee was supposed to pay his invoice in cash when this Agreement and its structure was created to "settle" the outstanding bill of the Plaintiff and avoid any lawsuit.  The entire purpose of the July 2008 Agreement, was to have form of**

payment for Sadis and Mr. Hirsch.  Mr. Banerjee had been explicitly clear that he could not pay Sadis's "inflated" bill and hence BOTH parties devised the mechanism to get Sadis/ Hirsch paid so they could continue as counsel in the case with Tuckerbrook.

10. The Plaintiff's first case, 13-cv-7355(LTS) was started in October 2013. Although the Plaintiff hired an investigator, the information that the investigator provided to the Plaintiff was incorrect. The investigator concluded that Banerjee was living in Pittsburgh, when in fact, Banerjee was still residing in India. When the processor did not find Banerjee, he harassed and terrorized Banerjee's children upon their return from school for several days until he could serve the papers on Mrs. Banerjee as an alternate to serving Banerjee. The processor harassed Mr. Banerjee's family and forced Mrs. Banerjee to take the complaint papers by having the processor accompanied by the local police despite Mrs. Banerjee reiterating that Banerjee **does not** live in Pittsburgh.  The next day, Mrs. Banerjee returned the papers to the Court and Hirsch based on advice of the Court. Mrs. Banerjee reiterated in the letter (Please see Exhibit D), again, that Banerjee **does not** live at 304 Harvester Cir. Pittsburgh, PA 15241; Banerjee in fact has resided in India at **58/1 Ballygunje Circular Road, Kolkata 700019, West Bengal India** since January of 2009. The Plaintiff was well aware of Mr. Banerjee's residence in India. Mr. Banerjee had communicated (from India) with Hirsch in **early 2013 on a different matter** prior to the filing of the first lawsuit, filed in October of 2013. Banerjee had no agenda to ever avoid service as he signed the July 2008 Agreement in good faith and Mr. Banerjee's wife provided the address for service.

11. The Central Authority received the papers of 13-cv-7355 in December of 2013 (the old dismissed case as of January 2014, Exhibit E). The Central Authority did not serve the

papers to Mr. Banerjee's address, rather they harassed and forced his ailing mother Dr. Reba Banerjee ("Dr. R"), who is over 80 years old to take the papers.  The date of the "service" of the papers served to Dr R was 1/2/2014, the British way of writing February 1, 2014. It can be inferred from the date stamp, [please see Exhibit F] these were papers from the dismissed case 13-cv-7355, rather than the new case 14-cv-913, since the new case did not start until Feb 13, 2014. Furthermore, please see Exhibit G, the affidavit of Dr. R, who clearly states that her address is **Flat 142B, 58/1 Ballygunje Circular Road, Kolkata 700019, West Bengal India** while Banerjee's address has been, since January 2009, **58/1 Ballygunje Circular Road, Kolkata 700019, West Bengal India.** Dr. R's attorney, Mr.Kundu returned the papers (Exhibit H) of the old case to the Plaintiff on Feb 10, 2014, several days prior to the filing of the new case by the Plaintiff. The Court should note that Dr. R was incorrectly served at the incorrect address, papers from the old dismissed case, 13-cv-7355. Both Dr. R and Mr. Kundu reiterated in their Affidavit and letter pointed that Mr. Banerjee did not reside at her address and he was currently travelling abroad.

12. Mr. Banerjee was never served with papers from either case by the Central Authority. Please see Exhibit I, a filing of the Plaintiff's, document 8-2 Exhibit A, an email from Paulina Stamatelos, dated **May 01, 2014,** which says,

> "Given that we have yet to serve you by India's Central Authority, and you refuse to cooperate with us to agree to a preliminary pre-trial statement per the Court's Order that I have emailed and mailed you in March, do you agree to an adjournment of the May 16, 2014 Initial Conference Order?"

On June 12, 2014, Sadis filed a Certificate of Service purporting to show that the Complaint had been delivered to the address of Mr. Banerjee when in fact it had been delivered to Dr. Reba Banerjee ("Dr. R"), Mr. Banerjee's elderly mother. Additionally the papers that were

given to Dr R were not even the papers of the current case, 14-cv-913, they were papers of

the previous case, as evidenced by the dates of the Central Authority receipt.

13. It can be inferred by the time stamp that the package that the Plaintiff sent by FedEx in

March 2014 to the Central Authority were the papers associated with the current case, of

14-cv-913. Although the Plaintiff has NOT provided proof that the Central Authority ever

delivered those papers to Banerjee. Furthermore, the Plaintiff has not provided any proof

to the Court that they have made *every reasonable effort*, for at least 6 months, to obtain a

Certificate of Service on the current case. Accordingly, the plaintiff has violated Article 15

of the Hague Convention. Please see correspondence between the Plaintiff and Central

Authority, included as Exhibit J ,that shows clearly that the Plaintiff has only conversed

with the Central Authority on June 4, 5, and 8 of 2014; hardly the 6 months required by the

Articles of the Hague Convention and hardly a "reasonable" effort after mailing the Central

Authority on March 18, 2014 (less than three months).   No proof of any further

communication or "reasonable effort" to reach the Central Authority in India is shown

anywhere in the Court filings.

14. In the current case, 14-cv-913, there are also factual inconsistencies, proof of unethical

behavior, and outright perjury.

   a. The Plaintiff lack of moral and ethical standards are evidenced by their behavior.

     Banerjee found the case and all its exhibits through the Pacer system after being

     alerted by one of his friends. During his research, Banerjee discovered that the

     Plaintiff also **maliciously** included in **4 separate docket filings**, all of Banerjee's

     personal information, including his **date of birth, his full name and personal**

     **details, and most importantly, his full social security number**. This has no

relevance to this lawsuit and it seems like a purely malicious act by Sadis and Hirsch. This information has exposed Mr. Banerjee to grave danger from identity thieves and the like. Although the Plaintiff has just recently, April 20, 2016, stricken the information, after Mr. Banerjee's wife called the Company that Sadis hired, Compinstall, Inc., and alerted them to the fact that highly confidential personal information was in public domain for over 3 years. The Plaintiff demonstrated a complete lack of regard of confidentiality of the personal information given to him by the private investigator, bringing into question and doubt the ethical and moral standards for the entire firm of Sadis & Goldberg and its partner, Douglas R Hirsch. This action is a clear violation of Fair Credit Reporting Act (FCRA) and Banerjee is taking steps to notify the Federal Trade Commission as well as the Bar Association of New York.

b. The plaintiffs have included as proof of service several invoices of FedEx but none of the packages were ever received by Banerjee. The package, in March of 2014, that was "mailed" through FedEx was marked by FedEx as "refused by receipt". Banerjee never received this package (see Banerjee Affidavit , Exhibit 1). Again, as mentioned previously and subsequently receipt of documents via regular postal channels is not permitted as per the Article 10 of the Hague Convention as it applies to India.

c. The next package sent also by FedEx, sent out on 7th July 2014 was never delivered, shows clearly that there was a **Delivery exception**. In the *Declaration of Michelle Tanney*, Plaintiff's docket #34, annexed as Exhibit K, she states,

"9.Annexed as Exhibit H is a FedEx tracking order dated July 7, 2014, **confirming delivery of the Summons and Complaint to Defendant**" (emphasis added)

Furthermore, the Court used Ms. Tanney's perjurious declaration as support for proof of delivery of the documents to Banerjee.

d.   Another example of the unethical behavior of the law firm Sadis & Goldberg was the blatant padding of the legal invoices that were provided to the Court as proof of the hours worked in order to file this lawsuit. The hours and amounts listed below were supported in affidavits by the Sadis & Goldberg, its partners and associates, Hirsch, Tanney, Stamatelos and other members of the Plaintiff.  In filings by the Plaintiff, docment#40-6 (Exhibit L) which is a bill for professional services dated Jan 8, 2015, on Page 6,

| 3/14/2014 | PS | Banerjee service of court order; discussion With E. Gitlin re:payment plan/affidavit of judgment. |
| 3/18/2014 | PS | Review Banerjee documents; Gitlin Stipulation issues; and review procedures for filing Ehrman confession of judgment. |
| ...... | | |
| 4/8/2014 | PS | Haft settlement; banerjee motion. |
| .......... | | |
| 6/4/2014 | PS | Manzella complaint; banerjee motion |
| ...... | | |
| 6/9/2014 | PS | Finalize and efile collection complaint against Manzella; finalize draft motion to deem service effected in S. Banerjee collection matter. |

*(amounts of each entry omitted, approximately $9,000, Exhibit L)*

Ehrman, Haft, Manzella and Gitlin are not attorneys at Sadis & Goldberg, rather they appear to be clients of Sadis. The question then becomes—why are those names listed on an invoice for Mr.Banerjee. None of those names have anything to

do with Mr. Banerjee or his case(s). Yet another example of lack of ethical standards that govern the firm of Sadis & Goldberg.

e.  Hirsch and Sadis make repeated references to "8" cases in the Pacer electronic filing system. Another example of obfuscating the situation to mislead the Court. The Cases referred to in Plaintiff's docket number 8-11, are all in MA Court system with the same Plaintiff, the ex-Partner of Mr. Banerjee, Tuckerbrook Alternative Investments. There are two other cases in the list which are not Mr. Banerjee's, even though the name is the same. Additionally, two of those listed cases have been filed by Hirsch and Sadis (one dismissed and one current).

In summary, this lawsuit filed by Sadis and Hirsch is a blatant example of baseless claims built on factual misrepresentations, omissions, flagrant disregard for the rules and regulations of the Hague Convention, perjury, malfeasance, misrepresentations and breach of the July 2008 Agreement.


## II.   <u>ARGUMENT</u>

The Court must set aside the Default Judgment because it is void as a matter of law and dismissal is non-discretionary under Rule 60(b)(4).   Proper service of process is a critical prerequisite to the exercise of personal jurisdiction over Mr. Banerjee, and as India is a signatory to the Hague Convention and has expressly objected to service in any other manner, the Court had no authority to order any other form of service.  Mr. Banerjee respectfully submits that the Court erred in allowing service via email because it based its decision on (1) Banerjee's address changed due to Mr. Banerjee's mothers affidavit.  Mr. Banerjee's address remains the same as in the Massachusetts litigation – the person from Central Authority went to the incorrect address of his mothers' which is Flat 142B, 58/1 Ballygunje Circular Rd and NOT 58/1 Ballygunje Circular Rd. (2) As Mr. Banerjee has stated in his Affidavit, he has not used the "sbaner@gmail.com" email

since 2013 as it has become populated with spam and junk. The court in Massachusetts has not communicated with him on this email nor has Mr. Banerjee communicated with the Court via this email since 2013. As a result, Mr. Banerjee was unaware that service was effectuated into this email since it is a "virtually defunct" email. Mr. Banerjee had to use the PACER system to retrieve all the documents when he was alerted recently about this case since he fully intends to fight the case on its merits. (3) The Court has allowed service by email pursuant to Article 10 of the Hague Convention (that it specifically does not address email) and FRCP 4(f)(3). However, the Hague Convention is exclusive and compliance with the Hague Convention is mandatory in all cases that it applies to. As Mr. Banerjee is a resident of India, the Articles of the Hague Convention do apply to him. That is, so long as the party to be served is located in a member state and no exception applies (e.g., Article 1 provides an exception where the address of the party to be served in not known), service of judicial and extrajudicial documents must be effectuated by means authorized under the Convention. Second, no provision under the Articles of the Hague Convention authorizes service by email.

In other words, the Court erred (probably due to the address issue) to find the Convention doesn't prohibit service by email, so it must be allowed under Article 10. Instead, service by such means is proper only if the Convention expressly permits it, and the only provision that might be seen as permitting such service is Article 10, which refers to "postal channels" (please bear in mind that the Convention was drafted in 1965 and was never amended, so it's no surprise it doesn't expressly refer to electronic mail), but India has formally objected to service under Article 10 in its entirety. Furthermore, Article 14 of the *Universal Postal Convention* defines "electronic mail" as "a postal service involving the electronic transmission of messages". This would fall under the "postal channel" that India has objected to in its entirety. Under Fed. R.Civ.P.4(f)3, Courts can

authorize service of process by email in particular cases as long as international agreement does not forbid it. As discussed above, since India has objected to Article 10 in its entirety, the Court should not be able to take personal jurisdiction over Mr. Banerjee in this case via improper email service. Absent service of process, the judgment is void and must be vacated under Rule.60(b)(4). In addition, the Default Judgment itself violates Article 15 of the Hague Convention, rendering it void.

The Default Judgment also should be vacated under Rule 60(b)(1)(2)(3) in view of the Court's legal errors as a result of misrepresentations by the Plaintiff in all *ex parte* communication so far and Mr. Banerjee's mistake, inadvertence, surprise or excusable neglect.

## A. The Default Judgment Is Void For Lack of Service and Must Be Vacated.

### 1.    A Judgment Based On Defective Service of Process Is Void.

Fed. R. Civ. P. 60(b)(4) requires a void judgment to be set aside:

> The governing principles are that a default judgment issued without jurisdiction over a defendant is void, that it remains vulnerable to being vacated at any time, and that such jurisdiction depends on the proper service of process or the waiver of any defect.

*M & K Welding, Inc. v. Leasing Partners, LLC*, 386 F.3d 361, 364 (1st Cir. 2004). *See also Shank/Balfour Beatty v. IBEW Local 99*, 497 F.3d 83, 94 (1st Cir. 2007)("When judgment is entered against an entity never properly served as a party to the case, the judgment is 'void' within the meaning of Rule 60(b)(4).")

Proper service of process is a prerequisite to the exercise of personal jurisdiction:

> Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied. ... [T]here must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There also must be a basis for the defendant's amenability to

15

> service of summons. Absent consent, this means there must be
> authorization for service of summons on the defendant.

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) (quotation omitted). *See*

*also Jardines Bacata, Ltd. v. Diaz-Marquez*, 878 F.2d 1555, 1559 (1st Cir.1989) ("the district court

acquires jurisdiction over a defendant only by service of process...."); *Williams v. Jones*, 11 F.3d

247, 254–55 n.11 (1st Cir. 1993) (vacating judgment and remanding for service of process).

Once service is challenged, it is the plaintiff's burden to prove proper service. *Rivera-*

*Lopez v. Municipality of Dorado*, 979 F.2d 885, 887 (1st Cir.1992).  Actual knowledge of the

lawsuit is insufficient. *Omni Capital* 484 U.S. at 104; *Precision Etchings & Findings, Inc. v. LGP*

*Gem, Ltd.*, 953 F.2d 21, 24 (1st Cir.1992).

Absent proper service, the court lacks jurisdiction, and any judgment is void.  Unlike other

Rule 60(b) grounds, a motion under Rule 60(b)(4) leaves no room for discretion:  if the judgment

is void, the Court must set it aside. *Echevarria-Gonzalez v. Gonzalez-Chapel*, 849 F.2d 24, 28 (1st

Cir. 1988); *See also* 11 Wright, Miller & Kane, *Federal Practice & Procedure* § 2862 (2d ed.)

("Either a judgment is void or it is valid [and] ... when that question is resolved, the court must

act accordingly.").

    2.    <u>The Hague Convention is Exclusive and Mandatory.</u>[2]

Where process must be served abroad and the foreign nation is a signatory, the Hague

Convention provides the mandatory and exclusive methods of service:

> Article 1 defines the scope of the Convention, which is the subject of
> controversy in this case. It says: "The present Convention shall apply
> in all cases, in civil or commercial matters, where there is occasion to
> transmit a judicial or extrajudicial document for service abroad." ...
> This language is mandatory, as we acknowledged last Term in *Société*
> *Nationale Industrielle Aérospatiale v. United States District Court*,
> 482 U.S. 522, 534, n. 15 ... (1987)....  Schlunk does not purport to

---

[2] The Hague Convention and India's formal reservations described below are attached as Exhibit 2.

16

> have served his on VWAG in accordance with the Convention.
> Therefore, if service of process in this case falls within Article 1 of
> the Convention, the trial court should have granted VWAG's motion
> to quash.

*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988). *See also id.* at 706

("Those who eschew its procedures risk discovering that the forum's internal law required

transmittal of documents for service abroad, and that the Convention therefore provided the

exclusive means of valid service.").

In *Société Nationale*, the Court contrasted the mandatory language of the Hague

Convention with that of the Hague Convention on Taking Evidence Abroad in Civil or

Commercial Matters and concluded that the latter was neither exclusive nor mandatory:

> As noted, *supra*, at 7, **the Service Convention** was drafted before the
> Evidence Convention, and its language **provided a model exclusivity
> provision** that the drafters of the Evidence Convention could easily
> have followed had they been so inclined. Given this background, the
> drafters' election to use permissive language instead is strong
> evidence of their intent.

482 U.S. at 533-34 (emphasis added).

The D. Mass Court has similarly held that service abroad in signatory states must comply

with the treaty. *See, e.g., Tabb v. Journey Freight Internations*, 584 F. Supp. 2d 334, 340 (D.

Mass. 2008) ("It is undisputed that … to make effective service in a country that has joined the

Hague Convention, a plaintiff must follow the provisions of the treaty.")(internal quotation

omitted).

Similarly, in *Marcantonio v. Primorsk Shipping Corp.*, 206 F.Supp.2d 54 (D. Mass. 2002),

the court vacated a default judgment where the plaintiff personally delivered the complaint to the

ship's captain and the company's counsel. The court held that Rule 4(f)(1) required service under

the Hague Convention and rejected the view that Rule 4(f)(2)(C)(i) authorized personal service.

206 F. Supp. 2d at 57-58 (quoting Advisory Committee Notes to 1993 Amendments to Rule 4(f)).

The court refused to order alternate service under Rule 4(f)(3):

> Nor is Marcantonio's alternative proposal, that this Court should ratify his attempt to serve Primorsk by mailing process to Primorsk's attorneys, convincing. ...The Advisory Committee Notes on the provision state:
>
> Paragraph (3) authorizes the court to approve other methods of service not prohibited by international agreements. The Hague Convention, for example, authorizes special forms of service in cases of urgency if convention methods will not permit service within the time required by the circumstances.... [Under some circumstances], the court may direct a special method of service not explicitly authorized by international agreement if not prohibited by the agreement.

*Id.* at 58. The court held that, absent such urgency, Rule 4(f)(3) was inapplicable. *Id.* at 58-59.

Sadis & Goldberg and Douglas Hirsch did not comply with the Hague Convention by not serving Mr. Banerjee at his correct address and instead serving his mother at her address. Also, it needs to be pointed out as per **Exhibit F**, that the documents that must have been served to Dr. Reba Banerjee, due to the date stamp of December 2013 from the Central Authority was case no 13-cv-7355 (cased filed in Oct 2013) (which was dismissed without prejudice) and not Case no. 14-cv-913 (current case filed on 2/13/2014). Plaintiff says they mailed current case to Central Authority in March (process takes six to nine months in India) but explains that that proper service would take time—which is no justification at all and moved to Court for Service under Fed. Rule 4(f) (3). *See Furukawa Elec. Co. v. Yangtze Optical Fibre & Cable Co.*, 2005 WL 3071244 (D. Mass. 2005) (that Hague Convention service may be "burdensome and expensive" does not excuse compliance). Plaintiff has not suggested that its claims were so urgent that "convention methods will not permit service within the time required by the circumstances." In fact, the Plaintiff has waited five (5) years to file this lawsuit, and hence cannot make a case for urgency.

In view of Plaintiffs failure to serve Mr. Banerjee under the Hague Convention, Mr. Banerjee

submits that the Court erred as a matter of law by ordering Plaintiff to serve via "electronic mail."

(Order of July 2014.)

> 3.  Even If Rule 4(f)(3) Applied, Neither Email Nor FedEx Are Permissible Methods of Service Under Rule 4(f)(3).

Even if the Hague Convention did not preempt Rule 4(f)(3), neither electronic mail nor

service via Fedex were permitted because both are "prohibited by international agreement."

Specifically, India has registered an objection to Article 10(a) of the Hague Convention, which

permits "sending" judicial documents via postal channels provided that the receiving state does

not object. *See* Exh. A ("India is opposed to the methods of service provided in Article 10.").[3]

Service via DHL is within the scope of Article 10(a) and is also prohibited.  Compare *Mones v.*

*Commercial Bank of Kuwait, S.A.K.*, 502 F. Supp. 2d 363, 370-71 (S.D.N.Y. 2007) (DHL service

prohibited where signatory objected to Art. 10), and *RSM Prod. Corp. v. Fridman*, 2007 WL

1515068, at *2 (S.D.N.Y. May 24, 2007) (same, for FedEx), *with EOI Corp. v. Med. Mktg. Ltd.*,

172 F.R.D. 133, 143 (D.N.J. 1997) (DHL is permitted service by mail where signatory has not

objected), *and R. Griggs Group Ltd. V. Filanto Spa*, 920 F. Supp. 1100, 1103 (D. Nev. 1996)(same,

for FedEx).  *Cf. Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 384 (5th Cir. 2002)

(Art. 10 did not permit service of process by mail at all); *Intelsat Corp. v. Multivision TV LLC*,

2010 WL 3368655, at *7 (S.D. Fla. Aug. 24, 2010) (same).[4]   The Court has allowed service by

---

[3] Available at: http://hcch.e-vision.nl/index_en.php?act=status.comment&csid=984&disp=resdn.

[4] Whether Art. 10 even authorizes service of process through the mail as opposed to merely "sending" non-process documents is unclear, but the only authority in this District holds that it does not. *See Golub v. Isuzu Motors*, 924 F. Supp. 324, 327 (D. Mass. 1996) (noting split of authority but holding service of process by mail not authorized). *See also Nuovo Pignone, supra*,; *Bankston v. Toyota Motor Corp.*, 889 F.2d 172, 174 (8th Cir. 1989) (service by registered mail not permitted); *Cooper v. Makita, U.S.A., Inc.*, 117 F.R.D. 16, 17 (D. Me. 1987) (same).

email pursuant to Article 10 of the Hague Convention (that it specifically does not address email)
and FRCP 4(f)(3). However, the Hague Convention is exclusive and compliance with the Hague
Convention is mandatory in all cases that it applies to. That is, so long as the party to be served is
located in a member state and no exception applies (e.g., Article 1 provides an exception where
the address of the party to be served in not known), service of judicial and extrajudicial documents
must be effectuated by means authorized under the Convention. Second, no provision under the
Articles of the Hague Convention authorizes service by email. In other words, the Court erred
(probably due to the address issue) to find the Convention doesn't prohibit service by email, so it
must be allowed under Article 10. Instead, service by such means is proper only if the Convention
expressly permits it, and the only provision that might be seen as permitting such service is Article
10, which refers to "postal channels" (please bear in mind that the Convention was drafted in 1965
and was never amended, so it's no surprise it doesn't expressly refer to electronic mail), but India
has formally objected to service under Article 10 in its entirety. Furthermore, Article 14 of the
*Universal Postal Convention* defines "electronic mail" as "a postal service involving the electronic
transmission of messages". This would fall under the "postal channel" that India has objected to
in its entirety. Under Fed. R.Civ.P.4(f)3, Courts can authorize service of process by email in
particular cases as long as international agreement does not forbid it. In *Agha vs Jacobs* (N.D. Cal
2008) service by email is inconsistent with the Hague Convention. As discussed above, since India
has objected to Article 10 in its entirety, the Court should not be able to take personal jurisdiction
over Mr. Banerjee in this case via improper email service. Absent service of process, the judgment
is void and must be vacated under Rule 60(b) (4).

### B. The Default Judgment Is Void under Article 15 Of The Hague Convention.

In addition, Mr. Banerjee respectfully submits that the Default Judgment itself violates the
Hague Convention, rendering it void. Article 15 strictly limits the availability of default

judgments.  The first paragraph of Article 15 provides that a default judgment "shall not be given until it is established that" either (a) the document was served "by a method prescribed by the internal law" of the recipient state for service in domestic actions (as specified in Article 5(a) of the treaty), or (b) that the document was actually delivered "by another method provided for by this Convention." (Hague Convention, Art. 15(a) – (b).)  Both sections require service through a method specified by the treaty – either service by the Central Authority itself in a manner prescribed by that country's internal law as specified in Article 5(a), or by "another method" specified in the treaty (*e.g.*, voluntarily via diplomatic/consular agents (Art. 8), using diplomatic/consular channels to forward complaint to Indian authorities (Art. 9), or Art. 10, if the recipient state does not object – as India has).[5]  Neither of these applies as Mr. Banerjee was never served at his residence and the Plaintiff merely sent the documents to the Indian central Authority in March 2014 and moved the Court in June 2014 (less than three months later) to serve Mr. Banerjee via email under FRCP 4(f)(3) in clear violation of Article 15 (Exhibit 2).

The second paragraph of Article 15 provides an "escape hatch" in case the pertinent Central Authority fails to serve the document, but only if *each* of three conditions are fulfilled:

> a) the document was transmitted by one of the methods provided for in this Convention,
>
> b) a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,

---

[5] There is little authority interpreting Article 15, which might be read as permitting a default judgment if the complaint is served in a manner prescribed by the internal law of the recipient country for domestic litigation, even if not done by that country's Central Authority under Art. 5(a).  Such an interpretation is implausible and would undermine the treaty by permitting default judgments where a plaintiff made no effort to comply but instead took it upon itself to serve the defendant as if it were being served in domestic litigation.  Rather, section (a) of the first paragraph of Art. 15 must be read in conjunction with Art. 5(a), consistent with the reference in the next section to "another method" specified by the treaty.

c) no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.

(Hague Convention, Art. 15, 2d ¶.) This paragraph plainly does not apply in this matter.

First, Plaintiff stated that Indian Central Authority served Mr. Banerjee's mother (with court documents in January 2014 which had to be the 13-cv-7355 case) and then Plaintiff supposedly mailed the documents in March 2014 to the Indian Central Authority to serve Mr. Banerjee through the Hague Service Convention, a process known to take up to nine months or more (after they were returned by Mr. Banerjees Mothers counsel ( see Exhibit G & H affidavit of Dr. Reba Banerjee and Mr. Kundu, Dr. Banerjee's counsel)).  Plaintiff then moved the Court to serve by alternate means via email in June 2014 without waiting for six months as required by Article 15. Plaintiff has not asserted that they routinely followed up and "exhausted all reasonable means" on the Complaint to the Indian Central Authority under the treaty, and it has produced no evidence to support such a conclusion.     Notably, the Plaintiffs' Affidavits in Support of the Request for Entry of Default does not mention that Mr. Banerjee was ever served by the Central Authority as required by the Hague Convention. Furthermore, Ms. Stamatelos, email to the Central Authority in Exhibit I shows that they had not been able to service Banerjee as required by the Hague Convention.

Second, absent evidence that the Plaintiff transmitted the Complaint under the treaty and of the date it purportedly did so (March 2014), the Court may not find that not less than six months has elapsed prior to moving for FRCP 4(f) (3).

Third, Plaintiff has not asserted that it made any effort at all to obtain the required proof of delivery, let alone that it made "every reasonable effort." In *Universal Trading & Inv. Co. v. Kiritchenko*, 2007 WL 660083 (N.D. Cal. Feb. 28, 2007), the plaintiff attested that he transmitted the complaint to the Antiguan Central Authority on August 2, 2000, and had "made various efforts

22

to obtain the Certificates."  The Court held that because he had not identified those "various efforts" beyond a single telephone call, the plaintiff had not expended "every reasonable effort" and therefore had not satisfied each requirement of Article 15. *Id.* at \*3 - \*4. In the current case, 14-cv-913, the Plaintiff has not asserted that they had made any effort, in fact, simply that that the process would take too long and so asked the Court to move that it was served because the Plaintiff had sent the documents to the Central Authority.

Accordingly, as Plaintiff has failed to satisfy any of the prerequisites to a default judgment under Article 15, the Hague Convention prohibited (and continues to prohibit) entry of the Default Judgment.  It is, therefore, void and must be set aside under Rule 60(b)(4).

C.       **The Court Should Vacate the Default Judgment Under Rule 60(b)(1) Because The Court Erred In Awarding Plaintiff the Amount of $383,448.90**

1.     The Court incorrectly awarded Plaintiff Amount despite July 2008 Pledge Agreement which settles the invoice And The Court Was Required to Hold a Hearing :

The Court was misled by Sadis' intentional omission of the clause within the July 2008 Agreement that allowed Banerjee to pledge his portion of the incentive fees to Hirsch as payment in full for the legal fees owed to the Plaintiff.  Sadis & Goldberg and Hirsch intentionally omitted to advise the Court of the Pledge Agreement which essentially allows the Defendant to "zero out" the invoice balance by allowing the Plaintiff to foreclose on his converted GP interest into LP interest in the GDF Fund.  This process was agreed upon in the Agreement with Mr. Banerjee's signature and despite the emails from Mr. Hirsch that he would be sending a foreclosure notice to foreclose on the LP Interest, he never did. Instead he chose to file his baseless and meritless lawsuit to recover his fees when the mechanism to do that has already been contractually agreed upon in

the July 2008 Agreement without any notice of the clauses of that Agreement that allowed Hirsch to foreclose.

      2.    The Court May Correct Its Mistake Of Law Under Rule 60(b)(1).

Rule 60(b)(1) allows relief from a judgment on the basis of "mistake, inadvertence, surprise, or excusable neglect." The First Circuit has held that, in the context of *non*-default judgments, Rule 60(b)(1) may not be used to correct a court's mistake of law. *Silk v. Sandoval*, 435 F.2d 1266, 1267-68 (1st Cir.1971). Other Courts of Appeal have held otherwise. *E.g., United Airlines, Inc. v. Brien*, 488 F.3d 158, 175 (2d Cir. 2009); *Benson v. St. Joseph Regional Health Center*, 575 F.3d 542, 547 (5th Cir. 2009); *Pierce v. United Mine Workers of Am.*, 770 F.2d 449, 451 (6th Cir. 1985); *Parks v. U.S. Life & Credit Corp.*, 677 F.2d 838, 839 (11th Cir. 1982). More recently, however, the First Circuit has suggested that, in the case of default judgment damage awards, a court may correct its error under Rule 60(b)(1).

> If *Silk* is correct about the limited scope of Rule 60(b) and so are the courts that say that Rule 59(e) may not be used to challenge a default judgment, then a party in default would never be able, by motion in the district court, to bring to that court's attention an error of law in the default judgment. Of course, the party could appeal the judgment to the court of appeals, but it would be odd and inefficient to preclude the party in default from first seeking relief based on error of law from the district court. ... That particular problem would be exacerbated if, as happened here, the defaulted party also failed to appear at the hearing on the amount of the default judgment. In such circumstances, the defaulting party could never get a hearing before the district court on its argument that the amount embodied in the default judgment is based on an error of law. That might make sense as a strong medicine to encourage parties not to default, but it also could lead to uncorrected basic legal errors.

*Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 189 (1st Cir. 2004).

Mr. Banerjee respectfully submits that, under *KPS*, the First Circuit will conclude that the failure to hold an evidentiary hearing was an abuse of discretion and will vacate and remand for a proper determination. As the *Venegas-Hernandez* court observed, this would be inefficient and

would deprive the Court of its ability to correct legal errors.  If the Court does not vacate the Default Judgment as being void, Mr. Banerjee asks that it vacate under Rule 60(b)(1) and hold the Plaintiff to its burden of proving why they have not foreclosed on the collateral as set out in the July 2008 Pledge Agreement and "settles" the invoice. Of course, Hirsch was well aware that they would have to wait till the end of the partnership to collect the collateral (Incentive compensation) and "zero-out" the invoice.

### D.  The Default Judgment Should Be Vacated Under Rule 60(b)(1)  On The Basis Of Mr. Banerjee's Mistake, Inadvertence, Surprise, Or Excusable Neglect.

Whether or not the Court ultimately agrees with Mr. Banerjee's position on service of process and voidness, he was completely unaware of the lawsuit or the Default Judgement since he was never served the papers.  His mother being served the old dismissed case papers by Central Authority mistakenly and his wife being served the old dismissed case papers does NOT constitute proper service. He was completely taken unaware and surprised when he found out recently about the Case 14-cv-913 in the Pacer System.  He was NOT aware about his "old practically defunct" email being served since he has used it very sporadically since 2013 and it is filled with spam and junk.  If the Court should disagree, Mr. Banerjee's failure to appear and defend was inadvertent, surprise, a good faith mistake, and due to excusable neglect, Rule 60 (b) (1).  Additionally, Rule 60 (b)(2)(3) should also apply here since the Court was unaware of the Pledge Agreement in the July 2008 Agreement (new evidence) due to the misrepresentation and omission committed by Sadis & Goldberg and Hirsch upon the Court and Mr. Banerjee  by intentionally NOT making the Court aware of the clause of the Pledge Agreement which "zeroes out" the Invoice of the Plaintiff through the mechanism agreed upon by BOTH parties in 2008.  The July 2008 Agreement was drafted by Sadis. The Plaintiff has violated the July 2008 Agreement by filing this suit and has dealt in bad faith with Mr. Banerjee.

Courts addressing Rule 60(b) motions consider various factors: (i) timeliness; (ii) exceptional circumstances; and (iii) the absence of unfair prejudice to the other party. *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co.*, 953 F.2d 17, 20 (1st Cir. 1992). The moving party must provide "reason to believe that vacating the judgment will not be an empty exercise" by showing that it has a "potentially meritorious claim or defense." *Id.* at 21. The court "should assume the truth of fact-specific statements contained in a Rule 60(b)[] motion and determine whether these facts, as alleged, warrant relief." *Marderosian v. Shamshak*, 170 F.R.D. 335, 338 (D. Mass. 1997).

Mr. Banerjee's motion is clearly timely. Rule 60(c)(1) sets a one-year limit for motions under Rule 60(b)(1), but otherwise requires only that they be filed within a reasonable time. Mr. Banerjee is filing this Motion immediately after learning of the Default Judgment from a friend and this memorandum is being filed as soon as he could complete it. Due to extremely short time frame in which to file these motions, Mr. Banerjee was forced to defend his position on a *pro se* basis. Exceptional circumstances exist because Mr. Banerjee was seriously prejudiced by the Plaintiffs refusal to comply with the Hague Convention (for this case having simply mailed this case to the Central Authority and moved the Court to serve a "defunct email address" in less than three months). In view of his *pro se* status, his diligence in making his arguments, and the preference for resolving matters on the merits, it would be a serious miscarriage of justice to deprive Mr. Banerjee of his right to defend. *See, e.g., Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.").

Sadis & Goldberg, a big law firm (who never foreclosed on the Collateral agreed upon to settle the Invoice for 5 years from 2008-2013 when they initiated the first dismissed lawsuit 13-cv-7355) will suffer no "unfair prejudice" if the Default Judgment is vacated and the case proceeds along the ordinary course. Moreover, Sadis & Goldberg is responsible for any delay, as it has deliberately chosen to bypass the Hague Convention procedures for this Case 14-cv-913. The Supreme Court warned against precisely this in *Schlunk*, 486 U.S. at 706 ("Those who eschew its procedures risk discovering that the forum's internal law required transmittal of documents for service abroad, and that the Convention therefore provided the exclusive means of valid service.").

Furthermore, Mr. Banerjee has meritorious defenses. Mr. Banerjee and Sadis & Goldberg signed the Pledge Agreement (part of the July 2008 Agreement) where the Mr. Banerjee negotiated the mechanism to "zero out" the Invoice. As mentioned previously the July 2008 Agreement was drafted by Sadis. The Email conversation between Mr. Hirsch and Mr. Banerjee in April and October of 2009 further shows that Mr. Banerjee was following the July Agreement and Mr. Hirsch had told him " the collateral is mine now" and " I am on vacation now and will send the Foreclosure Agreement". Please also note the rest of the conversation "Exhibits, B & C)". Count I (Account Stated), Count II (Goods Sold and Delivered), Count III (Breach of Contract), Count IV (Unjust Enrichment) and Count V(Quantum Meruit) are all related to nonpayment of the Invoice. Mr. Banerjee maintains that the Pledge Agreement was structured with a mechanism to foreclose on the collateral in order to settle the invoice and as a result all the Counts are baseless and meritless. Mr. Banerjee is not in breach of any agreement. Mr. Hirsch and the Plaintiff never foreclosed on the collateral despite Exhibit A and could have gotten paid with the Collateral as agreed upon in the July Agreement and subsequently ratified in the email conversation in 2009 ( Exhibit B & C). Mr. Hirsch it seems was dealing in bad faith all the time due to his actions and has been needlessly

27

wasting the Courts time and money.  Mr. Banerjee stands ready to litigate this baseless and

meritless lawsuit with his meritorious defenses and is hopeful that the Court will allow him the

opportunity to defend himself vigorously as he intends to do and counterclaim the Plaintiff as well.

## CONCLUSION

For the foregoing reasons, Mr. Banerjee requests that the Court: (i) vacate the Default

Judgment; (ii) set aside the Entry of Default against him; and (iii) order Sadis & Goldberg LLC to

promptly serve the Complaint (in this case) in accordance with the Hague Convention or have its

Complaint dismissed for lack of service or Order a Status Conference where Mr. Banerjee could

participate via telephone.

DATED: April 26, 2016

Respectfully Submitted,
SUMANTA BANERJEE
*pro se*
58/1 Ballygunje Cir Road
Kolkata-700019
West Bengal
India
*Email: zbacllc@gmail.com*

28

## Certificate of Service

I hereby certify that this document will be sent via email to Sadis &Goldberg.

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

SADIS & GOLDBERG, LLP,
        Plaintiff,

v.

SUMANTA BANERJEE,

        Defendant.

Case No. 1:14-CV-913 (LTS)

### Affidavit

1. I, Sumanta Banerjee, am over the age of 21, and have never been convicted of a felony, or crime of moral turpitude. I am otherwise competent to write this affidavit. The facts contained herein are true and correct and within my personal knowledge.

2. I learnt of the case through a concerned friend who notified me. After accessing the Pacer system, I realized that a response was needed from me. As a result of the short time frame by which I had to respond to the Court, I have been forced to file my responses on a *pro se* basis.

3. My permanent address in India is and has been the address 58/1 Ballygunje Circular Road, Kolkata- 19, West Bengal, India. I do travel a great deal.

4. The email that Hirsch and his firm constantly refer to in its pleadings was the email that I used to use to communicate until about 2013. Due to heavy spam emails into that box. I ceased to use that box and do not use it any longer.  Hence I received none of SG's emails.

5. The July Agreement annexed into the Plaintiff's pleadings, clearly memorializes a conversation that occurred in July 2008, just prior to the case moving to an Arbitrator's court for settlement. This Agreement which appears in the Plaintiff docket entries, #34,

1

exhibit G, ("July Agreement") also states at a Pledge Agreement will be drafted in order for Sadis to "settle" and "zero-out" the outstanding fees. This was never done.

6. The July 2008 Agreement and Pledge Agreement was done so that Sadis could recover fees without suing and for Banerjee to agree to Sadis' inflated fees without suing. Sadis had to wait until the Incentive Fees could be collected to "settle and zero-out" invoice.

7. I never received any FedEx packages from the Plaintiff despite claims otherwise.

Respectfully Submitted,

SUMANTA BANERJEE

*Pro se Litigant*
*58/1 Ballygunje Circular Rd*
*Kolkata-19*
*West Bengal*
*India*
*Email: zbacllc@gmail.com*

2

# EXHIBIT 2

## 14. CONVENTION ON THE SERVICE ABROAD OF JUDICIAL AND EXTRAJUDICIAL DOCUMENTS IN CIVIL OR COMMERCIAL MATTERS

*(Concluded 15 November 1965)*

The States signatory to the present Convention,

Desiring to create appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time,

Desiring to improve the organisation of mutual judicial assistance for that purpose by simplifying and expediting the procedure,

Have resolved to conclude a Convention to this effect and have agreed upon the following provisions:

### Article 1

The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad.

This Convention shall not apply where the address of the person to be served with the document is not known.

#### CHAPTER I – JUDICIAL DOCUMENTS

### Article 2

Each Contracting State shall designate a Central Authority which will undertake to receive requests for service coming from other Contracting States and to proceed in conformity with the provisions of Articles 3 to 6.

Each State shall organise the Central Authority in conformity with its own law.

### Article 3

The authority or judicial officer competent under the law of the State in which the documents originate shall forward to the Central Authority of the State addressed a request conforming to the model annexed to the present Convention, without any requirement of legalisation or other equivalent formality.

The document to be served or a copy thereof shall be annexed to the request. The request and the document shall both be furnished in duplicate.

### Article 4

If the Central Authority considers that the request does not comply with the provisions of the present Convention it shall promptly inform the applicant and specify its objections to the request.

### Article 5

The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency, either –

a) by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory, or

b) by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed.

Subject to sub-paragraph *(b)* of the first paragraph of this Article, the document may always be served by delivery to an addressee who accepts it voluntarily.

If the document is to be served under the first paragraph above, the Central Authority may require the document to be written in, or translated into, the official language or one of the official languages of the State addressed.

That part of the request, in the form attached to the present Convention, which contains a summary of the document to be served, shall be served with the document.

### Article 6

The Central Authority of the State addressed or any authority which it may have designated for that purpose, shall complete a certificate in the form of the model annexed to the present Convention.

The certificate shall state that the document has been served and shall include the method, the place and the date of service and the person to whom the document was delivered. If the document has not been served, the certificate shall set out the reasons which have prevented service.

The applicant may require that a certificate not completed by a Central Authority or by a judicial authority shall be countersigned by one of these authorities.

The certificate shall be forwarded directly to the applicant.

### Article 7

The standard terms in the model annexed to the present Convention shall in all cases be written either in French or in English. They may also be written in the official language, or in one of the official languages, of the State in which the documents originate.

The corresponding blanks shall be completed either in the language of the State addressed or in French or in English.

### Article 8

Each Contracting State shall be free to effect service of judicial documents upon persons abroad, without application of any compulsion, directly through its diplomatic or consular agents.

Any State may declare that it is opposed to such service within its territory, unless the document is to be served upon a national of the State in which the documents originate.

### Article 9

Each Contracting State shall be free, in addition, to use consular channels to forward documents, for the purpose of service, to those authorities of another Contracting State which are designated by the latter for this purpose.

Each Contracting State may, if exceptional circumstances so require, use diplomatic channels for the same purpose.

### Article 10

Provided the State of destination does not object, the present Convention shall not interfere with –
a) the freedom to send judicial documents, by postal channels, directly to persons abroad,
b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,
c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

### Article 11

The present Convention shall not prevent two or more Contracting States from agreeing to permit, for the purpose of service of judicial documents, channels of transmission other than those provided for in the preceding Articles and, in particular, direct communication between their respective authorities.

Article 12

The service of judicial documents coming from a Contracting State shall not give rise to any payment or reimbursement of taxes or costs for the services rendered by the State addressed.
The applicant shall pay or reimburse the costs occasioned by —

a)   the employment of a judicial officer or of a person competent under the law of the State of destination,
b)   the use of a particular method of service.

Article 13

Where a request for service complies with the terms of the present Convention, the State addressed may refuse to comply therewith only if it deems that compliance would infringe its sovereignty or security.
It may not refuse to comply solely on the ground that, under its internal law, it claims exclusive jurisdiction over the subject-matter of the action or that its internal law would not permit the action upon which the application is based.
The Central Authority shall, in case of refusal, promptly inform the applicant and state the reasons for the refusal.

Article 14

Difficulties which may arise in connection with the transmission of judicial documents for service shall be settled through diplomatic channels.

Article 15

Where a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and the defendant has not appeared, judgment shall not be given until it is established that —

a)   the document was served by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory, or
b)   the document was actually delivered to the defendant or to his residence by another method provided for by this Convention,
     and that in either of these cases the service or the delivery was effected in sufficient time to enable the defendant to defend.

Each Contracting State shall be free to declare that the judge, notwithstanding the provisions of the first paragraph of this Article, may give judgment even if no certificate of service or delivery has been received, if all the following conditions are fulfilled —

a)   the document was transmitted by one of the methods provided for in this Convention,
b)   a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,
c)   no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.

Notwithstanding the provisions of the preceding paragraphs the judge may order, in case of urgency, any provisional or protective measures.

Article 16

When a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and a judgment has been entered against a defendant who has not appeared, the judge shall have the power to relieve the defendant from the effects of the expiration of the time for appeal from the judgment if the following conditions are fulfilled

a)   the defendant, without any fault on his part, did not have knowledge of the document in sufficient time to defend, or knowledge of the judgment in sufficient time to appeal, and

b)   the defendant has disclosed a *prima facie* defence to the action on the merits.

An application for relief may be filed only within a reasonable time after the defendant has knowledge of the judgment.

Each Contracting State may declare that the application will not be entertained if it is filed after the expiration of a time to be stated in the declaration, but which shall in no case be less than one year following the date of the judgment.

This Article shall not apply to judgments concerning status or capacity of persons.

CHAPTER II — EXTRAJUDICIAL DOCUMENTS

## Article 17

Extrajudicial documents emanating from authorities and judicial officers of a Contracting State may be transmitted for the purpose of service in another Contracting State by the methods and under the provisions of the present Convention.

CHAPTER III — GENERAL CLAUSES

## Article 18

Each Contracting State may designate other authorities in addition to the Central Authority and shall determine the extent of their competence.

The applicant shall, however, in all cases, have the right to address a request directly to the Central Authority.

Federal States shall be free to designate more than one Central Authority.

## Article 19

To the extent that the internal law of a Contracting State permits methods of transmission, other than those provided for in the preceding Articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions.

## Article 20

The present Convention shall not prevent an agreement between any two or more Contracting States to dispense with —

a)   the necessity for duplicate copies of transmitted documents as required by the second paragraph of Article 3,

b)   the language requirements of the third paragraph of Article 5 and Article 7,

c)   the provisions of the fourth paragraph of Article 5,

d)   the provisions of the second paragraph of Article 12.

## Article 21

Each Contracting State shall, at the time of the deposit of its instrument of ratification or accession, or at a later date, inform the Ministry of Foreign Affairs of the Netherlands of the following –
a)      the designation of authorities, pursuant to Articles 2 and 18,
b)      the designation of the authority competent to complete the certificate pursuant to Article 6,
c)      the designation of the authority competent to receive documents transmitted by consular channels, pursuant to Article 9.

Each Contracting State shall similarly inform the Ministry, where appropriate, of –
a)      opposition to the use of methods of transmission pursuant to Articles 8 and 10,
b)      declarations pursuant to the second paragraph of Article 15 and the third paragraph of Article 16,
c)      all modifications of the above designations, oppositions and declarations.


### Article 22

Where Parties to the present Convention are also Parties to one or both of the Conventions on civil procedure signed at The Hague on 17th July 1905, and on 1st March 1954, this Convention shall replace as between them Articles 1 to 7 of the earlier Conventions.


### Article 23

The present Convention shall not affect the application of Article 23 of the Convention on civil procedure signed at The Hague on 17th July 1905, or of Article 24 of the Convention on civil procedure signed at The Hague on 1st March 1954.
These Articles shall, however, apply only if methods of communication, identical to those provided for in these Conventions, are used.


### Article 24

Supplementary agreements between Parties to the Conventions of 1905 and 1954 shall be considered as equally applicable to the present Convention, unless the Parties have otherwise agreed.


### Article 25

Without prejudice to the provisions of Articles 22 and 24, the present Convention shall not derogate from Conventions containing provisions on the matters governed by this Convention to which the Contracting States are, or shall become, Parties.


### Article 26

The present Convention shall be open for signature by the States represented at the Tenth Session of the Hague Conference on Private International Law.
It shall be ratified, and the instruments of ratification shall be deposited with the Ministry of Foreign Affairs of the Netherlands.


### Article 27

The present Convention shall enter into force on the sixtieth day after the deposit of the third instrument of ratification referred to in the second paragraph of Article 26.
The Convention shall enter into force for each signatory State which ratifies subsequently on the sixtieth day after the deposit of its instrument of ratification.

### Article 28

Any State not represented at the Tenth Session of the Hague Conference on Private International Law may accede to the present Convention after it has entered into force in accordance with the first paragraph of Article 27. The instrument of accession shall be deposited with the Ministry of Foreign Affairs of the Netherlands.

The Convention shall enter into force for such a State in the absence of any objection from a State, which has ratified the Convention before such deposit, notified to the Ministry of Foreign Affairs of the Netherlands within a period of six months after the date on which the said Ministry has notified it of such accession.

In the absence of any such objection, the Convention shall enter into force for the acceding State on the first day of the month following the expiration of the last of the periods referred to in the preceding paragraph.

### Article 29

Any State may, at the time of signature, ratification or accession, declare that the present Convention shall extend to all the territories for the international relations of which it is responsible, or to one or more of them. Such a declaration shall take effect on the date of entry into force of the Convention for the State concerned.

At any time thereafter, such extensions shall be notified to the Ministry of Foreign Affairs of the Netherlands.

The Convention shall enter into force for the territories mentioned in such an extension on the sixtieth day after the notification referred to in the preceding paragraph.

### Article 30

The present Convention shall remain in force for five years from the date of its entry into force in accordance with the first paragraph of Article 27, even for States which have ratified it or acceded to it subsequently.

If there has been no denunciation, it shall be renewed tacitly every five years.

Any denunciation shall be notified to the Ministry of Foreign Affairs of the Netherlands at least six months before the end of the five year period.

It may be limited to certain of the territories to which the Convention applies.

The denunciation shall have effect only as regards the State which has notified it. The Convention shall remain in force for the other Contracting States.

### Article 31

The Ministry of Foreign Affairs of the Netherlands shall give notice to the States referred to in Article 26, and to the States which have acceded in accordance with Article 28, of the following –

a)   the signatures and ratifications referred to in Article 26;

b)   the date on which the present Convention enters into force in accordance with the first paragraph of Article 27;

c)   the accessions referred to in Article 28 and the dates on which they take effect;

d)   the extensions referred to in Article 29 and the dates on which they take effect;

e)   the designations, oppositions and declarations referred to in Article 21;

f)   the denunciations referred to in the third paragraph of Article 30.

In witness whereof the undersigned, being duly authorised thereto, have signed the present Convention.

Done at The Hague, on the 15th day of November, 1965, in the English and French languages, both texts being equally authentic, in a single copy which shall be deposited in the archives of the Government of the Netherlands, and of which a certified copy shall be sent, through the diplomatic

Case 1:14-cv-00913-LTS   Document 53   Filed 07/15/16   Page 46 of 88
Case 1:09-cv-11672-WGY   Document 34-1   Filed 10/04/10   Page 7 of 11
Case 1:14-cv-00913-LTS   Document 48   Filed 04/27/16   Page 40 of 61

channel, to each of the States represented at the Tenth Session of the Hague Conference on Private International Law.

FORMS (REQUEST AND CERTIFICATE)
SUMMARY OF THE DOCUMENT TO BE SERVED

(annexes provided for Articles 3, 5, 6 and 7)

---

ANNEX TO THE CONVENTION

*Forms*

REQUEST
FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL
DOCUMENTS

Convention on the Service Abroad of Judicial and Extrajudicial Documents in
Civil or Commercial Matters,
signed at The Hague, the 15th of November 1965.

| | |
|---|---|
| Identity and address of the applicant | Address of receiving authority |

The undersigned applicant has the honour to transmit – in duplicate – the documents listed below and, in conformity with Article 5 of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, *i.e.*,

(identity and address) ...............................................................................

.......................................................................................................................

a) in accordance with the provisions of sub-paragraph *a)* of the first paragraph of Article 5 of the Convention*.

b) in accordance with the following particular method (sub-paragraph *b)* of the first paragraph of Article 5)*: ..................................................................

.......................................................................................................................

.......................................................................................................................

c) by delivery to the addressee, if he accepts it voluntarily (second paragraph of Article 5)*.

The authority is requested to return or to have returned to the applicant a copy of the documents - and of the annexes* - with a certificate as provided on the reverse side.

*List of documents*

.......................................................................................................................
.......................................................................................................................
.......................................................................................................................
.......................................................................................................................
.......................................................................................................................
.......................................................................................................................
.......................................................................................................................
.......................................................................................................................
.......................................................................................................................

Done at  ............. , the ...............
Signature and/or stamp.

* Delete if inappropriate.

*Reverse of the request*

## CERTIFICATE

The undersigned authority has the honour to certify, in conformity with Article 6 of the Convention,

1.  that the document has been served*
    -- the (date) ........................................................................................
    -- at (place, street, number) ...............................................................
    ......................................................................................................

    -- in one of the following methods authorised by Article 5:
        a) in accordance with the provisions of sub-paragraph *a)* of the first paragraph of Article 5 of the Convention*.
        b) in accordance with the following particular method*: ....................
        ......................................................................................................
        c) by delivery to the addressee, who accepted it voluntarily* .

    The documents referred to in the request have been delivered to:
    -- (identity and description of person) ...............................................
    ......................................................................................................
    -- relationship to the addressee (family, business or other): ..................
    ......................................................................................................
    ......................................................................................................

2)  that the document has not been served, by reason of the following facts*:
    ......................................................................................................
    ......................................................................................................
    ......................................................................................................

In conformity with the second paragraph of Article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement*.


*Annexes*

Documents returned: .......................................................................................
......................................................................................................................
......................................................................................................................

In appropriate cases, documents establishing the service:
......................................................................................................................
......................................................................................................................
......................................................................................................................

                                        Done at ............ , the ...............
                                        Signature and/or stamp.


* Delete if inappropriate.

## SUMMARY OF THE DOCUMENT TO BE SERVED

---

Convention on the Service Abroad of Judicial and Extrajudicial Documents in
Civil or Commercial Matters,
signed at The Hague, the 15th of November 1965.

(Article 5, fourth paragraph)

Name and address of the requesting authority: ............................................
............................................................................................................
............................................................................................................

Particulars of the parties*: ..........................................................................
............................................................................................................
............................................................................................................

## JUDICIAL DOCUMENT**

Nature and purpose of the document: ...........................................................
............................................................................................................

Nature and purpose of the proceedings and, where appropriate, the amount in
dispute: .....................................................................................................
............................................................................................................

Date and place for entering appearance**: ...................................................

Court which has given judgment**: ...............................................................

Date of judgment**: .....................................................................................
Time-limits stated in the document**: ...........................................................
............................................................................................................

## EXTRAJUDICIAL DOCUMENT**

Nature and purpose of the document: ...........................................................
............................................................................................................
............................................................................................................

Time-limits stated in the document**: ...........................................................
............................................................................................................
............................................................................................................

\* If appropriate, identity and address of the person interested in the
  transmission of the document.
\*\* Delete if inappropriate.

HCCH

CONFÉRENCE DE LA HAYE
DE DROIT INTERNATIONAL PRIVÉ
PRIVATE INTERNATIONAL LAW

The World Organisation for Cross-border Co-operation in Civil and Commercial Matters

Contact | About HCCH | FAQ | Help | Disclaimer | Français ○ | Other languages ○

Search          GO

Home
HCCH Members
Conventions
Specialised
sections
Authorities
Publications
Work in Progress
Centre
News & Events
Vacancies /
Internships

Declarations Reservations

Articles: 10,15,16

All requests for service of documents should be in English language or accompanied by an English translation;

The service of judicial documents through diplomatic or consular channels will be limited to the nationals of the State in which the documents originate;

India is opposed to the methods of service provided in Article 10;

In terms of Article 15, Indian courts may give judgment if all conditions specified in the second paragraph of that Article are fulfilled; and

For purposes of Article 16, an application for relief will not be entertained if filed after the expiration of one year following the date of the judgment.

© HCCH, 1951-2010
Reproduction is authorised, provided the source is acknowledged, save where otherwise stated.

# EXHIBIT A

Case 1:14-cv-00913-LTS   Document 53   Filed 07/15/16   Page 52 of 88
Case 1:14-cv-00913-LTS   Document 48   Filed 04/27/16   Page 46 of 81
Case 1:14-cv-00913-LTS   Document 2   Filed 02/13/14   Page 53 of 69

2008-07-22 04:28                     2035673741>>                                          P 2/3

**VIA EMAIL**                                                       July 21st, 2008
Sumanta Banerjee
23 Soundsview Farm Road
Weston, CT 06883

Re: Outstanding Bill

Dear Sumanta:

I am writing to memorialize our recent conversations about your outstanding legal bill. As of July 17th, 2008, the outstanding legal bill is $249,222.13.

You have reviewed the bills to date and agree that they are accurate, fair and reasonable, except for some initial time entries by Ron Geffner on this matter. In connection with this, I am willing to deduct $5,000 from the bill, so that the outstanding total is $244,222.13.

Please sign below, to acknowledge and agree that the outstanding amount as of July 17th, 2008, is $244,222.13.

In addition, your signature below will confirm our agreement that (i) upon release of the escrowed Management Fees by the Court, you will pay Sadis & Goldberg LLC at least $25,000 of said fees toward your bill; (ii) upon you being hired by any entity as an employee or consultant to provide advisory services, or partnering with any person or entity to provide advisory services) you or said entity or partner will pay all of Sadis & Goldberg's outstanding legal bills; and (iii) you have represented to Sadis & Goldberg LLC that you are satisfied with our legal services to date and have requested that we continue as counsel, despite the fact that you have another law firm co-counseling the case on your behalf.

We have agreed that if, on or before September 30th, 2008, you pay the entire outstanding balance of whatever the amount of the bill is on the date of payment, you will receive a 25% discount on the entire bill, from the inception of the case through the date of payment. If you do not zero out your balance at some time on or before September 30th, 2008, we have agreed that you will receive a smaller discount of 15%, in exchange for zeroing out your balance on or before December 31st, 2008.

{00121441 DOC}

2008-07-22 04:29                    20365737415>                                                    P 3/3

Finally, your signature below will acknowledge that you will enter into an agreement that
you will pledge your converted GP interest into limited partnership interest in GDF as
collateral for any outstanding legal fees owed, should you fail to zero out your balance on
or before September 30th, 2008. We will forward you a pledge agreement at that time for
review by your personal counsel. The pledge agreement shall provide that Sadis &
Goldberg LLP cannot foreclose on the interest until January 31st, 2009.

Sadis & Goldberg will make a good faith effort to remain as counsel in the case,
provided, that:

1. Banerjee does not request Sadis & Goldberg to engage in any illegal, unethical, or
   improper conduct;
2. Banerjee does not engage in any illegal conduct regarding the case;
3. Banerjee pays Sadis & Goldberg in full upon any of the events in "(ii)" above,
   occurring;
4. Banerjee pays Sadis & Goldberg at least $25,000 upon the escrowed funds being
   released;
5. Banerjee does not reject a settlement offer that Sadis & Goldberg, in its sole
   judgment and opinion, deems reasonable,
6. Banerjee's representation that he has "two" partners or potential employers, lined
   up and ready to manage GDF with him is true and correct and a deal with one of
   them will happen imminently, subject to them being convinced that the litigation
   risk to Banerjee is manageable.

This agreement is an agreement made in New York, and shall be construed solely in
accordance with the laws of New York, without regard to conflict of laws principles. You
agree that any and all disputes arising in any way under this agreement, shall be resolved
solely by the federal courts located in New York, or New York's state courts and you
agree to submit to the personal jurisdiction of said courts. This agreement and the retainer
agreement that you previously signed constitute the entire agreement between the parties
regarding the subject matter hereof and this agreement can only be modified by a writing
signed by both parties.

Sumanta Banerjee

Very truly yours,

Douglas R. Hirsch

{00121441.DOC}

# EXHIBIT B

From: Douglas Hirsch dhirsch@sglawyers.com
Subject: RE: Alkek & Williams v. Tuckerbrook
Date: August 31, 2009 at 12:48 PM
To: S B sbaner@gmail.com

Sam, I had the right to foreclose on the pledged collateral in January. It is now no longer a pledge. It is my collateral - that is why you are assigning it. I have sent you an agreement that assigns it back to you once I am paid.

If you want, we can just enter into an agreement that all distributions from the fund go to my firm until we are paid in full. It is probably much easier to do it this way.

Also, my recollection is that the special interest is not in your name - but in the name of the entity in which both you and Tuckerbrook are members, so that there may be a problem assigning it.

Do you want to just sign an agreement directing the fund to send all distributions and redemptions directly to me until I am paid?

**Douglas R. Hirsch**| Sadis & Goldberg LLP | Email: dhirsch@sglawyers.com | www.hedgefundworld.com
|
551 Fifth Avenue, 21st Floor, New York, New York 10176 | **Tel:** (212 )573-6670 | **Fax:** (212) 573-8150 |

50 California Street, Suite 2320, San Francisco, California 94111

This e-mail communication is confidential and is intended only for the individuals or entities named above and others who have been specifically authorized to receive it. If you are not an intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this e-mail in error by replying to the e-mail or by telephoning 212.947.3793. Please then delete the e-mail and any copies of it. Thank you. Nothing contained in this disclaimer shall be construed in any way to grant permission to transmit confidential information via this firm's e-mail system.

From: sbaner@gmail.com [mailto:sbaner@gmail.com]
Sent: Monday, August 31, 2009 12:41 PM
To: Douglas Hirsch
Subject: Re: Alkek & Williams v. Tuckerbrook

Doug,

I am having trouble reaching you. I am in India (9.5 hrs ahead of your time). I can be reached on the following:

011 91 33 400 81953 (landline)

# EXHIBIT C

From: **Douglas Hirsch** dhirsch@sglawyers.com
Subject: Bill
Date: April 21, 2009 at 1:52 PM
To: S B sbaner@gmail.com

Sam, I need to speak with you. I want to get your interest in the GDF Fund assigned to us and have them make the distributions to us as per our agreement. Please call me. Thank you.

**Douglas R. Hirsch| Sadis & Goldberg LLP | Email:** dhirsch@sglawyers.com |
www.hedgefundworld.com |

551 Fifth Avenue, 21st Floor, New York, New York 10176 | **Tel:** (212 )573-6670 | **Fax:** (212) 573-8150 |

50 California Street, Suite 2320, San Francisco, California 94111

This e-mail communication is confidential and is intended only for the individuals or entities named above and others who have been specifically authorized to receive it. If you are not an intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this e-mail in error by replying to the e-mail or by telephoning 212.947.3793. Please then delete the e-mail and any copies of it. Thank you. Nothing contained in this disclaimer shall be construed in any way to grant permission to transmit confidential information via this firm's e-mail system.

Sumanta Banerjee <sbaner@gmail.com>

## Banerjee.General

**Douglas Hirsch** <dhirsch@sglawyers.com>                    Tue, Jul 21, 2009 at 5:55 PM
To: sbaner@gmail.com
Cc: Joseph Louis <jlouis@sglawyers.com>

Sam, I will look at the bill - you are correct -nothing should have recently been added to the bill.

However, if and when we receive assignment of the GP interest, it does not "settle" the bill. Once we are paid in full, from proceeds of the GP interest, or otherwise, will the bill be settled.

I will work on finalizing the assignment paperwork with you in the next two weeks.

**Douglas R. Hirsch| Sadis& Goldberg LLP | Email: dhirsch@sglawyers.com |
www.hedgefundworld.com |**

551 Fifth Avenue, 21st Floor, New York, New York 10176 | **Tel:** (212 )573-6670 | **Fax:** (212) 573-8150 |

50 California Street, Suite 2320, San Francisco, California 94111

This e-mail communication is confidential and is intended only for the individuals or entities named above and others who have been specifically authorized to receive it. If you are not an intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this e-mail in error by replying to the e-mail or by telephoning 212.947.3793. Please then delete the e-mail and any copies of it. Thank you. Nothing contained in this disclaimer shall be construed in any way to grant permission to transmit confidential information via this firm's e-mail system.

 Gmail

Sumanta Banerjee <sbaner@gmail.com>

## FW: Alkek & Williams v. Tuckerbrook

**sbaner@gmail.com** <sbaner@gmail.com>                                    Tue, Sep 1, 2009 at 1:21 PM
Reply-To: sbaner@gmail.com
To: Douglas Hirsch <dhirsch@sglawyers.com>

I have not seen anything from you. Please send me the doc that directs the cash flows to be paid to you. I
will take it to Alkek. Thx

Sent from my Verizon Wireless BlackBerry

From: sbaner@gmail.com
Date: Mon, 31 Aug 2009 17:53:08 +0000
To: Douglas Hirsch<dhirsch@sglawyers.com>
Subject: Re: Alkek & Williams v. Tuckerbrook

No — you have already foreclosed on it. I get that completely.

I need a doc from you that is an MOU of the arrangement you suggested. The Distressed GP will direct the
CF to you till 350k + whatever you bill now for Dep stuff is paid. Ok?

Sent from my Verizon Wireless BlackBerry

From: "Douglas Hirsch"
Date: Mon, 31 Aug 2009 13:49:48 -0400
[Quoted text hidden]

[Quoted text hidden]

Sumanta Banerjee <sbaner@gmail.com>

## FW: Alkek & Williams v. Tuckerbrook

**Douglas Hirsch** <dhirsch@sglawyers.com>                    Tue, Sep 1, 2009 at 2:09 PM
To: sbaner@gmail.com

I have to draft it and I am on vacation. In the meantime, send me Scott's phone number so that I can get the info I need.

Douglas R. Hirsch
Partner
Sadis & Goldberg LLP
212-573-6670
[Quoted text hidden]

**Sumanta Banerjee <sbaner@gmail.com>**

## FW: Alkek & Williams v. Tuckerbrook

**sbaner@gmail.com** <sbaner@gmail.com>                      Tue, Sep 1, 2009 at 8:48 PM
Reply-To: sbaner@gmail.com
To: Douglas Hirsch <dhirsch@sglawyers.com>

Scott will not talk to my counsel, let me know what you need and I can get it for you. Alt, you can call his counsel..and get what you need that way. I believe you have his counsels no.

Sent on my BlackBerry® from Vodafone Essar

**From:** "Douglas Hirsch"
**Date:** Tue, 1 Sep 2009 14:09:59 -0400
[Quoted text hidden]

[Quoted text hidden]

Case 1:14-cv-00913-LTS Document 53 Filed 07/15/16 Page 62 of 88 Page 2 of 2
(no subject) - gandhibanerjee@gmail.com - Gmail
Case 1:14-cv-00913-LTS Document 48 Filed 04/27/16 Page 56 of 81

email 5 xps

Open with

Gmail - Attached statements

Page 1 of 1

M Gmail

Sumanta Banerjee <sbaner@gmail.com>

## Attached statements

sumanta banerjee <sbaner@gmail.com>
To: Douglas Hirsch <dhirsch@sglawyers.com>

Thu, Oct 15, 2009 at 2:16 AM

Doug,

See attached. I was trying to get you the benchmarks--hence it took time. I could not locate them. Anyway, the Funds performance is is in the top quintile for similar funds. Also, keep in mind that valuations in PE land (FOF) are mostly one quarter lag — in other words the valuation is for March 2009. So the market rally from March 2009 onwards is not reflected in the numbers.

I thought you were supposed to send me the revised agreement — have not received it yet.

best,

Sam

Sumanta Banerjee
Chartered Alternative Investment Analyst
(203) 550 5683 (cell)
(203) 293 4165 (Off/fax)
sbaner@gmail.com

GDI Financial Statements 6-30-2009[1].pdf
351K

https://mail.google.com/mail/u/2/?ui=2&ik=b01d5f6eda&view=pt&as_hus=douglas%20r....  4/25/2016

1 of 9 items

1 of 1

# EXHIBIT D

Case 1:14-cv-00913-LTS   Document 53   Filed 07/15/16   Page 64 of 88
Case 1:14-cv-07355-LTS   Document 13-9   Filed 06/13/14   Page 2 of 2
Case 1:13-cv-07355-LTS   Document 4   Filed 11/26/13   Page 2 of 2
Case 1:14-cv-00913-LTS   Document 48   Filed 04/27/16   Page 58 of 81

Douglas R. Hirsch
Sadis & Goldberg, LLP
551 5th Avenue
New York, New York 10176

November 5, 2013

Re: 13 cv 7355

Dear Mr. Hirsch,

I write to you regarding the case number above, Sadis & Goldberg, LLP v. Sumant Banerjee. Mr. Banerjee, contrary to the statements in the complaint, is not and never has been a New York resident. He is in fact a permanent resident of India and has been so for over four years. He has not communicated with him in India or at this address for an extended period of time, though over the four years. Additionally, you are also aware that Mr. Banerjee is an overseas citizen of India.

His address for any correspondence is 58/1 Ballygunje Circular Road, Kolkata 700019, West Bengal, India.

The summons and complaint in the above referenced case was delivered incorrectly to the address: 304 Harvester Circle, Pittsburgh, PA 15241. This address is of his in-laws, not Mr. Banerjee's address

Please find included with this correspondence, the Summons and Complaint so that these papers can be properly served to Mr. Banerjee at his place of residence in India

As I am not listed as a party to the case, I cannot legally accept these papers. I trust that you will deliver these papers to Mr. Banerjee through the proper channels

Sincerely

Akanksha Gandhi

cc of Letter sent to:
Roby Krayck
Clerk of Court, Southern New York District Court
U S Courthouse
500 Pearl Street
New York, New York 10007

# EXHIBIT E

Case 1:14-cv-00913-LTS   Document 53   Filed 07/15/16   Page 66 of 88   Page 1 of 2
SDNY CM/ECF Version 6.1.1
Case 1:14-cv-00913-LTS   Document 48   Filed 04/27/16   Page 60 of 81

CLOSED,ECF

# U.S. District Court
## Southern District of New York (Foley Square)
### CIVIL DOCKET FOR CASE #: 1:13-cv-07355-LTS

Sadis & Goldberg, LLP v. Banerjee
Assigned to: Judge Laura Taylor Swain
Related Case: 1:14-cv-00913-LTS
Cause: 28:1332oc Diversity-Other Contract

Date Filed: 10/18/2013
Date Terminated: 01/17/2014
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**Sadis & Goldberg, LLP**

represented by **Douglas R Hirsch**
Sadis & Goldberg
551 Fifth Avenue
21st Floor
New York, NY 10176
212-947-3793
Fax: 212-947-3796
Email: dhirsch@sglawyers.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Sumanta Banerjee**

| Date Filed | # | Docket Text |
|---|---|---|
| 10/18/2013 | 1 | COMPLAINT against Sumanta Banerjee. (Filing Fee $ 350.00, Receipt Number 465401079204)Document filed by Sadis & Goldberg, LLP.(msa) (Entered: 10/23/2013) |
| 10/18/2013 | | SUMMONS ISSUED as to Sumanta Banerjee. (msa) (Entered: 10/23/2013) |
| 10/18/2013 | | Case Designated ECF. (msa) (Entered: 10/23/2013) |
| 10/18/2013 | | Magistrate Judge Andrew J. Peck is so designated. (msa) (Entered: 10/23/2013) |
| 10/30/2013 | 2 | INITIAL CONFERENCE ORDER: Initial Conference set for 1/24/2014 at 10:00 AM in Courtroom 17C, 500 Pearl Street, New York, NY 10007 before Judge Laura Taylor Swain, and as further set forth in this document. (Signed by Judge Laura Taylor Swain on 10/29/2013) (cd) (Entered: 10/30/2013) |
| 10/31/2013 | 3 | ORDER: that plaintiff shall, no later than November 15, 2013, file and serve a Supplement to the Complaint containing allegations sufficient to demonstrate a basis for subject matter jurisdiction in this Court or otherwise show cause in |

| | | writing as to why this case should not be dismissed for lack of subject matter jurisdiction. ( Amended Pleadings due by 11/15/2013.) (Signed by Judge Laura Taylor Swain on 10/30/2013) (cd) (Entered: 10/31/2013) |
|---|---|---|
| 11/25/2013 | 4 | LETTER addressed to Douglas R. Hirsch from Akshita Gandhi dated 11/5/2013 re: Mr. Banerjee does not reside in the United States and I cannot accept papers served. (cd) (Entered: 11/25/2013) |
| 01/17/2014 | 5 | ORDER: that the Court hereby dismisses this case for failure to demonstrate a basis for subject matter jurisdiction. The Clerk of Court is hereby ordered to close this case. (Signed by Judge Laura Taylor Swain on 1/17/2014) (tn) (Entered: 01/17/2014) |
| 02/19/2014 | 6 | LETTER from Kshirod Prasad Kundu dated 2/10/14 re: Counsel writes to draw attention to the facts listed herein for taking extollable measures for the same. (mro) (Entered: 02/19/2014) |
| 02/21/2014 | 7 | LETTER addressed to Central Authority The Ministry of Law and Justice Department of Legal Affairs from Kshirod Prasad Kundu dated 2/10/2014 re: I write you this letter drawing attention to the below mentioned facts for taking extollable measures for the same. (ama) (Entered: 02/21/2014) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/26/2016 13:20:36 | | |
| PACER Login: | ab4889:3663463:0 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 1:13-cv-07355-LTS |
| Billable Pages: | 2 | Cost: | 0.20 |

# EXHIBIT F

How to proceed?

**REQUEST FOR SERVICE ABROAD**
**OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS**

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or
Commercial Matters, signed at The Hague, the 15th of November 1965

| Identity and address of the applicant | Address of receiving authority |
|---|---|
| Douglas Hirsch<br>Paulina Stamatelos<br>Sadis & Goldberg LLP<br>551 Fifth Avenue<br>21st Floor<br>New York, New York 10176 | Central Authority,<br>The Ministry of Law<br>Department of Legal Affairs<br>Door No 433A, 4th Floor<br>A-Wing, Shastri Bhawan,<br>New Delhi-110001<br>India |

The undersigned applicant has the honour to transmit – in duplicate – the documents listed below and, in
conformity with Article 5 of the above-mentioned Convention, requests prompt service of one copy thereof
on the addressee (i.e.

Mr. Sumanta Banerjee
58/1 Ballygunge Circular Road
Kolkata 700019
West Bengal, India

[ ] (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of Article 5 of the
Convention *

[x] (b) in accordance with the following particular method (sub-paragraph (b) of the first paragraph of
Article 5)*

A.l documents must be served under U.S. Federal Rule of Civil
Procedure 4(c)(2), (e), by delivering the documents to Sumanta
Banerjee personally, OR leaving a copy of the documents at Sumanta
Banerjee's dwelling with someone of suitable age/discretion who lives
there

[ ] (c) by delivery to the addressee if the addressee accepts it voluntarily (second paragraph of
Article 5) *

The authority is requested to return or to have returned to the applicant a copy of the documents
– and of the annexes ** – with a certificate as provided on the next page

List of documents

Summons and Complaint with Exhibits in Sadis & Goldberg LLP v  Sumanta
Banerjee, U S  District Court, Southern District of New York (17-cv-7351)
Civil Cover Sheet
Rule 7.1 Disclosure Statement
The Individual Practices of the Honorable Laura Taylor Swain
Electronic Case Filing Rules & Instructions

Done at  December   the  9, 2013 NY

Signature and/or stamp

Paulina Stamatelos Esq

OFFICE OF THE DISTRICT JUDGE 24-PARGANAS SOUTH, ALIPORE
NEZARATH DEPARTMENT.

Memo No. _____ Dated. _____

From
The Registrar
District Judge's Court
24 Pargoanas South, Alipore

To
Sri S.N. Bathoi,
Senior Deputy/cum Advocate/on/records,
Branch Secretariat,
Ministry of Law and Justice,
11, Strand Road,
Kolkata-700001.

Sub: Service Report of Judicial or extrajudicial documents in respect of
Ms. Sumana Banerjee, 59/1, Ballygunge circular Road,Kolkata-19.,
West Bengal , India.

Sir,
In pursuance of your letter No. Misc/ service of documents / 2014- Indl./283
dated 31st January,2014, I am sending herewith the service report submitted by the Serl the 14 on
the reverse of the Original wherein returned to serve the documents upon the subject party, to
Ms. Sumana Banerjee, 59/1, Ballygunge circular Road, Kolkata-700019, West Bengal, India

Yours faithfully,

Registrar
District Judge's Court
24 Parganas south, Alipore

Case 1:14-cv-00913-LTS   Document 53   Filed 07/15/16   Page 72 of 88

Case 1:14-cv-00913-LTS   Document 48   Filed 04/27/16   Page 68 of 81
Case 1:14-cv-00913-LTS   Document 8-14   Filed 06/12/14   Page 4 of 7

is currently traveling abroad and I do not know his whereabouts nor aware about the probable timeline of his returning to India. It is to be noted that this is not his current resident address and I cannot accept important time sensitive documents on his behalf.

4.  That, it is impossible to me to handover the bunch of papers and/or to apprise about the said bunch of papers to said Sumanta Banerjee who does not reside with me at Flat 142B, 58/1, Ballygunge Circular Road, Kolkata – 700019.

5.  That I, finding no other suitable alternative rather being victimised of the circumstances requested Advocate Mr. K. P. Kundu to take appropriate measures to return the said bunch of papers either to sender or to the appropriate authority. My advocate is returning all the documents to appropriate authority and relevant parties this week.

6.  That the statements made in the foregoing paragraphs of the instant Affidavit are true to my knowledge and belief.



Rbanerjee (Reba Banerjee)
_____
Deponent

Identified by me

Debdas Kanuly
Advocate

Deponent to affirm as before me
at Alipore Judge's Court
Kolkata-700027 Identification
at ......A.M./P.M as per Notarial
Act.

(S. K. DEY
Notary Govt. of India
2105/2002

18/2/2014

1 0 FEB 2014

Page 2 of 2

# EXHIBIT H

# Kshirod Prasad Kundu

Advocate

Bar Library No. : 2479 9335
Resi : 2464 5481

Alipore Judges' Court, Bar Library,
2nd Floor, Seat No. 238
Kolkata - 700 027

**Chamber / Residence :**
158/C, Rash Behari Avenue
Kolkata - 700 029

Ref. .................................

Date 10th February 2014

To
**Central Authority**
**The Ministry of Law and Justice**
**Department of Legal Affairs**
Room No. 439A, 4th Floor
A-Wing, Shastri Bhawan
New Delhi – 110001.

Sir,

Under instruction from and on behalf of my client Dr. Reba Banerjee of Flat 142B, 58/1, Ballygunge Circular Road, Kolkata – 700019, West Bengal, India. I write you this letter drawing attention to the below mentioned facts for taking extollable measures for the same.

That my client, indeed being extremely pressurised by an unidentified person was compelled to sign on the paper supplied by the said person who represented himself as an employee of Alipore Judges Court, Alipore, Kolkata and afterwards had to take a bunch of papers under her custody from the said person being victimised of the circumstances.

However subsequently my client realised that the said bunch of papers has been sent addressing to Mr. Sumanta Banerjee who is not a resident at my client's address.

Mr. Banerjee is currently traveling abroad in various countries and my client neither knows his whereabouts nor is aware about the probable period of his return to India.

In is needless to say that receiving of the said bunch of papers for and on behalf of Mr. Sumanta Banerjee who does not reside at the same address with my client at Flat 142B, 58/1, Ballygunge Circular Road, Kolkata – 700019 is neither justified nor reasonable especially documents that are time sensitive.

K.P. Kundu
Advocate

Page 1 of 2

# Kshirod Prasad Kundu
### Advocate

Bar Library No. : 2479 9335
Resi         : 2464 5481

Alipore Judges' Court, Bar Library,
2nd Floor, Seat No. 238
Kolkata - 700 027

**Chamber / Residence :**
158/C, Rash Behari Avenue
Kolkata - 700 029

Date ...................................

Ref. ...............................

Under such crucial juncture and / or precarious condition I have been advised by my client to take back the said bunch of papers to dispatch the same to the addressee directly.

It has been expected that considering the inability rather incapability to send the said bunch of papers to addressee by my client.

Therefore, I request you to do the needful to dispatch the said bunch of papers to the addressee after taking back the same.

Yours faithfully,

Kshirod Prasad Kundu,
Advocate                    10/02/14

**Copy to :**
Douglas Hirsch
Paulina Stamatelos
Sadis & Goldberg LLP
551 Fifth Avenue
21st Floor
New York
New York 10176

**Copy to:**
**Honorable Judge Laura Taylor Swain**
New York District Court –Southern District
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

# EXHIBIT I

Thanks,
Paulina Stamatelos

**From:** Paulina Stamatelos
**Sent:** Thursday, May 01, 2014 12:35 PM
**To:** 'sbaner@gmail.com'
**Subject:** RE: Sadis & Goldberg LLP v. Sumanta Banerjee, 14-cv-913 (LTS) SDNY (EMAIL 1 of 3)

FYI, here is a third copy of the Court's order.

**From:** Paulina Stamatelos
**Sent:** Thursday, May 01, 2014 12:34 PM
**To:** 'sbaner@gmail.com'
**Subject:** RE: Sadis & Goldberg LLP v. Sumanta Banerjee, 14-cv-913 (LTS) SDNY (EMAIL 1 of 3)

Given that we have yet to serve you by India's Central Authority, and you refuse to cooperate with us to agree to a preliminary pre-trial statement per the Court's Order that I have emailed and mailed you in March, do you agree to an adjournment of the May 16, 2014 Initial Conference Order?

**From:** Paulina Stamatelos
**Sent:** Wednesday, April 30, 2014 11:05 AM
**To:** 'sbaner@gmail.com'
**Subject:** RE: Sadis & Goldberg LLP v. Sumanta Banerjee, 14-cv-913 (LTS) SDNY (EMAIL 1 of 3)
**Importance:** High

I have previously sent you by email a copy of the court's Initial Conference Order in which the Judge orders that we appear for a conference on May 16, 2014 at 10:15 A.M.  The Court's Order requires that we confer prior to the May 16, 2014  Preliminary Conference.  Please review the Order.

I am available to discuss the Court's Order at your convenience.

Furthermore, as you know, we have been trying to serve you in India with great difficulty.  Consequently we will file a motion in district court to deem service effected or to serve you by alternative means as allowed under the Federal Rules of Civil Procedure.

Regards,
Paulina Stamatelos

Sadis & Goldberg LLP
551 5th Avenue, 21st Floor
New York, NY 10176
PH: (212) 573-6675
Fax: (212) 573-6676

**From:** Paulina Stamatelos
**Sent:** Wednesday, March 12, 2014 2:53 PM
**To:** 'sbaner@gmail.com'
**Cc:** Douglas Hirsch
**Subject:** Sadis & Goldberg LLP v. Sumanta Banerjee, 14-cv-913 (LTS) SDNY (EMAIL 1 of 3)

Mr. Banerjee:

# EXHIBIT J

## Paulina Stamatelos

| | |
|---|---|
| From: | Paulina Stamatelos |
| Sent: | Sunday, June 08, 2014 5:51 PM |
| To: | 'Judicial-dla@nic.in' |
| Subject: | RE: Hague Service Convention - Request for Status Update: Sadis & Goldberg LLP v. Sumanta Banerjee, 14-cv-913 (LTS) SDNY |

Please advise if you have any updates. I have tried to call your office and no one picks up. Thanks.

**From:** Paulina Stamatelos
**Sent:** Thursday, June 05, 2014 4:23 PM
**To:** 'Judicial-dla@nic.in'
**Subject:** RE: Hague Service Convention - Request for Status Update: Sadis & Goldberg LLP v. Sumanta Banerjee, 14-cv-913 (LTS) SDNY

Please reply as we are trying to avoid filing a motion in the Southern District of New York.

**From:** Paulina Stamatelos
**Sent:** Wednesday, June 04, 2014 10:50 AM
**To:** 'Judicial-dla@nic.in'
**Subject:** Hague Service Convention - Request for Status Update: Sadis & Goldberg LLP v. Sumanta Banerjee, 14-cv-913 (LTS) SDNY

Dear Mr. R.S. Shukla:

The Indian Central Authority has been in receipt of the Summons & Complaint, in addition to all case-initiating documents since mid-March 2014. I also attach the USM-94 which accompanied the documents.

**Please advise as to the status of our request for service with India's Central Authority as your reply may impact the Firm's decision to engage in motion practice before the Court with regards to service of process upon the Defendant, Mr. Sumanta Banerjee.**

Very truly yours,
Paulina Stamatelos

Sadis & Goldberg LLP
551 5th Avenue, 21st Floor
New York, NY 10176
PH: (212) 573-6675
Fax: (212) 573-6676

# EXHIBIT K

Case 1:14-cv-00913-LTS   Document 53   Filed 07/15/16   Page 81 of 88

Case 1:14-cv-00913-LTS   Document 48   Filed 04/27/16   Page 77 of 81
Case 1:14-cv-00913-LTS   Document 34   Filed 01/12/15   Page 1 of 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

SADIS & GOLDBERG, LLP,

                         Plaintiff,          Civil Action No.:  14-cv-00913(LTS)


        -against-


SUMANTA BANERJEE,


                         Defendant.
------------------------------------------------------X

### DECLARATION OF MICHELLE TANNEY IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

I, Michelle Tanney, being over the age of 18 and under the penalty of perjury, declare the following under 28 U.S.C. § 1746:

1.      I am an associate of the law firm of Sadis & Goldberg LLP, counsel for Plaintiff in the above-captioned matter.  I make this declaration on personal knowledge in support of Plaintiff's Motion for Default Judgment.

2.      Annexed as Exhibit A is a true and correct copy of the Complaint, dated February 12, 2014, filed via the Court's Electronic Case Files system, on February 13, 2014.  *See* Docket Entry No. 2.

3.      Annexed as Exhibit B is the retainer agreement between Plaintiff and Defendant, dated December 21, 2007 (the "Retainer").

4.      Annexed as Exhibit C are itemized invoices Plaintiff sent to Defendant from April 1, 2008 through July 1, 2008.

5.      Annexed as Exhibit D is the itemized invoice Plaintiff sent to Defendant on July 18, 2008.

Case 1:14-cv-00913-LTS   Document 53   Filed 07/15/16   Page 82 of 88
Case 1:14-cv-00913-LTS   Document 48   Filed 04/27/16   Page 78 of 81
Case 1:14-cv-00913-LTS   Document 34   Filed 01/12/15   Page 2 of 2

6.      Annexed as Exhibit E are itemized invoices Plaintiff sent to Defendant from September 10, 2008 through November 30, 2008.

7.      Annexed as Exhibit F are itemized invoices Plaintiff sent to Defendant from April 30, 2009 through July 1, 2009.

8.      Annexed as Exhibit G is a letter dated July 21, 2008, sent by Douglas Hirsch, member of Plaintiff's firm, to Defendant, memorializing an oral agreement between Plaintiff and Defendant pertaining to Defendant's outstanding balance owed to Plaintiff (the "July Agreement").

9.      Annexed as Exhibit H is a FedEx tracking order dated July 7, 2014, confirming delivery of the Summons and Complaint to Defendant.

10.     Annexed as Exhibit I are invoices reflecting the work performed by Plaintiff in connection with bringing this action.

11.     Annexed as Exhibit J are the sworn affidavits of Michelle Tanney, Jennifer Rossan, Douglas Hirsch, Patricia Green, and Lisa Goldberg dated January 12, 2015, attesting to accuracy and truthfulness of the invoices reflecting the work performed by Plaintiff in connection with bringing this action.

Dated: January 12, 2015
       New York, New York

By: _____
Michelle Tanney, Esq.

**IMPORTANT!**
A winter storm is causing potential delays and disruptions in the northeastern U.S. Learn More

FedEx ® Tracking

| 770529422530 |
|---|

Ship (P/U) date :
**Mon 7/07/2014 7:15 pm**

NEW YORK, NY US

Estimated delivery
**N/A**

KOLKATA, WB IN

**Delivery exception**
*KOLKATA, WB*

**❗ Unable to deliver shipment, returned to shipper**

Recommended action:
No action is required. The package is being returned to the shipper.

**No estimated delivery date available at this time.**

Travel History

| ▲Date/Time | Activity | Location |
|---|---|---|
| ▬ 11/03/2014 - Monday | | |
| 5:00 pm | Returning package to shipper | KOLKATA IN |
| | Return tracking number 616937246120 | |
| ▬ 9/27/2014 - Saturday | | |
| 11:00 pm | At local FedEx facility | KOLKATA IN |
| ▬ 9/26/2014 - Friday | | |
| 11:53 pm | At local FedEx facility | KOLKATA IN |
| ▬ 9/25/2014 - Thursday | | |
| 11:53 pm | At local FedEx facility | KOLKATA IN |
| ▬ 9/23/2014 - Tuesday | | |
| 10:30 pm | At local FedEx facility | KOLKATA IN |
| ▬ 9/22/2014 - Monday | | |
| 11:53 pm | At local FedEx facility | KOLKATA IN |
| ▬ 9/20/2014 - Saturday | | |
| 9:53 pm | At local FedEx facility | KOLKATA IN |
| ▬ 9/19/2014 - Friday | | |
| 10:55 pm | At local FedEx facility | KOLKATA IN |
| ▬ 9/18/2014 - Thursday | | |
| 11:01 pm | At local FedEx facility | KOLKATA IN |
| ▬ 9/17/2014 - Wednesday | | |
| 11:18 pm | At local FedEx facility | KOLKATA IN |
| ▬ 9/16/2014 - Tuesday | | |
| 11:11 pm | At local FedEx facility | KOLKATA IN |
| ▬ 9/13/2014 - Saturday | | |
| 11:14 pm | At local FedEx facility | KOLKATA IN |
| ▬ 9/12/2014 - Friday | | |
| 11:57 pm | At local FedEx facility | KOLKATA IN |
| ▬ 9/11/2014 - Thursday | | |
| 11:50 pm | At local FedEx facility | KOLKATA IN |
| ▬ 9/10/2014 - Wednesday | | |
| 10:44 pm | At local FedEx facility | KOLKATA IN |
| ▬ 9/09/2014 - Tuesday | | |
| 11:58 pm | At local FedEx facility | KOLKATA IN |

# EXHIBIT L

Sadis & Goldberg

| Sadis & Goldberg | | | | Page    6 |
|---|---|---|---|---|
| | | | Hrs/Rate | Amount |
| 2/20/2014 PG | BANERJEE:  Electronically filed 7.1 statement with the court.  Receipt of filing scanned and saved to Worldox file. | | 0.20 325.00/hr | 65.00 |
| 3/14/2014 PS | Banerjee service of court order; discussion with E, Gitlin re: payment plan/affidavit of judgment. | | 2.00 495.00/hr | 990.00 |
| 3/18/2014 PS | Review Banerjee documents; Gitlin stipulation issues; and review procedure for filing Ehrman confession of judgment. | | 2.20 495.00/hr | 1,089.00 |
| 4/3/2014 PS | Banerjee motion, Gitlin. | | 6.80 495.00/hr | 3,366.00 |
| PS | Banerjee motion, Gitlin. | | 6.80 495.00/hr | 3,366.00 |
| 4/8/2014 PS | Haft settlement; banerjee motion. | | 2.20 495.00/hr | 1,089.00 |
| 5/31/2014 PS | Banerjee motion. | | 3.00 495.00/hr | 1,485.00 |
| 6/4/2014 PS | Manzella complaint; banerjee motion. | | 3.00 495.00/hr | 1,485.00 |
| 6/5/2014 PS | Manzella complaint; banerjee motion. | | 5.00 495.00/hr | 2,475.00 |
| 6/9/2014 PS | Finalize and efile collection complaint against Manzella; finalize draft motion to deem service effected in S. Banerjee collection matter. | | 8.20 495.00/hr | 4,059.00 |
| 6/10/2014 PG | BANERJEE:   Search for affidavit on Banerjee's wife.  Call to Serving to Irving per PS request. Spoke to Christina re: affidavit of service.  Rec'd AOS by email.  Saved to Worldox file and sent to PS for review. | | 0.50 325.00/hr | 162.50 |
| 6/12/2014 DRH | Worked on reviewing Banerjee motion to serve by email. | | 1.00 750.00/hr | 750.00 |

The contents of this page are confidential and subject to the attorney-client privilege and the attorney work-product doctrine.

You should not show or disclose the contents of this page to third parties without giving consideration to the effect of disclosure upon such privilege and doctrine.

PRIORITY
★ MAIL ★
EXPRESS™

OUR FASTEST SERVICE IN THE U.S.

FLAT RATE
ENVELOPE

ONE RATE ★ ANY WEIGHT*

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

EMS

EP13F Apr 2015
OD: 12 1/2 x 9 1/2

PS 1 0 0 0 1 0 0 0 0 0 6

VISIT US AT USPS.COM®

UNITED STATES
POSTAL SERVICE

WRITE FIRMLY WITH BALL POINT PEN ON HARD SURFACE TO MAKE ALL COPIES LEGIBLE.

CUSTOMER USE ONLY

PAYMENT BY ACCOUNT (if applicable)

DELIVERY OPTIONS (Customer Use Only)

FROM: (PLEASE PRINT)          PHONE: (   )

TO: (PLEASE PRINT)            PHONE: (   )

ORIGIN (POSTAL SERVICE USE ONLY)

DELIVERY (POSTAL SERVICE USE ONLY)

UNITED STATES
POSTAL SERVICE®

PRIORITY
★ MAIL ★
EXPRESS™

U.S. POSTAGE
PAID

LABEL 11-B, SEPTEMBER 2015          PSN 7690-02-000-9996          3-ADDRESSEE COPY

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.




