

Ben Hutman
212.573.6675
bhutman@sglawyers.com
www.sglawyers.com

November 21, 2018

**VIA ECF**
The Hon. Judge Ona T. Wang
United States District Court for the
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:  *Sadis & Goldberg, LLP v. Sumanta Banerjee*, Dkt. No. 14-cv 00913(LTS)(OTW)
Joint Status Letter on Outstanding Discovery Issues

Dear Judge Wang,

As requested, the parties submit this joint status letter regarding the status of discovery and their outstanding discovery disputes.

**Status of Discovery**

Plaintiff sent its First Set of Document Requests on August 3, 2018 (**Exhibit A**). Defendant (also referred to herein as Mr. Banerjee) made his Responses and Objections thereto on October 8 (**Exhibit B**). The Court entered a Stipulation and Protective Order on November 7. On that same day, Defendant made his initial document production.

The parties have conferred and agree that, by December 14, 2018, Defendant will make a supplemental document production and will provide a written stipulation on topics discussed by the parties.

By December 14, Defendant's wife, non-party Ms. Akshita Banerjee, has agreed to produce certain documents requested by Plaintiff. Also by December 14, Ms. Banerjee and her father, non-party Mr. Anant Gandhi, will also offer written affidavits relating to the subject of Mr. Banerjee's domicile. Ms. Banerjee and Mr. Gandhi are not parties to this dispute and have not been served third-party subpoenas, and accordingly offer this evidence in the spirit of cooperation. Ms. Banerjee and Mr. Gandhi maintain that they are not required to produce documents or testimony in the absence of valid subpoenas.

Plaintiff notes that, thus far, Defendant has made one production of only 17 documents totaling 92 pages. Plaintiff notes its disappointment at the extensive delays in Defendant's production. Defendant notes that the process of locating documents has been difficult and time-consuming, in particular the process of obtaining documents from India, which is being managed locally by Defendant's mother, who is in her 80s and a practicing physician. He thanks the Plaintiff for its continued patience.

**Outstanding Discovery Disputes**

The parties have met and conferred twice to attempt to resolve their differences. Although the parties have successfully resolved some discovery issues, the following issues remain in dispute:

1. Redactions
   **Plaintiff's Position**: Although there is a Confidentiality Stipulation and Protective Order signed by your Honor, Defendant has extensively redacted various documents he has produced. See Chembio Diagnostic Sys., Inc. v. Saliva Diagnostic Sys., Inc., 236 F.R.D. 129, 136–37 (E.D.N.Y. 2006). Moreover, Defendant's redactions include information that Plaintiff specifically requested and Defendant agreed to produce. For example, Plaintiff requested--and Defendant agreed to produce—documents sufficient to identify Defendant's financial accounts and entities he owns. But in Exhibit C [to be filed under seal pending the approval of the Court] at BANER000087–88, Defendant redacted this information.
   **Defendant's Position**: Defendant seeks the right to redact sensitive information that is irrelevant. Defendant Mr. Banerjee is a private individual rightly concerned with protecting his privacy. Plaintiff has previously filed through ECF an unredacted document containing Defendant's social security number and date of birth, among other information. See Docket Entry #59 Letter from Ben Hutman, (Jul. 27, 2016). This mistake coupled with the lack of trust between the parties raise legitimate concerns about whether Plaintiff will exercise due care in safeguarding Defendant's personal information.

   Defendant has sought to redact irrelevant information that is personal or financially sensitive. For example, among the documents sought by Plaintiff are those containing Defendant's financial account information. While Mr. Banerjee's financial information may be relevant to Plaintiff's anticipated post-judgment collection efforts, very little of his bank statements will be relevant to the place of his domicile in February 2014. See, e.g., Belluomo v. Tiger Schulmann's Mixed Martial Arts, No. CV 14-4402 (JS)(AYS), 2015 U.S. Dist. LEXIS 137001, at *14 (E.D.N.Y. Oct. 7, 2015) (denying motion to compel discovery of defendant's financial and real estate records which were not relevant to the claims at issue, only to future judgment collection efforts). Other than the name and address of the institution and the account-holder and the date of the relevant statement, it is not clear what information in an account statement would be relevant to the question of Mr. Banerjee's domicile.

   Defendant has produced much of the requested information and will continue to produce more, but he wishes to redact sensitive information that is not possibly relevant to the subject of his domicile in February 2014. This would include not only the social security numbers, dates of birth and other identifying information of Mr. Banerjee and his family, but also account numbers, and the amounts held in financial accounts.

2. <u>Deposition Documents</u>
**Plaintiff's Position**: Defendant's residence/domicile was at issue in at least one other federal matter, *Tuckerbrook Alternative Investment, LP v. Banerjee*, No. 09-cv-11672. Plaintiff has requested deposition transcripts and exhibits from the *Tuckerbrook* matter or any other matter since January 1, 2012 because those documents are likely to discuss Defendant's residence/domicile. Defendant has claimed that these documents are subject to a confidentiality agreement but is And it is well-established that "confidentiality agreements … do not immunize … materials from discovery." <u>Grumman Aerospace Corp. v. Titanium Metals Corp. of Am.</u>, 91 F.R.D. 84, 87 (E.D.N.Y. 1981).
**Defendant's Position**: The deposition transcript and exhibits sought by Plaintiff in Request 6 were created as part of a litigation captioned <u>Tuckerbrook Alternative Investments, LP v. Banerjee</u>, 12-cv-11643-LTS (D. Mass.) (the "Tuckerbrook Litigation"). The parties settled that litigation pursuant to a Settlement Agreement dated May 15, 2015, which provides in Section 3, under the heading "Confidentiality":

*The Parties agree that all information relating in any way to this Agreement shall be held confidential by them (and by the Parties' legal counsel financial advisors and accountants) and shall not be publicized in any manner, including those referenced in Paragraph 2 above, to any person (other than the Parties' legal counsel, financial advisors and accountants), business entity or government entity.*

The deposition transcript and exhibits sought here by Plaintiff are clearly covered by this confidentiality provision – they are documents relating to the Tuckerbrook Litigation. Further, the plaintiff in the Tuckerbrook Litigation sought and was granted leave of the Massachusetts District Court to file this deposition transcript under seal. See <u>Opinion and Order</u>, 12-cv-11643 (D. Mass Sept. 30, 2014) at 7; <u>Motion to Seal Pleadings and Exhibits Concerning the Plaintiff's Motion for Partial Summary Judgment</u>, 12-cv-11643 (D. Mass Nov. 13, 2013) at 3.

New York federal courts have recognized that a confidentiality agreement will provide protection even if it has not been formally ordered by a court. <u>See, e.g.</u>, <u>United States v. Oshatz</u>, 700 F. Supp. 696, 703 (S.D.N.Y. 1988) (denying a motion to reconsider a prior order quashing a subpoena for a deposition transcript that had been stipulated by the parties as confidential), and <u>Botha v. Don King Prods.</u>, 1998 U.S. Dist. LEXIS 2228 *4-7, 1998 WL 88745 (S.D.N.Y. Feb. 27, 1998). The case cited by Plaintiff, <u>Grumman Aerospace</u>, does not hold otherwise. It involved efforts by a plaintiff in an antitrust suit to obtain an economic analysis report commissioned by the U.S. Department of Defense and others analyzing the impact of price fixing in the titanium industry. The court distinguished the confidentiality agreement in <u>Grumman Aerospace</u>, which the parties had agreed to privately, from confidentiality agreements reached in a litigation context. <u>Grumman Aerospace</u>, 91 F.R.D. at 87-88.

In this case, the requested transcript contains confidential information about third parties that are not in any way involved in this litigation and who have a reasonable expectation that their information will be kept private.  Plaintiff has offered little evidence that these materials will provide relevant information on the subject of Defendant's domicile in February 2014 that could not be obtained elsewhere.  Finally, the usefulness of any hypothetical evidence that Plaintiff seeks would be outweighed by the burden on Defendant in being forced to defend his breach of that Settlement Agreement against lawsuits by other aggrieved parties thereto.

3. Communications Relating to Defendant's Home
**Plaintiff's Position**: Plaintiff has requested communications, such as emails, that mention the words "home" or "our house."  The purpose of this request is to get the "private and unguarded emails" wherein Defendant might reference his actual home.  See BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc., No. 15 C 10340, 2018 WL 1616725, at *10 (N.D. Ill. Apr. 4, 2018).
**Defendant's Position**:  Plaintiff's Request No. 20 seeks "All Communications that mention the words "home" or "our house."  Defendant repeats his objection from October 8, 208 here:

Defendant objects to this request to the extent it calls for documents that are not relevant to this action or are confidential or protected by privilege, or is overly broad and unduly burdensome. In particular, this request could call for a vast array of irrelevant material. For example, it appears to request junk mail that mentions the word 'home': for example, a coupon from Home Depot; a Domino's flyer offering home delivery; or spam email advertising home insurance. The definition of "communication" used by Plaintiff is so broad ("every manner of disclosure... whether orally or by document or otherwise") that this request could arguably call for any book or computer file containing the term "home." None of this would be relevant. And this request is also overly broad and burdensome. Defendant is a private individual, not a large corporation. It's not practical for him to review all "communications", particularly as that is defined in these Requests, to see whether the key words "home" or "our house" are contained anywhere within. Defendant will therefore not produce documents in response to this request, which appears to simply be part of an impermissible fishing expedition.

The case cited by Plaintiff, BankDirect, is irrelevant.  It involved a motion for spoliation sanctions based on allegations the defendant had intentionally destroyed email evidence.  The court in BankDirect did not suggest that emails being "private and unguarded" is an adequate justification for their discovery.  See Bankdirect Capital Fin., LLC v. Capital Premium Fin., Inc., No. 15 C 10340, 2018 U.S. Dist. LEXIS 57254, at *28.  Rather, the court noted that the parties agreed the deleted emails included many pertinent to the case.  Id. at *23-25.

Plaintiff here, however, has failed to show that Request 20 is "relevant to any claim or defense or that such evidence is reasonably calculated to lead to the

4

discovery of admissible evidence" and, as such, this request constitutes nothing more than an impermissible fishing expedition. See Belluomo v. Tiger Schulmann's Mixed Martial Arts, No. CV 14-4402 (JS)(AYS), 2015 U.S. Dist. LEXIS 137001, at *14 (E.D.N.Y. Oct. 7, 2015). See also Fed. R. Civ. Proc. 26(b)(1) (requiring that requests are proportional to the needs of the case, considering (i) the importance of the issues at stake in the action, (ii) the amount in controversy, (iii) the parties' relative access to relevant information, (iv) the parties' resources, (v) the importance of the discovery in resolving the issues, and (vi) whether the burden or expense of the proposed discovery outweighs its likely benefit).

4. Communications and Enrollment Records with Defendant's Children's Schools
**Plaintiff's Position**: The place where one's "children dwell is likely to be his domicile." Kenosha Unified Sch. Dist. v. Stifel Nicolaus & Co. Inc., 607 F. Supp. 2d 967, 974–75 (E.D. Wis. 2009). Moreover, communications with Defendant's children's schools—and particularly the enrollment documents—are likely to reveal Defendant's true domicile. Although Defendant made a concerted effort to limit his exposure to lawsuits in the United States, for communication with his children's schools he is more likely to have listed his genuine contact information.
**Defendant's Position**: Defendant objects to producing any information relating to his children, including communications with their schools. Mr. Banerjee's children are minors and are not parties to this dispute. Since their residence may conceivably be relevant to the question of his domicile, Mr. Banerjee has agreed to provide a written stipulation attesting to the place(s) of their residence from 2009 to 2014. Plaintiff's request for all communications between Mr. Banerjee and his children's schools is not likely to uncover any relevant information beyond what is contained in that stipulation, while also infringing on the privacy of Mr. Banerjee's minor children.

5. Financial and Real Estate Documents in Defendant's Wife's Name
**Plaintiff's Position**: It is Plaintiff's contention that Defendant has been attempting to avoid paying his legal bills and avoid paying judgments for many years. As a part of that strategy, Defendant has been claiming to live in India and endeavored to keep his American assets and home in his wife's name or in the name of entities he or his wife control. Plaintiff is therefore seeking financial and real estate documents that might be probative of Defendant's true domicile. For example, financial documents showing the co-mingling of Defendant's funds with those of his wife or real estate documents showing Defendant directing construction or paying bills on a house that was in his wife's name. Because it is within Defendant's "practical ability to obtain the documents" he must produce them. Bank of New York v. Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 146 (S.D.N.Y. 1997).
**Defendant's Position**: Document Requests 1, 2, 4, and 11 ask Mr. Banerjee to produce documents belonging to his wife that are within her sole possession and control. Defendant does not have the practical ability to obtain his wife's papers or her hard drives without her agreement. If Plaintiff seeks information from Mrs.

5

Banerjee beyond what she willingly turns over, it should seek it from her *directly* by validly serving a third party. It is not appropriate for Plaintiff to try to avoid this process by claiming her husband controls her documents.

Plaintiff cites an irrelevant case, Bank of New York, involving a dispute between financial institutions over a pledge agreement. The first defendant bank, which was the assignee of the pledge from the second defendant bank, was deemed to have sufficient control over the second defendant bank as to be able to obtain documents from it. The court wrote that "documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action." Bank of N.Y. v. Meridien Biao Bank Tanz., 171 F.R.D. 135, 146 (S.D.N.Y. 1997). That is not the case here. Mr. Banerjee does not have the "right, authority, or practical ability" to take documents from his wife without her consent.

Plaintiff also argues that Mr. Banerjee has been hiding assets by putting them in his wife's name for years, and that this makes them entitled to her documents. But Ms. Banerjee's assets do not become her husband's assets just because Plaintiff has a theory that they are. There's no evidence to support this theory. And the requested documents go back to 2009: it's not plausible that Defendant was hiding assets five years ago, before their complaint was even filed. Plaintiff should issue a subpoena to Ms. Banerjee and be prepared to defend its request in that context if it wishes to obtain her documents.

6. Third-Party Subpoenas
**Plaintiff's Position**: Because of the paucity of the documents produced by Defendant and Defendant's claim not to possess various categories of documents, Plaintiff would like to subpoena various third-parties, including Defendant's wife; Robert Schiff—a contractor with which Defendant got into a dispute regarding the building of his Pittsburgh home (See Ex. D, hereto); the Commonwealth of PA; and Tuckerbrook Alternative Investment, L.P..
**Defendant's Position**: Other than Ms. Banerjee, Plaintiff has not mentioned issuing any of the above-mentioned subpoenas. Defendant disagrees with Plaintiff's request and suggests that it wait until his supplemental production is made in December before deciding whether further information is needed. Furthermore, Defendant reserves his right to object to any of these subpoenas if and when they are issued.

At the request of the Court, the parties welcome the opportunity to more fully set forth their positions—and the evidence in support of those positions—in letter briefs to the Court.

Jointly submitted,

By:   /s/ Ben Hutman                           By:       /s/ Jennifer Cabrera
    Ben Hutman                                         Jennifer Cabrera
    SADIS & GOLDBERG, LLP                 CABRERA CAMMAROTA PLLC
    551 5th Avenue, 21st Floor                    1115 Broadway, 12th Floor
    New York, New York 10176               New York, New York 10010
    (212) 573-6675                                       (646) 470-0805
    *Counsel for Plaintiff*                              *Counsel for Defendant*