```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 3   SADIS & GOLDBERG, LLP,
 4                  Plaintiff,
 5            v.                                14 Civ. 913 (LTS)(OTW)
 6   SUMANTA BANERJEE,
                                                Conference
 7
                    Defendant.
 8
     ------------------------------x
 9                                              New York, N.Y.
                                                December 20, 2018
10                                              11:30 a.m.
11   Before:
12                        HON. ONA T. WANG,
13                                              Magistrate Judge
14                         APPEARANCES
15   BOIES, SCHILLER  FLEXNER LLP
          Attorneys for Plaintiff
16   BY:  BEN HUTMAN
17   CABRERA CAMMAROTA PLLC
          Attorneys for Defendant
18   BY:  JENNIFER M. CABRERA
19
20
21
22
23
24
25
```

1              (Case called)
2              MR. HUTMAN:  Ben Hutman, for the plaintiff Sadis &
3     Goldberg LLP.
4              THE COURT:  Good afternoon.
5              MS. CABRERA:  Jennifer Cabrera for the defendant,
6     Sumanta Banerjee.
7              THE COURT: Good morning.  When you speak, you can
8     just stay seated if you want.  You don't have to stand up
9     anymore.
10             We're here on a discovery conference, and I guess we
11    can just dive right into it because I'll look at your joint
12    letter.  Should we just go down these issues one by one?
13             MS. CABRERA:  I'd defer to Mr. Hutman.
14             MR. HUTMAN:  That's fine.
15             THE COURT:  I guess the first one is redactions.  Is
16    that the right one?
17             MR. HUTMAN:  Yes.
18             THE COURT:  All right.  What's been redacted?  I
19    guess, Mr. Hutman, why don't you start.
20             MR. HUTMAN:  Sure.  I actually brought all the
21    documents that were produced in discovery, so if the Court
22    would like to look and see what the redactions we're talking
23    about are, the Court could look at all of them.  There weren't
24    that many.  There weren't that many documents produced.  But a
25    lot of information was redacted, not just Social Security

1    numbers but information beyond Social Security numbers, so the
2    name of the accountant who filed the tax return is scribbled
3    out.  We asked for bank statements to be produced, and all the
4    information other than the dates of entries have been -- all
5    the substantive information about what the money was spent on
6    or how the money went in and out was redacted.  There was a
7    separation agreement that was produced.  One of the things that
8    we had asked for was about the defendant's assets, both
9    property and business assets, because we believe some of them
10   are United States assets and therefore indicative of his
11   domicile, and that information was redacted out.  So we can't
12   see what those assets are and we can't see what the property
13   that he my own is.
14            His passport has some pages just redacted.  I don't
15   know why.  So we're not going to see where he traveled back and
16   forth to see how much time he spent in the United States versus
17   in India.  But we don't know what's on those pages, so we can't
18   make a confirmation one way or the other without that
19   information and many more such similar redactions.
20            THE COURT:  There is a protective order in place,
21   right?
22            MS. CABRERA:  That is correct.
23            THE COURT:  Why all these redactions?  It seems like
24   some of them at least relate to relevant information.
25            MS. CABRERA:  I'll start with the passports.  Over 20

pages of his passport were produced unredacted.  The only pages that were redacted contained stamps that postdate the period in question, so after --

THE COURT:  That's not a reason to redact.

MS. CABRERA:  Fair enough.  That is the reason it was redacted.

THE COURT:  OK.

MS. CABRERA:  The separation agreement, I would argue that the assets that are being divided aren't relevant to the question of his domicile two years after this agreement was entered.  And then the subject of --

THE COURT:  Wait, wait.  This is a separation agreement between --

MS. CABRERA:  The defendant and his wife.  They separated in 2012, and this is their division of assets.

MR. HUTMAN:  To be clear, from plaintiff's perspective, plaintiff believes that he continued to live with his wife even though they had -- despite the separation agreement, continued to use those assets despite the separation agreement.  And if we know what the assets are, we can check.  We can see if he's been taking money out of those accounts.  We can see if he's been involved in whatever the business is that's listed there.

MS. CABRERA:  Our response would be that if it's relevant to the question of his domicile, absolutely, it should

1   be produced unredacted.  However, if it just goes to what his
2   assets are, that has more to do with post-judgment collection
3   efforts, which we're not at that point yet.
4           THE COURT:  It sounds to me like he's made a facially
5   valid argument that it may have to do with where assets are
6   located and whether he's actually using assets that might,
7   under the separation agreement, have gone to his wife.  So,
8   yes, these should be produced in unredacted form.
9           MS. CABRERA:  The separation agreement should be
10  produced in unredacted form.  How about the question of bank
11  statements where the address of the account holder, the
12  relevant dates, those are all present?  The only things that
13  have been redacted are the actual items, actual charges on
14  statements.  I just can't see how that's relevant to the
15  question at issue here.
16          THE COURT:  Mr. Hutman, that part I'd like to hear a
17  little bit more about.
18          MR. HUTMAN:  Sure.  We think that it's relevant
19  because if we see in the statements that the items he's
20  spending on are in the United States or on his wife and kids
21  when they were separated and assets were already supposed to be
22  separate, we see an intermingling of their assets, we think
23  that's evidence that, in fact, he was living together with his
24  wife and kids, which is what we believe was the case.  We don't
25  believe -- at least for the time period 2013-2014, we believe

1    he was living with his wife and children and was not residing
2    in India.  He traveled there, of course, but he wasn't actually
3    living there.  So we want to see where that money's being spent
4    and if there's an intermingling of their assets.
5               Also, our broader point is there's a protective order.
6    The normal way these things work is you just produce them in
7    full and then we can decide what's relevant or not.  We get to
8    go through it and figure it out.  The other side doesn't get to
9    make that decision.
10              THE COURT:  Right.  I think they should be produced
11   unredacted as well.
12              MS. CABRERA:  OK.
13              THE COURT:  Is there anything else?  I'm assuming that
14   you led with your stronger points.  Are there other redactions,
15   categories of redactions?  You kind of see where this is going.
16              MR. HUTMAN:  There are some more.  The accountant I
17   mentioned on the tax returns to us is very important, and there
18   are other ones that are small.  We don't really know what's
19   under them.  There's a couple places where the specific unit --
20   he claims he had an apartment in India where the unit number is
21   redacted out, but the rest of the address isn't.  We think we
22   know what's underneath there because there's other documents
23   that have the full address, so we're assuming what it is, but
24   it would be nice to have everything in, not to just have sort
25   of little redactions here and there.

1           THE COURT:  Well, those redactions in particular where
2   they're potentially inconsistent sound a little bit more like
3   carelessness rather than that a redaction was made for a
4   particular purpose that undermines plaintiff's ability to get
5   jurisdictional discovery.  So for those, unless you want -- I'd
6   like to at least hear a reason why the information is relevant.
7           MR. HUTMAN:  I think I can explain a reason why that
8   particular information is relevant.  The defendant in his
9   various filings at the district court level and at the Second
10  Circuit has been inconsistent as to where he's claimed what his
11  actual address was in India, and we'd like to be able to
12  impeach him.  I'd like to be able to put something in front of
13  him saying:  You said your address was this while this document
14  says your address was that.
15          We think that the reason why he was doing that was he
16  didn't want us to be able to serve him in India.  He didn't
17  want us to have a full address.  There were documents that do
18  have a full address, so he hasn't been perfectly consistent
19  with those redactions, but we'd like to have the full thing to
20  be able to check it back and forth and to be able to impeach
21  his testimony.
22          THE COURT:  Let's hear from Mr. Banerjee's counsel.
23  Do you have any objection?  You have a protective order in
24  place.  It sounds like this might be information that the
25  plaintiff already has.  Do you have any objection to just

1   producing, unredacted, the remainder of the redacted documents?
2              MS. CABRERA:  These documents have been produced to me
3   from my client in redacted form.  I think that with a court
4   order, I may be in a better position to get them in unredacted
5   form.  However, practically speaking, I think that we may end
6   up having arguments over document after document after
7   document.
8              So if we could perhaps narrow down which ones you
9   really want, Mr. Hutman, that could help speed this process
10  along.
11             THE COURT:  Well, no, you know what, here's how I'll
12  speed the process along.  For all of the redactions, your
13  client, Mr. Banerjee, is directed to produce it to his counsel
14  in unredacted form.
15             MS. CABRERA:  OK.
16             THE COURT:  Then counsel is directed to produce it in
17  unredacted form to plaintiff's counsel, unless counsel has
18  determined that there is a claim of privilege, OK.  Relevance
19  will not be grounds for redactions.  Privacy will not be
20  grounds for redaction.  You see where I'm going with this?
21             MS. CABRERA:  Yes.
22             THE COURT:  If that is still an issue after you get
23  the unredacted documents, Mr. Hutman, we can address that later
24  because it'll, I'm sure, be a narrower scope.
25             MR. HUTMAN:  Thank you.

1            THE COURT:  OK.  Redactions done.

2            Deposition documents.  All right.  Actually, before we

3    dive into this, what was the -- it was litigation with

4    Mr. Banerjee's employer and business partner.  OK.

5            Documents and exhibits in the District of

6    Massachusetts action.  Is this the action that Sadis & Goldberg

7    represented Mr. Banerjee or is this a different action?

8            MR. HUTMAN:  This one in particular is a subsequent

9    action.  We did represent him in litigation against the same

10   party, but not in this particular litigation.  We were no

11   longer his counsel at that point.

12           THE COURT:  What are plaintiffs seeking in this, and

13   what is defendant's reason for objection?

14           MR. HUTMAN:  We're seeking the full deposition

15   transcript.  A small part of the transcript was filed with the

16   court, so we have that because it was publicly filed, but the

17   rest of the deposition transcript and, more importantly, the

18   exhibits we believe will also have relevancy towards where he

19   was living in 2012 at the time of the deposition.  And because

20   he's claiming to have been in India at that time, if we could

21   demonstrate, at least we think we can, that he was living at

22   least substantially part of the year in the United States, that

23   would undermine his claim to have switched his domicile to

24   India.

25           MS. CABRERA:  The deposition transcripts in the

1   Tuckerbrook action are covered by a confidentiality agreement.
2   The case was settled, and there's a confidentiality provision.
3   That settlement agreement was filed in the Massachusetts
4   District Court under seal by permission of the judge there.
5   Mr. Banerjee is prohibited by that agreement from disclosing
6   it.  It contains really sensitive information about third
7   parties who have nothing to do with this litigation.  That
8   would be the reason why he would need a court order to turn
9   anything like that over.
10          THE COURT:  He would need a court order.  So you have
11  your court order.
12          MS. CABRERA:  OK.
13          THE COURT:  He's directed to turn it over.
14          MR. HUTMAN:  Thank you.
15          THE COURT:  All right.  No. 3, key word issue,
16  communications relating to defendant's home.  This seems to be
17  potentially a closer call.  Is this strictly a keyword search
18  of Mr. Banerjee's email for emails that refer to "home" or "our
19  house"?
20          MR. HUTMAN:  We are willing if -- if defendant's
21  counsel were to run that keyword search and then make a
22  relevance determination before producing documents, that would
23  be fine with us.  We just don't want Mr. Banerjee to be the one
24  doing that, and we want to be able to get emails because we
25  believe that despite the fact that he tried to make sure all

1   his assets in the United States were in other names, make sure
2   he always put his address on court documents being in India, we
3   think in private emails with his family -- we actually have
4   examples of one email that we do have where he referenced his
5   home in Connecticut in an exhibit in the Tuckerbrook action.
6   So we think that in private emails he's likely to have said
7   "our home," "I'm coming home," stuff like that that would
8   indicate that he genuinely lived in Pennsylvania or
9   Connecticut, depending on the time period.
10              THE COURT:  Any objection to defendant's counsel doing
11  the search and making the representation as to volume and
12  relevance, or do you need a court order so that Mr. Banerjee
13  will make that, the emails, accessible for your searching?
14              MS. CABRERA:  I think a court order would be helpful.
15              THE COURT:  So that is also going to be so ordered
16  that Mr. Banerjee is directed to provide access or a mirror or
17  some other way to search the emails from the relevant time
18  frame for those terms, and then defendant's counsel will make
19  that representation to plaintiff's counsel and we'll proceed
20  from there.
21              MS. CABRERA:  OK.
22              THE COURT:  Thank you.
23              The children's school, I see where we're going here.
24  Here I see that Mr. Banerjee has agreed to provide a written
25  stipulation attesting to the children's place of residence from

1    2009 to 2014.  If the plaintiff is able to tie through these

2    other bits of evidence, other bits of discovery or documents,

3    that he was actually living with the children, wouldn't this be

4    enough?

5              MR. HUTMAN:  Yeah, theoretically, if we had enough, if

6    we had the emails, then we wouldn't need it.  But really what I

7    was hoping for was the emergency contact information type of

8    thing that you'd have in a school document that they, of

9    course, have to put his real emergency contact.  He couldn't

10   put India, assuming we're correct that he was actually with his

11   kids in Pennsylvania.

12             THE COURT:  How about something more limited like the

13   emergency contact information that was provided for each of the

14   children for each year from 2009 to 2014?

15             MS. CABRERA:  I believe that my client is concerned

16   about providing anything identifying about his children --

17   names, date of birth, Social Security, and so forth -- which I

18   can sympathize with.  These are minors, and there's no reason

19   they need to be brought into this.  Their whereabouts are

20   covered in two affidavits, and I also believe that two

21   documents have actually been produced by Mrs. Banerjee as part

22   of her voluntary production relating to their school enrollment

23   information.

24             THE COURT:  I'm not talking about school enrollment

25   information.  I'm talking about who was provided as emergency

1    contact information.  Again, you have a protective order in
2    place.  This is not going to be publicly filed anywhere.  It's
3    not going to be publicly disclosed anywhere.
4            MS. CABRERA:  OK.
5            THE COURT:  If Mr. Banerjee is concerned about the
6    identities of his children, he may redact the first names of
7    the children.  I assume their last names are Banerjee?
8            MS. CABRERA:  Yes, that's correct.
9            THE COURT:  So he can redact the first names of the
10   children and redact, I think, everything else other than the
11   contact information, the emergency contact information that's
12   provided.  The emergency contact information that is provided,
13   however, shall not be redacted in any way.  So if that ends up
14   including a nanny or somebody else, that information will be
15   provided in unredacted form.
16           MS. CABRERA:  OK.  I will pass that along.  It may not
17   come up, but my understanding is that when
18   Mr. and Mrs. Banerjee have contacted the schools in the past,
19   they didn't have records going back this far.  So it's possible
20   we won't be able to get this at all, but I will let them know
21   that this is the order.
22           THE COURT:  All right.  We'll cross that bridge if and
23   when we come to it.
24           Next is financial and real estate documents in
25   Mr. Banerjee's wife's name.  What is the dispute here?  Does

1   Mrs. Banerjee have separate counsel, or are you representing
2   Mrs. Banerjee?
3            MS. CABRERA:  I am representing Mrs. Banerjee as well.
4            THE COURT:  They're going to get the information
5   whether it comes from Mr. Banerjee or, quote/unquote,
6   Mrs. Banerjee.  I don't know what her last name is or if it's
7   the same.
8            MS. CABRERA:  It's Banerjee.
9            THE COURT:  Whether it comes from Mr. or
10  Mrs. Banerjee, the information requested regarding financial
11  and real estate documents in Mrs. Banerjee's name will be
12  produced.
13           MS. CABRERA:  My question about that is Mrs. Banerjee
14  is not a defendant in this action.  I don't see --
15           THE COURT:  You've heard of third-party discovery,
16  right?
17           MS. CABRERA:  Absolutely.
18           THE COURT:  You have third-party discovery and
19  jurisdictional discovery, so if --
20           MS. CABRERA:  But no subpoena --
21           THE COURT:  If you have a further reason for
22  withholding or seeking some sort of a further protective order
23  for Mrs. Banerjee, I'll hear it, but her mere status as being a
24  nonparty to this litigation is not going to cut it.
25           MS. CABRERA:  I am not arguing with that at all, your

1    Honor.  My only comment is that no subpoena has been served on
2    Mrs. Banerjee, and why are we just -- is Mr. Banerjee producing
3    this on her behalf?  Shouldn't it be directed towards her?  If
4    there were a request directed to my husband to turn over all of
5    my documents, I would say, Why aren't you asking me?  He
6    doesn't have access to my computer.
7            THE COURT:  OK.  How long will it take you,
8    Mr. Hutman, to serve a subpoena on Mrs. Banerjee via her
9    counsel?
10           MR. HUTMAN:  Serve it next week, end of next week.
11           THE COURT:  You're directed to accept service since
12   you made the representation that you represent her as well.
13           MS. CABRERA:  Very good.
14           THE COURT:  All right.  Then we're down to third-party
15   subpoenas.  I guess that includes the other ones as well.
16           Mr. Hutman, any third-party subpoenas you wish to
17   serve, serve them in a timely fashion, and if there's dispute
18   or if there's a third party that's represented by other counsel
19   and you have a dispute, we'll deal with that if and when it
20   comes up.
21           OK.  Anything else?
22           MR. HUTMAN:  Thank you, your Honor.
23           MS. CABRERA:  Yes, I have a question about the process
24   going forward.  We're collecting a large amount of evidence
25   regarding Mr. Banerjee's domicile in the beginning of 2014, and

1    I'm wondering what form -- I understand you'll be hearing
2    dispositive motions on this.  What form are you anticipating
3    that would take?  Would it be a renewal of a motion to set
4    aside judgment, or what do you anticipate?
5             THE COURT:  I'm not sure I understand your question.
6    You're talking about form of evidence?  You're producing the
7    evidence in the form that you find it.
8             MS. CABRERA:  Absolutely.
9             THE COURT:  If there's a problem during the discovery
10   process, you try to work it out with your opposing counsel.
11            MS. CABRERA:  I'm sorry.  I was unclear.  That is not
12   what I mean.
13            THE COURT:  OK.
14            MS. CABRERA:  What I mean is once discovery has closed
15   and we come --
16            THE COURT:  We'll have a status conference, and we'll
17   talk about it then.  All right.
18            MR. HUTMAN:  Just one more item.
19            THE COURT:  Yes.
20            MR. HUTMAN:  This wasn't in the letter because there
21   was an additional production of documents that was coming after
22   the letter, and we were hoping to receive all the documents
23   that we asked for.  I'm sure that the argument is, for a lot of
24   them, that they don't exist, despite there not being an
25   objection to them.  But, in particular, one set of documents

1   that we know must exist that we didn't get a full production
2   for are the defendant's tax returns.  We got the years 2013 and
3   2014, but we had asked for tax returns both before or after
4   those years, and defendant's counsel had agreed to produce
5   them, but we did not actually receive them.  We only received
6   two, 2013 and 2014, but not 2010, 2011, 2012, 2015, 2016.
7            THE COURT:  Isn't there a form that a taxpayer can
8   sign that allows the IRS to release those forms?
9            MR. HUTMAN:  Yes.
10           THE COURT:  Your clients are directed to complete
11  those forms and turn them over timely so that Mr. Hutman can
12  get those tax returns from the IRS directly.
13           MS. CABRERA:  Your Honor, my understanding is that
14  there were no tax returns filed by Mr. Banerjee in the United
15  States from 2009 through 2012.  His Indian tax returns that
16  were actually filed were turned over.  There aren't any others.
17           THE COURT:  So the representation is that there is no
18  U.S. tax returns filed in 2009 to 2012?
19           MS. CABRERA:  That's correct.
20           MR. HUTMAN:  Respectfully, we'd like to test that.  If
21  we could get the authorization, we can ask the IRS if there are
22  any.
23           MS. CABRERA:  OK.  We're directed to ask the IRS for
24  tax forms from 2009 to 2012?
25           THE COURT:  No, you're directed to provide the

1    authorization so that Mr. Hutman can ask the IRS.
2              MS. CABRERA:  OK.
3              THE COURT:  Anything else?
4              MR. HUTMAN:  That's it for plaintiff.
5              MS. CABRERA:  No.
6              THE COURT:  All right.  Thank you.
7              If there are additional discovery disputes that arise,
8    particularly with requests to the third-party subpoenas that
9    you're going to serve, Mr. Hutman, just take a look at my
10   individual practices and rules, and you can write a joint
11   letter if there's a dispute that you need my intervention.  OK.
12             MR. HUTMAN:  Great.  Thank you.
13             THE COURT:  All right.  Thank you very much.  Happy
14   New Year.
15             MS. CABRERA:  You too.
16             THE COURT:  The parties are directed to order the
17   transcript and share the cost.
18             MR. HUTMAN:  Thank you.
19             THE COURT:  Thank you.
20             MS. CABRERA:  I have a question actually.  I filed --
21             THE COURT:  Are we still on the record?
22             MS. CABRERA:  Yes, I'm sorry.  The last transcript,
23   when we ordered it, I had filed it.  Is that what you would
24   like us to do?
25             THE COURT:  You don't need to file it.  I want you

1   both to have the transcript in a timely fashion so that if
2   there's a dispute later, you both are referring to the same
3   transcript because I will not hear and do not like when parties
4   say, "I remember at the last conference," but I don't know for
5   sure because I don't have the transcript.  That's what you're
6   supposed to alleviate.  There's no need to file the transcript.
7            MS. CABRERA:  Thank you.
8            THE COURT:  All right.  Thanks.
9            MR. HUTMAN:  Thank you.
10           (Adjourned)