```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

SADIS & GOLDBERG, LLP,

            Plaintiff,

       v.                            14 CV 913(LTS)(OTW)

SUMANTA BANERJEE,

            Defendant.

------------------------------x
                                     New York, N.Y.
                                     February 6, 2019
                                     12:10 p.m.

Before:

                    HON. ONA T. WANG,

                                     Magistrate Judge

                        APPEARANCES

BOIES, SCHILLER & FLEXNER, LLP
     Attorneys for Plaintiff
BY:  BEN HUTMAN

CABRERA CAMMAROTA PLLC
     Attorneys for Defendant
BY:  JENNIFER M. CABRERA

FERBER CHAN ESSNER & COLLER, LLP
     Attorneys for Defendant
BY:  ROBERT N. CHAN
```

1           (Case called)
2           (In open court)
3
4           (In open court; case called)
5           THE LAW CLERK:  Counsel, please state your name for
6    the record.
7           MR. HUTMAN:  Ben Hutman and I represent Sadis &
8    Goldberg.
9           THE COURT:  Good afternoon.
10          MS. CABRERA:  Jennifer Cabrera.  I represent the
11   defendant Sumanta Banerjee.
12          THE COURT:  Who is apparently sitting here?
13          MR. BANERJEE:  Yes.
14          THE COURT:  Good afternoon, Mr. Banerjee.
15          MR. BANERJEE:  Good afternoon.
16          MR. CHAN:  I am Robert N. Chan representing
17   Mr. Banerjee.
18          THE COURT:  Good afternoon.  Please be seated.
19          The first thing we have to deal with is the motion to
20   withdraw and the consent order.  I don't have any other issues
21   before me; right?  So all I need to do is sign this proposed
22   consent order?
23          MS. CABRERA:  I believe that is correct, your Honor.
24          THE COURT:  I am going to sign it.  Since Mr. Banerjee
25   is here today, I am going to direct my comments to you,

1    Mr. Banerjee, as well as your counsel, which is that this
2    substitution and order is not going to derail or slow down the
3    process here; okay?  We're going to keep moving.  And if it
4    turns out that there is -- I guess this is only the second
5    counsel, but you were pro se before this.  We're not going to
6    slow this down anymore, Mr. Banerjee.  We have had
7    conversations about this before and before you retained Ms.
8    Cabrera.  We're not stopping.  We're going to proceed.
9              MR. CHAN:  Your Honor.
10             THE COURT:  Yes, Mr. Chan.
11             MR. CHAN:  As you can see from my correspondence since
12   I have been retained several weeks ago, we have been moving
13   forward quite expeditiously.  In fact, I guess in the most
14   recent correspondence there were several open issues.  I
15   believe we basically resolved them.  We have a deposition of
16   Mr. Banerjee scheduled for next Thursday -- a week from
17   tomorrow.  It is not our intention to delay anything.  In fact,
18   it is in Mr. Banerjee's interest to move forward expeditiously.
19             THE COURT:  Thank you for that, Mr. Chan.  It did seem
20   from the correspondence that things seemed to be moving.
21             Let's hear from Mr. Hutman.  What is still outstanding
22   at least from plaintiff's perspective.
23             MR. HUTMAN:  From plaintiff's perspective there are
24   still a couple items outstanding.
25             THE COURT:  Let's take them one at a time.

1          MR. HUTMAN:  The most important and in some ways more
2     egregious is defendant's credit card statements.  There were
3     redacted credit card statements that were produced to us with
4     all the information about the transactions covered up.  We
5     couldn't tell where the credit cards were being used.  If the
6     credit cards were being used in Pittsburgh that would be an
7     indication that Mr. Banerjee was using his credit card
8     Pennsylvania because he lived there.  And if they were being
9     used in India, that would be an indication that he was in India
10    on the times and dates when the transactions occur.  Because it
11    is covered up, we cannot see what it says.
12         We have been told that they cannot give us unredacted
13    versions because they were destroyed.  They claimed it was done
14    not at the direction of defendant, but we believe that whether
15    it was done maliciously or not, it was at the very least
16    negligent and therefore we should be able to get an adverse
17    inference and a presumption that they would have shown had they
18    been uncovered that he was using his credit card in
19    Pennsylvania.
20         Then there are the credit card statements that we do
21    have.  There has been some indication in the back and forth
22    that there are other credit cards that he used during that time
23    period for which we have received no statements at all.  I am
24    not sure I understand the defendant's position on this, but
25    something to the effect of they were in the name of a trust and

1   not in his personal name.  We do not believe that is a
2   sufficient basis for not producing them.
3           THE COURT:  Mr. Chan.
4           Ms. Cabrera, since I signed the order, you are
5   relieved.  You can actually leave if you want to.  There is no
6   need for you to sit here in the conference.
7           MS. CABRERA:  Do you mind if I watch?
8           THE COURT:  You are welcome to watch.  It's your time.
9           MR. CHAN:  You see from the correspondence what
10  happened with these redactions.  A lot of this has to do with
11  the procedures in India, which are different from here with
12  respect to security credit cards, etc.  We are trying to obtain
13  the copies of the original credit card statements and may well
14  succeed.  The fact of the matter is, though, this was a credit
15  card not used by Mr. Banerjee but by his wife.  As you will
16  recall they were separated at the time, and the credit card was
17  the means by which he could provide support for her and their
18  children.  So she was the one that used them.  If they were
19  used in Pittsburgh, which I am told they were, it's not
20  indicative of anything other than that she was in Pittsburgh.
21  Her whereabouts is pretty much irrelevant to the sole factual
22  question here, which is Mr. Banerjee's domicile.
23          He will be returning to India next month and perhaps
24  he will be able to obtain copies to the credit card statements,
25  which would obviate the issue.  As I say I am not quite sure

1   what possible adverse inference can be drawn from it since they
2   were used not by him but by his wife.
3           With respect to the other credit cards, those were
4   credit cards in the name of a company owned by a trust.
5           THE COURT:  Wait.  Wait.  Wait.  I was confused
6   because I thought that the credit card statements in the name
7   of the trust were the ones that Mr. Banerjee was allegedly
8   using to support his wife and children.
9           MR. CHAN:  No.
10          THE COURT:  No.
11          MR. CHAN:  That's the Axis bank credit card.
12          MR. HUTMAN:  A-x-i-s.
13          MR. CHAN:  It's an Indian bank.  That credit card was
14  the credit card his wife was using as a means of support when
15  they were separated.
16          THE COURT:  The representation is that Mr. Banerjee
17  did not use that credit card at all?
18          MR. CHAN:  That's correct.
19          THE COURT:  There is not, for example, one credit card
20  in his name and one credit card in his wife's name?
21          MR. CHAN:  That's correct.  I believe that is the only
22  credit card issued by the bank that was used by either of them.
23          THE COURT:  Wait.  The only credit card that was used
24  by either of them meaning?
25          MR. CHAN:  Meaning it was used by Mrs. Banerjee.

1            THE COURT:  Mrs. Banerjee exclusively?
2            MR. CHAN:  Yes.
3            THE COURT:  Then I guess you are saying that there are
4   other credit cards that Mr. Banerjee was using at the time?
5            MR. CHAN:  Apparently, yes.
6            THE COURT:  Let's move on to those.
7            MR. CHAN:  Right.  Now, those credit cards or those
8   using them were not in his name.  They were in the name of
9   entities owned by a trust.  The only one with authority to
10  release those statements or access those statements is the
11  trustee of the trust.
12           THE COURT:  That trustee is not Mr. Banerjee?
13           MR. CHAN:  Which is not Mr. Banerjee, yes.  He has
14  requested the statements.
15           THE COURT:  When you say "he," you mean the trustee?
16           MR. CHAN:  Mr. Banerjee has requested the statements
17  from the trustee.
18           THE COURT:  Okay.  Where is the trustee located?
19           MR. CHAN:  India.
20           THE COURT:  Do you have any indication of when or how
21  those statements will be received or whether they will be
22  received?  I think this goes right to Mr. Hutman's problem.  If
23  this is evidence that is in a legal sense under Mr. Banerjee's
24  possession, custody and control and he is not getting it and
25  producing it --

1             MR. CHAN:  Well, it is not under his possession,
2    custody or control.  All he can do is request it, which he has.
3    To the best of my knowledge he hasn't gotten a response to his
4    request.
5             Getting them from India by means of third-party
6    subpoenas to the trustees is, if you will, the appropriate
7    procedure but not a terribly efficient procedure.
8             THE COURT:  Right.
9             MR. CHAN:  There are, as I understand it, Indian
10   secrecy laws.  The country has not been using credit cards as
11   long as we have and there is not a great deal of them.  There
12   are a lot of security issues.
13            THE COURT:  I have another question which is,
14   Mr. Chan, do you have any other information as far as how this
15   trust relates to Mr. Banerjee, who the trustee is in relation
16   to Mr. Banerjee?  Some of that might shed some light into
17   whether we're likely to get a response from the trustee and if
18   so when; right?
19            MR. CHAN:  Correct. Yes, I understand. And, no, I
20   don't at this time have that information.
21            Now, Mr. Banerjee, as I have said his deposition is
22   scheduled for a week from tomorrow and it might in the
23   appropriate -- I think the most efficient and appropriate
24   avenue would be to develop this in the course of questioning
25   him at his deposition.

1    THE COURT: I agree with you to a point. Here is what
2    we'll do, because I understand that this is something that
3    plays into Mr. Hutman's concerns about Mr. Banerjee's
4    deposition.
5    Mr. Hutman, why don't you go ahead. We might be going
6    in the same direction.
7    MR. HUTMAN: There were a couple items there that one
8    thing in particular the claim that the defendant is making that
9    the Axis bank credit card was only used by Mrs. Banerjee is
10   untenable even looking at the redacted versions of the
11   statements that we got. There were clearly two cards, one that
12   was in his name and one that was in his wife's name. Although
13   the details of the spending was redacted out, you can see that
14   there are two cards and that in one place in the statement his
15   wife's name is not redacted out. So you can see there are two
16   cards, one in his name and one in his wife's name. We simply
17   do not believe that he wasn't using that card and that it isn't
18   relevant to his domicile.
19   We filed as an exhibit a copy of the statement. I can
20   point the Court to the page where you can see his name and his
21   wife's name.
22   THE COURT: Okay.
23   MR. HUTMAN: If you go to the page 104, Banerjee 104,
24   there is a section that says credit card number.
25   THE COURT: Got it.

1    MR. HUTMAN:  It was Exhibit A to our letter.
2    THE COURT:  Okay.
3    MR. CHAN:  Your Honor, that it was issued to him is
4  not something in dispute.  It is a question of who was using
5  the credit card and our position is it was used by her.
6    THE COURT:  Both cards, right?  That's interesting.
7    MR. CHAN:  Excuse me, your Honor.  May I have a moment
8  to confer with my client?  I may be able to clarify.
9    THE COURT:  Sure.
10   (Pause)
11   MR. CHAN:  My client has advised me that the initial
12 card was issued in his name, but she was the one that used it.
13 Come December a new card was issued in her name, but I didn't
14 use either credit card.  I badger there was some overlap.
15 Basically the idea was that she would use the one in her name
16 once it was issued to her.
17   THE COURT:  When you say there was this transition,
18 this alleged transition happened around when, 2013?
19   MR. CHAN:  Yes, I believe so.
20   MR. HUTMAN:  Your Honor, there are many uses of
21 Mr. Banerjee's card the one in his name after December of 2013.
22   THE COURT:  I see that.  We're not having an
23 evidentiary hearing today.  I am trying to get my arms around
24 the scope of this dispute so that I can put you on the right
25 briefing schedule, which will probably take place after

1  Mr. Banerjee's deposition.  Obviously you will explore all of
2  this in the deposition and we'll see what you see.
3           MR. HUTMAN:  Your Honor, there is a couple of more
4  items that were still outstanding that I hadn't gotten to.
5           THE COURT:  I know.  We're really working on the
6  credit cards right now.  We'll do this.
7           MR. HUTMAN:  With respect to the credit cards and the
8  issue of the trust, the trust credit card, we originally made
9  our document requests back in August of 2018 and the first time
10 we heard about these other credit cards were a couple weeks
11 ago.  So to us at least this is something that should have been
12 requested from the trustee way back then.  Additionally, Mr.
13 Banerjee is right here and he has made the request of the
14 trustee so clearly he can identify who the trustee is.
15          THE COURT:  We're going in the same direction.  What I
16 will do is I am right now going to order that since
17 Mr. Banerjee is here right now that after this conference is
18 adjourned, you are to stay.  The parties and counsel are to
19 stay.  Mr. Chan and Mr. Banerjee are going to consultant and
20 then Mr. Chan will provide as much information as he has and as
21 he can get from Mr. Banerjee about the identity of the trust
22 and the trustee so that if Mr. Hutman determines that his
23 client needs this to happen, he can start the third-party
24 subpoena or request process.  I understand it is not likely to
25 be very efficient given that the trust and the trustee are

1    represented to be in India.  However, that is his prerogative
2    to decide if he wants to go that route because he is not
3    getting information from you.
4              At some point the Court will entertain a motion with
5    respect to those statements, too, if they are not forthcoming.
6    I don't know if that is going to be in the context of a motion
7    to compel or whether it's sanctions or spoliation related
8    motion or some other form.  That is again up to Mr. Hutman.
9              Now, if for some reason Mr. Banerjee does not have
10   complete information about the trust and the trustee today
11   because, for example, he had to leave his devices downstairs,
12   he is directed to provide complete information no later than
13   close of business February 11th.
14             What that means, Mr. Banerjee, you are directed to
15   provide that information to your counsel so that your counsel
16   can provide it to Mr. Hutman no later than February 11th close
17   of business.  That is not your deadline.  That is Mr. Chan's
18   deadline.  So your deadline is earlier than that.  We will be
19   revisiting this issue after you get the information about the
20   trust and the trustee and then also after you've had a chance
21   to explore these issues at Mr. Banerjee's deposition.
22             On the issue of the credit card, is there anything
23   else to deal with today on the issue of the credit card?
24             MR. HUTMAN:  No, your Honor.
25             THE COURT:  Knowing that we'll be dealing with them

1        after Mr. Banerjee's deposition.
2                 MR. HUTMAN:  Which credit cards is your Honor
3        referring to?
4                 THE COURT:  Any of them.
5                 MR. HUTMAN:  With respect to the redacted ones, and
6        maybe I missed it, but I didn't understand your Honor to have
7        given a ruling on our request to have an adverse inference.
8                 THE COURT:  That you are going to have to brief after
9        the deposition.
10                MR. HUTMAN:  Okay.
11                THE COURT:  I am not going rule on an adverse
12       inference.  It seems to me the most effective and efficient
13       briefly is after you have had a chance to explore what you can
14       explore in the deposition because there may be points that
15       weigh one way or another.  I am always hopeful that the
16       information will be provided somehow and soon.
17                Now, is there also an issue with bank statements or is
18       it really the credit card statements?
19                MR. HUTMAN:  The bank statements, the unredacted
20       versions, have been produced.  They are clear in some places
21       because the quality of the scan but they are usable.
22                THE COURT:  Great.
23                Next issue, Mr. Hutman.
24                MR. HUTMAN:  The next issue is the third-party
25       subpoena to Mrs. Banerjee that we served in accordance with the

1    court's December 30th order.  We have received a response, but
2    we still have not received any documents.
3            THE COURT:  Mr. Chan, you represent Mr. Banerjee, too?
4            MR. CHAN:  I do.
5            THE COURT:  When can you get the document to
6    plaintiff's counsel?
7            MR. CHAN:  I think beginning of the next week.  She
8    has requested -- many of the responsive documents are not in
9    her position, but she has requested them so the question is
10   when she obtains them.
11           THE COURT:  What is the nature of these documents and
12   why are they not in her possession?
13           MR. CHAN:  Some of them relate to essentially offering
14   statements of entities in which there was investment.  She
15   didn't retain them.  That is why they are not in her
16   possession, but she can obtain them.
17           THE COURT:  Are there other documents that you have or
18   that Ms. Banerjee has that can be provided sooner rather than
19   later?
20           MR. CHAN:  As I said I am expecting to get certainly
21   the lion's share of the documents by the end of the week.
22           THE COURT:  So then you should be able to produce them
23   to Mr. Hutman by the 12th?
24           MR. CHAN:  I would think, yes.
25           THE COURT:  So that is going to be ordered, too, the

1     production of documents from Mrs. Banerjee by February 12th.

2               Mr. Hutman, other third-party?

3               MR. HUTMAN:  So we received the production from the

4     Pennsylvania Department of revenue.  We received that this

5     morning and provided it to defense counsel.  So that is as far

6     as we're concerned.  That has been resolved.

7               They have given us, although it took a while, the IRS

8     authorization forms and we have submitted them to IRS.  We

9     haven't heard back because it has been too soon.  Also, with

10    respect also to the February 14th deposition that we had agreed

11    to on a tentative basis assuming we got the documents from

12    Mrs. Banerjee and the documents we were expecting from the

13    Department of Revenue, we would like it to be left open that

14    when we receive later documents either from Mrs. Banerjee if

15    she doesn't get the documents on time or other documents

16    produced from third-party subpoenas from the IRS that we can

17    have a second supplementary deposition to ask about those

18    documents.

19              THE COURT:  Okay.  The February 14th deposition date

20    is going to be a court ordered deposition date.  I understand

21    you left it open, but you are going forward on the 14th; right?

22              MR. HUTMAN:  Well, at the time we had -- I had said I

23    was going to hold it as a date.

24              THE COURT:  You are going forward on the 14th.

25              MR. HUTMAN:  All right.

1       THE COURT: Mr. Banerjee is here. I am directing that
2  Mr. Banerjee will be deposed on the 14th in accordance with the
3  Federal Rules of Civil Procedure. Now, if there is some snafu
4  in the production of documents or if there are later produced
5  documents that indicate that you need to further depose
6  Mr. Banerjee, you will be allowed to seek that. My expectation
7  and hope -- again I feel like Charlie Brown with the football
8  sometimes, but I am hoping that the lion's share of the
9  documents will be provided before the 14th so you can have a
10 fulsome deposition.
11      I understand you may not get the answers you may like
12 or may not get as complete answers as you would like in the
13 deposition, but sometimes that is how depositions go. At which
14 point you will need to make an assessment of whether you would
15 like additional time to depose Mr. Banerjee. You are expected
16 to work with Mr. Chan in good faith and meet and confer to set
17 that up without Court intervention. If you cannot come to an
18 agreement, you know what to do. You write in. You submit the
19 joint letter and we'll have you in and we'll go over the same
20 thing. Right now I expect the deposition will go forward on
21 the 14th and if there is outstanding issues after that
22 deposition, you make your decisions and you can try to resolve
23 them yourselves. If you can't, that is what I am here for.
24      MR. CHAN: Mr. Hutman and I have been working pretty
25 well together.

|   |   |
|---|---|
| 1 | THE COURT:  It sounds like it.  I would like to keep |
| 2 | this moving. |
| 3 | Mr. Hutman, what about other document issues?  What is |
| 4 | still outstanding? |
| 5 | MR. HUTMAN:  Everything else has been resolved. |
| 6 | THE COURT:  So we have the deposition and we have got |
| 7 | credit cards, slash, bank statements and IRS authorizations. |
| 8 | Do you propose or anticipate any other depositions in |
| 9 | the course of jurisdictional discovery? |
| 10 | MR. HUTMAN:  There is a small chance when we see |
| 11 | Mrs. Banerjee's documents depending on the answers that we get |
| 12 | at Mr. Banerjee's deposition that we may want to take her |
| 13 | deposition also, but I hope not to. |
| 14 | THE COURT:  Again, meet and confer to see if you can |
| 15 | resolve that. |
| 16 | What else do we need to do today? |
| 17 | MR. CHAN:  There's always lunch. |
| 18 | THE COURT:  That's true.  It is getting to lunchtime. |
| 19 | MR. HUTMAN:  Potentially a briefing schedule for after |
| 20 | the fact.  I don't know if the Court wants to address that now |
| 21 | or at a later conference. |
| 22 | THE COURT:  We will address it later because you may |
| 23 | have a different sense of what the timing that you would need |
| 24 | to gather all of your information and marshal it and put it |
| 25 | together.  So I don't want to stick you all with a briefing |

1  schedule that is going to get changed later.  I prefer you to
2  think about it after you have had a chance to depose
3  Mr. Banerjee, whether you need additional deposition before you
4  make a motion, whether you make a motion first and have them
5  proceed on parallel or independent tracks or you need a second
6  deposition.
7          That said, I am going to put you on for another status
8  conference for March 6th at 3:00 p.m.
9          Mr. Banerjee, you are certainly invited to attend but
10 you are not required to attend.  One of the reasons I wanted
11 you here today was because of the substitution of counsel
12 issue.  If for some reason Mr. Chan ends up seeking to withdraw
13 before March 6th or around March 6th, then you will have to
14 attend again, okay?  I will issue a separate order.  I am
15 hopeful that this will not be the case.
16         March 6th at 3:00 p.m. is when I will see you next.  I
17 would like a joint status letter one week in advance that
18 should be filed on the docket.  Of course if there are issues
19 that arise before that that need attention, you also know what
20 to do.  Always engage in a meet and confer process first as I
21 see that you have been doing.
22         Anything else?
23         MR. HUTMAN:  No.  Thank you, your Honor.
24         THE COURT:  Mr. Chan, anything else?
25         MR. CHAN:  No, your Honor.

J266SADC

1        Just a clarification.  Mr. Banerjee and I are going to
2  talk about the trust issue and you would like me to provide
3  information.
4        THE COURT:  Provide it to Mr. Hutman today before you
5  leave this courtroom area.  Provide what you can in terms of
6  information.  If there are gaps in the information, you will
7  fill in those gaps by February 11th.
8        The parties are directed to order the transcript and
9  share the costs.
10       MR. HUTMAN:  Thank you.
11       THE COURT:  Thank you very much.  I look forward to
12 seeing you on March 6th.
13       MR. CHAN:  Thank you.
14                             -o-