UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**SADIS & GOLDBERG, LLP,**

        **Plaintiff,**

- against -

**SUMANTA BANERJEE,**

        **Defendant.**

Case No.    14-cv-00913(LTS)(OTW)

---

# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR AN ADVERSE INFERENCE

SADIS & GOLDBERG LLP
551 Fifth Avenue, 21st Floor
New York, NY 10176
(212) 947-3793

{00373182.DOCX; 1}

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................................1

RELEVANT FACTS .....................................................................................................................2

ARGUMENT ..................................................................................................................................6

I.    BANERJEE'S FAILURE TO PRESERVE UNREDACTED COPIES OF THE AXIS CARD STATEMENTS IS SPOLIATION—SADIS IS ENTITLED TO AN INFERENCE THAT THE STATEMENTS WOULD SHOW BANERJEE'S PRIMARY USE OF THE AXIS CREDIT CARD IN PITTSBURGH. ..............................6

    1.    Having Received a Document Request, Banerjee Had an Obligation to Preserve the Unredacted Axis Card Statements ................... 7

    2.    Banerjee was Grossly Negligent—a Culpable State of Mind Under Binding Second Circuit Law—in Failing to Preserve Unredacted Axis Card Statements................................................................................. 8

    3.    As the Court has Already Recognized the Axis Card Statements are Relevant to Show Banerjee's Location in 2013 & 2014 and to Impeach Banerjee's Testimony.................................................................. 10

II.    BANERJEE'S FEIGNED INABILITY TO ACCESS AND PRODUCE HIS TRUST CARD STATEMENTS IS IMPLAUSIBLE—SADIS IS ENTITLED TO AN INFERENCE THAT THE STATEMENTS WOULD SHOW BANERJEE'S PRIMARY USE OF THE TRUST CREDIT CARD IN PITTSBURGH ..........................11

    1.    Banerjee Has the Practical Ability to Obtain the Trust Card Statements Just as He Has in the Past....................................................... 12

    2.    Banerjee's Feigned Inability to Produce the Trust Card is in Bad Faith, Demonstrating a Culpable State of Mind and the Relevancy of the Trust Card Statements................................................................... 13

CONCLUSION............................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Arista Records LLC v. Usenet.com, Inc.,
  633 F. Supp. 2d 124 (S.D.N.Y. 2009)..................................................................................9

Bank of New York v. Meridien BIAO Bank Tanzania Ltd.,
  171 F.R.D. 135 (S.D.N.Y. 1997) ....................................................................................7, 12

New York ex rel. Boardman v. Nat'l R.R. Passenger Corp.,
  233 F.R.D. 259 (N.D.N.Y. 2006)........................................................................................12

Cooper Indus., Inc. v. British Aerospace, Inc.,
  102 F.R.D. 918 (S.D.N.Y. 1984) ........................................................................................12

Glover v. Costco Wholesale Corp.,
  153 F. App'x 774 (2d Cir. 2005) ...........................................................................7, 8, 10, 11

Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,
  456 U.S. 694 (1982).............................................................................................................13

Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.,
  880 F.3d 620 (2d Cir. 2018)..................................................................................................7

Kortright Capital Partners LP v. Investcorp Inv. Advisers Ltd.,
  No. 16-cv-7619, 2019 WL 306450 (S.D.N.Y. Jan. 18, 2019) ...............................................8

Longview Fibre Co. v. CSX Transp., Inc.,
  526 F. Supp. 2d 332 (N.D.N.Y. 2007)................................................................................10

In re Pfizer Inc. Sec. Litig.,
  288 F.R.D. 297 (S.D.N.Y. 2013) ........................................................................................13

Regeneron Pharm., Inc. v. Merus N.V.,
  864 F.3d 1343 (Fed. Cir. 2017), cert. denied, 139 S. Ct. 122, 202 L. Ed. 2d
  197 (2018).............................................................................................................................8

Residential Funding Corp. v. DeGeorge Fin. Corp.,
  306 F.3d 99 (2d Cir. 2002)......................................................................................... *passim*

S. New England Tel. Co. v. Glob. NAPs Inc.,
  624 F.3d 123 (2d Cir. 2010)................................................................................................13

Shcherbakovskiy v. Da Capo Al Fine, Ltd.,
  490 F.3d 130 (2d Cir. 2007)..................................................................................................7

Spanos v. Skouras Theatres Corp.,
    364 F.2d 161 (2d Cir. 1966) .................................................................................................. 10

United States v. Freidus,
    No. 88 CIV. 6116 (RWS), 1989 WL 140254 (S.D.N.Y. Nov. 13, 1989) ............................... 12

Valentini v. Citicorp Fin. Servs. Corp.,
    589 F. App'x 1 (2d Cir. 2014) ............................................................................................... 13

Xiao Hong Zheng v. Perfect Team Corp.,
    739 F. App'x 658 (2d Cir. 2018) ........................................................................................... 13

**Statutes**

Fed. R. Civ. P. 37(b)(2)(A) ............................................................................................................ 7

Fed. R. Civ. P. 37(e)(2) .................................................................................................................. 8

## **PRELIMINARY STATEMENT**

This Court should sanction Defendant Sumanta Banerjee ("Banerjee" or "Defendant") for failing to preserve and produce credit card statements from two credit card accounts and draw an adverse inference that if produced these credit card statements would support a finding that Banerjee was domiciled in Pittsburgh, PA at the time this action was.

Credit card statements which contain detailed information for each use of the credit card—often containing the location of the use—are highly probative of the credit card holder's actual location during the relevant time period. With respect to the Axis Bank credit card statements, Banerjee admits that his wife instructed his mother to redact the statements after receiving Plaintiff Sadis & Goldberg, LLP's ("Sadis" or "Plaintiff") document requests. Even if Banerjee did not intend to permanently redact these documents, he was grossly negligent in failing to preserve unredacted copies.

Similarly, Banerjee's refusal and claimed inability to obtain and produce his family trust credit card statements—as well as the January through May 2013 Axis statements—is in bad faith. Banerjee admitted that he previously had obtained and discarded these statements, contributed millions to the trust, managed the trust's businesses, and regularly received distributions from the trust. And Banerjee's mother—who willingly gathered and produced other documents—is the trustee of the family trust.

This Court should exercise its authority and discretion under Second Circuit law and adversely infer that the redacted and withheld credit card statements would show that Banerjee used those credit cards primarily in the greater Pittsburgh, PA area in 2013 and 2014.

## RELEVANT FACTS

### A. *Sadis Sues Banerjee for Unpaid Legal Fees Putting Him on Notice of the Need to Preserve Documents.*

On October 18, 2013, Sadis filed a Summons and Complaint in this Court under Docket Number 13-cv-07355 seeking to collect unpaid legal fees from Mr. Banerjee for work done in 2008 and 2009.  The District Court dismissed Sadis' complaint without prejudice for failure to properly allege the Court's subject-matter jurisdiction and Sadis filed a second Summons and Complaint on February 13, 2014 under Docket Number 14-cv-00913.  On July 3, 2014, the Honorable Laura Taylor Swain granted Sadis' motion to serve Banerjee by email and on July 7, 2014 Sadis served Banerjee via email.  (Dkt. Nos. 16–17.)  Banerjee has therefore been on notice of his need to preserve relevant documents since October 18, 2013—or, at the very latest, July 7, 2014.

### B. *Plaintiff Seeks Discovery Related to Banerjee's Domicile—Including Requests for Banerjee's Credit Card Bills.*

On March 22, 2018, the Second Circuit Court of Appeals remanded this action for a determination of where Banerjee was domiciled at the time this action was filed in February of 2014.  (Dkt. No. 82 at 3.)  This Court initially scheduled a status conference for May 15, 2018.  (Dkt. No. 86.)  However, Banerjee requested that the status conference be delayed for six weeks because of his travel schedule and to give extra time to retain counsel.  (Dkt. No. 87.)  Over Plaintiff's objection that there had been plenty of time to retain counsel (Dkt. No. 88), the Court granted Mr. Banerjee's request and rescheduled the initial status conference for June 27, 2018.  (Dkt. No. 89.)  Banerjee obtained new counsel and pursuant to that conference, the parties agreed that Sadis would serve document requests on Mr. Banerjee by August 3, 2018.  (Dkt. No. 91)  Defendant agreed to provide responses to Sadis' document requests by September 17, 2018 and produce the requested documents by October 15, 2018.  (*Id.*)

As agreed, Sadis served Plaintiff's First Set of Document Request (the "Requests") on Banerjee's counsel on August 3, 2018.  Request No. 21 of the Requests specifically asked for: "All utility and credit card bills."  (Ex. A, at 7.)  Additionally, Sadis requested "All of Your, and Your Wife's, bank accounts, investment accounts, or brokerage accounts, including account opening documents, monthly statements, …"  (*Id.* at Req. No. 1.)

### C. *Defendant Delays Production and Then Produces Heavily Redacted Documents— Including the Axis Credit Card Statements.*

Defendant sought and received an extension from Sadis to respond to the Requests and did not provide Responses and Objections until October 8, 2018. (Ex. B.)  In response to Request No. 21, Defendant promised to "produce documents responsive to this request, in any exist in his possession."   (*Id.* at 12–13.)  Similarly, although Banerjee objected to producing his wife's documents, in response to Request No. 1 he promised to "produce documents responsive to this request relating to his financial accounts." (*Id.* at 5–6.)

On November 6, 2018, at the request of Defendant's then counsel Jennifer Cabrera, Sadis agreed to a confidentiality stipulation and protective order.[1]   (Dkt. No. 94.)   Despite the stipulation and protective order in place, when Defendant finally made a production on November 7, 2018 many of the documents were extensively redacted.  Among the extensively redacted documents were credit card bills for an Axis Bank credit card account in Mr. Banerjee's name (the "Axis Card Statements"). (Ex. C.)  The Axis Card Statements covered the period of June 2013 through January 2015 but all of the transaction details, including where the credit cards were used, were redacted.  (*Id.*)  Banerjee failed to produce the bills for January 2013 through May 2013.

---

[1] The protective order was signed by this Court on November 7, 2018.  (Dkt. No. 95.)

### D. *The Court Orders Banerjee to Produce Unredacted Documents, But Defendant Fails to Produce Unredacted Axis Card Statements.*

Following a conference on December 20, 2018, the Court ordered that Defendant "re-produce, in unredacted form, the documents that he previously produced" and "Defendant's counsel shall produce the unredacted documents to Plaintiff's counsel by January 18, 2019." (Dkt. No. 101.) On January 10, Defendant terminated Ms. Cabrera's firm and she moved to withdraw as Defendant's counsel. (Dkt. No. 106.) After a previously granted additional extension, Defendant's new counsel, Robert Chan, re-produced most of the previously redacted documents in unredacted form. But Defendant did not produce an unredacted version of the Axis Card Statements.

In a January 29, 2019 letter to the Court, Defendant claimed that he had asked his elderly mother to send the Axis Card Statements to him but "on her own initiative, she redacted those original statements without making copies before redacting." (Dkt. No. 118 at 2.) Defendant also claimed that he could not go back to the bank to obtain the statements because he "no longer has the account numbers." (*Id.*)

On March 6, 2019, this Court once again ordered Defendant to "produce unredacted credit card statements for the Axis Bank Credit Card for all of 2013 & 2014" by April 5, 2019. (Dkt. No. 124 at ¶ 2.) On April 5, 2019, Banerjee did not provide the Axis Card Statements but instead submitted an affidavit inconsistent with his previous story. (Ex. D.) Banerjee admitted that his mother did not make the redactions out of her own initiative but rather that his wife, Akshita S. Banerjee ("Akshita"), asked his mother to "redact certain details from the" Axis Card

Statements but his mother "neglected to make a copy, redacted the originals, scanned them and emailed them" to Banerjee's wife.[2]  (*Id.* at ¶ 5.)

In both the affidavit and the previously-held February 6, 2019 status conference, Banerjee claimed that the all Axis credit cards were used exclusively by his wife in 2013 & 2014 and used in Pittsburgh, PA.  (*Id.* at ¶¶ 4; Ex. E at 5:14–22.)  However, it is evident even from the redacted Axis Card Statements that there was at least two credit cards used, one in Banerjee's name and one is Akshita's name.  (*See* Ex. C at BANER 104–05, 114–15.)  And the credit card in Banerjee's name continued to be used after Akshita had a card in her name.  (*Id.* at BANER 116, 121.)  Additionally, at his deposition, Banerjee revealed that he had the Axis credit card account since 2009—thus, there should remain numerous unredacted statements from which Mr. Banerjee can retrieve his account number.  (*See* Ex. F at 99:17–19.)

### E. *Defendant Reveals that He Failed to Produce His Trust Card Statements.*

On January 23, 2019, while discussing Banerjee's failure to produce unredacted versions of the Axis Card Statements, Banerjee's then new counsel, Robert Chan, revealed that Banerjee used another credit card but "[i]t is not his practice to retain credit card statements after he receives and reviews them."  (Ex. G. at 1.)  Sadis had first requested credit card bills on August 3, 2018 but Banerjee made no effort to gather and produce these other credit card statements—or even disclose their existence—until January 23, 2019.

Banerjee later claimed that this other credit card was in the name of a trust and he did not have the ability to obtain copies of the statements (the "Trust Card Statements").  (Ex. E at 7:3–8:4; Ex. D at ¶ 8.)  But at deposition Banerjee testified that:

---

[2] In contrast, Banerjee was able to re-produce unredacted versions of previously redacted bank statements because his mother scanned and emailed him the unredacted bank statements and Banerjee asked his wife to redact them for the original production.  (Ex. I, Akshita Dep., at 165:11–166:9.)

- The credit card was in the name of his family's trust. (Ex. F at 22:12–22.)

- Banerjee is a beneficiary of the family trust and receives distributions as he needs them. (*Id.* at 13:8–12, 14:2–8.)

- Banerjee had contributed millions of dollars to the family trust. (*Id.* at 20:14–21.)

- Banerjee's primary employment since 2011 has been managing businesses on behalf of the family trust. (*Id.* at 13:20–14:8, 19:13–20.)

- One of the trustees for the family trust is Banerjee's mother, Dr. Reba Banerjee (Ex. H.) and she is responsible for sending Banerjee his distributions. (Ex. F at 21:21–22:2; 25:9–18.)

- Banerjee accesses his distributions using the credit card. (*Id.* at 22:10–19.)

Because Banerjee himself contributed millions of dollars to the family trust, manages the businesses of the trust, has previously viewed his Trust Card Statements, and his mother is trustee and routinely sends him distributions that Banerjee accesses through his trust credit card at issue, it is implausible that Banerjee is unable to access his Trust Card Statements. It is far more plausible that Banerjee is claiming that he is unable to access his Trust Card Statements because if they were produced they would show that Banerjee was primarily using the cards in the United States—and Pittsburgh, PA in particular—throughout 2013 and 2014.

## ARGUMENT

### I. BANERJEE'S FAILURE TO PRESERVE UNREDACTED COPIES OF THE AXIS CARD STATEMENTS IS SPOLIATION—SADIS IS ENTITLED TO AN INFERENCE THAT THE STATEMENTS WOULD SHOW BANERJEE'S PRIMARY USE OF THE AXIS CREDIT CARD IN PITTSBURGH.

At the very least, Banerjee was grossly negligent in failing to ensure the preservation of the Axis Card Statements after he received document requests asking for them to be produced. An adverse inference that if fully produced and unredacted the Axis Card Statements would show Banerjee using the card primarily in the United States—and Pittsburgh, PA in particular—

during 2013 and 2014 is an appropriate sanction for Banerjee failing to preserve and produce unredacted credit card bills.

"Rule 37(b)(2) of the Federal Rules of Civil Procedure provides, in relevant part, that if a party fails to obey a discovery order, the court 'may make such orders in regard to the failure as are just,' including, but not limited to, '[a]n order that ... designated facts shall be taken as established for the purposes of the action in accordance with the claim of the party obtaining the order.'" Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 106 (2d Cir. 2002) (quoting Fed. R. Civ. P. 37(b)(2)(A)). Furthermore, "[e]ven in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." Id. at 107; Glover v. Costco Wholesale Corp., 153 F. App'x 774, 776 (2d Cir. 2005). In order to warrant the sanction of an adverse inference, the Court must find "by a preponderance of the evidence": "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Klipsch Grp., Inc. v. ePRO E-Commerce Ltd., 880 F.3d 620, 628 (2d Cir. 2018); Residential Funding Corp., 306 F.3d at 107. Each of these three prongs for making an adverse inference are plainly satisfied here.

> 1. *Having Received a Document Request, Banerjee Had an Obligation to Preserve the Unredacted Axis Card Statements*

"[D]ocuments are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action. Bank of New York v. Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 146 (S.D.N.Y. 1997); accord Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 138 (2d Cir. 2007) ("[I]f if a party has

access and the practical ability to possess documents not available to the party seeking them, production may be required."). "A party's 'obligation to preserve' evidence, in accordance with prong one, arises when the party has notice that the evidence is relevant to litigation—most commonly when suit has already been filed." Glover, 153 F. App'x at 776.

Here, Banerjee plainly had control over the Axis Card Statements because they are in his name and his mother collected them for production on Banerjee's behalf. Banerjee also admits that his mother redacted the only copies of the Axis Card Statements after Sadis served its document requests on August 3, 2018, and many years after the initial Complaint was filed creating the obligation to preserve evidence. Therefore, the first prong for finding an adverse inference has been satisfied.

### 2. *Banerjee was Grossly Negligent—a Culpable State of Mind Under Binding Second Circuit Law—in Failing to Preserve Unredacted Axis Card Statements.*

"[T]he 'culpable state of mind' factor is satisfied by a showing that the evidence was destroyed 'knowingly, even if without intent to [breach a duty to preserve it], or *negligently.*'"[3] Residential Funding Corp., 306 F.3d at 108 (emphasis in the original); accord Regeneron Pharm., Inc. v. Merus N.V., 864 F.3d 1343, 1363–64 (Fed. Cir. 2017), cert. denied, 139 S. Ct. 122, 202 L. Ed. 2d 197 (2018) ("[D]iscovery sanctions, including an adverse inference instruction, may be imposed where a party has breached a discovery obligation not only through bad faith or gross negligence, but also through ordinary negligence."). This is "because each party should bear the

---

[3] Fed. R. Civ. P. 37(e)(2) (requiring "intent to deprive") does not supersede the Residential Funding rule because Rule 37(e) "only applies to sanctions based on a party's 'failure to preserve electronically stored information.' For sanctions based on other discovery misconduct, *Residential Funding* remains good law in the Second Circuit." Regeneron Pharm., Inc. v. Merus N.V., 864 F.3d 1343, 1364 (Fed. Cir. 2017), cert. denied, 139 S. Ct. 122, 202 L. Ed. 2d 197 (2018); Kortright Capital Partners LP v. Investcorp Inv. Advisers Ltd., No. 16-cv-7619, 2019 WL 306450, at *3 (S.D.N.Y. Jan. 18, 2019). The requested documents are not ESI.

risk of its own negligence." Residential Funding Corp., 306 F.3d at 108. The Second Circuit expressly adopted the following reasoning of Magistrate Judge James C. Francis:

> The sanction of an adverse inference should be available even for the negligent destruction of documents if that is necessary to further the remedial purpose of the inference. It makes little difference to the party victimized by the destruction of evidence whether that act was done willfully or negligently. The adverse inference provides the necessary mechanism for restoring the evidentiary balance. The inference is adverse to the destroyer not because of any finding of moral culpability, but because the risk that the evidence would have been detrimental rather than favorable should fall on the party responsible for its loss. Id.

Here, Banerjee was grossly negligent in not having his mother scan and email him the original unredacted Axis Card Statements. This gross negligence is highlighted because Banerjee was able to re-produce unredacted versions of previously redacted bank statements because his mother scanned and emailed him the unredacted bank statements and then Banerjee asked his wife to redact them for the original production. (Ex. I, Akshita Dep., at 165:11–166:9.) Banerjee's gross negligence in allowing his mother to redact out the Axis Card Statements entitles Sadis to an adverse inference that the unredacted statements would have shown that Banerjee was using the Axis credit card in the United States throughout 2013 and 2014. See Arista Records LLC v. Usenet.com, Inc., 633 F. Supp. 2d 124, 141 (S.D.N.Y. 2009) ("[W]hen evidence is destroyed in bad faith or with gross negligence, that alone has been found to be sufficient to support an inference that the missing evidence would have been favorable to the prejudiced party.")

Additionally, Banerjee was negligent in taking steps to personally preserve the Axis Card Statements after this action was filed—and certainly after this action was remanded to this Court for a determination of domicile where it was foreseeable that the Axis Card Statements would be relevant. Sadis should not be deprived of its evidence because of Banerjee's negligence. The second prong for finding an adverse inference has been satisfied.

> *3. As the Court has Already Recognized the Axis Card Statements are Relevant to Show Banerjee's Location in 2013 & 2014 and to Impeach Banerjee's Testimony.*

To satisfy the third adverse inference prong, a party "must adduce sufficient evidence for a trier of fact to infer that the destroyed evidence was of the nature alleged by the party." Glover, 153 F. App'x at 776. "[W]here a party seeking an adverse inference adduces evidence that its opponent destroyed potential evidence (or otherwise rendered it unavailable) … through gross negligence … that same evidence of the opponent's state of mind will frequently also be sufficient to permit a jury to conclude that the missing evidence is favorable to the party (satisfying the "relevance" factor). Residential Funding Corp., 306 F.3d at 109 (2d Cir. 2002); Longview Fibre Co. v. CSX Transp., Inc., 526 F. Supp. 2d 332, 340 (N.D.N.Y. 2007) ("a party can show that the spoliated evidence was relevant …by showing that the evidence was destroyed in bad faith or with gross negligence.")

Here, as explained above, Banerjee's failure to preserve unredacted versions of the Axis Card Statements was gross negligence, therefore the destroyed portions of the statements are presumptively relevant. Furthermore, even if the Court finds Banerjee to have merely been negligent, the issue before the Court is Banerjee's domicile and one of the elements for domicile is "[r]esidence in fact." Spanos v. Skouras Theatres Corp., 364 F.2d 161, 163 (2d Cir. 1966). The detailed spending information on the Axis Card Statements are relevant to demonstrate Banerjee's location in the United States—and particularly in the Pittsburgh, PA area—during 2013 and 2014. Additionally—as the Court has expressly recognized—although Banerjee concedes that the unredacted information would show the use of the credit cards in the United States, "[i]t is probative, however, if the card appears to have been used in two different places on the same day, because then it renders either or both Mr. and Mrs. Banerjee not credible." (Ex. J at 8:13–15.) The third prong for finding an adverse inference has therefore been satisfied.

Because Banerjee was grossly negligent in failing to prevent the destruction of the redacted portions of the Axis Card Statements the Court should make an adverse inference that the redacted information would show that Banerjee was using his Axis credit card primarily in the Pittsburgh PA area throughout 2013 and 2014—including at the time Sadis filed this action.

## II. BANERJEE'S FEIGNED INABILITY TO ACCESS AND PRODUCE HIS TRUST CARD STATEMENTS IS IMPLAUSIBLE—SADIS IS ENTITLED TO AN INFERENCE THAT THE STATEMENTS WOULD SHOW BANERJEE'S PRIMARY USE OF THE TRUST CREDIT CARD IN PITTSBURGH

Banerjee's refusal to produce his Trust Card Statements is in bad faith. Banerjee admitted that he previously viewed his Trust Card Statements, contributed extensively to the trust, and manages the businesses of the trust; he could easily have his mother scan and email him the statements now. An adverse inference, that if produced the Trust Card Statements would show Banerjee using his trust credit card primarily in the United States during 2013 and 2014, is an appropriate sanction for Banerjee withholding these statements in bad faith.

As with the destruction of evidence, "where, as here, an adverse inference instruction is sought on the basis that the evidence was not produced …, the party seeking the instruction must show (1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had 'a culpable state of mind'; and (3) that the missing evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Residential Funding Corp., 306 F.3d at 107; accord Glover, 153 F. App'x at 776 ("[W]here the breach of a discovery obligation is the non-production of evidence, a court has broad discretion to determine the appropriate sanction, which may include giving an adverse-inference instruction."). Here all three prongs are plainly satisfied and the Court should apply an adverse inference against Banerjee.

*1. Banerjee Has the Practical Ability to Obtain the Trust Card Statements Just as He Has in the Past.*

The term control in the context of discovery is to be broadly construed. New York ex rel. Boardman v. Nat'l R.R. Passenger Corp., 233 F.R.D. 259, 268 (N.D.N.Y. 2006). And, as explained above in Section I(1), this includes the "practical ability to obtain the documents from a non-party to the action." Bank of New York v. Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 146 (S.D.N.Y. 1997). Here, when Sadis first inquired about the Trust Card Statements, Banerjee's counsel admitted that Banerjee "receives and reviews them" but "[i]t is not his practice to retain credit card statements." (Ex. G at 1.) Banerjee has also admitted that: (a) the Trust is his family's trust to which he is a beneficiary and has personally contributed millions of dollars (Ex. F. at 20:14–21; 22:12–22); (b) Banerjee's mother—who has obtained other documents for Banerjee in this matter—is one of the trustees (Ex. H); (c) Banerjee's job, since 2011, is managing the businesses owned by the Trust (Ex. F at 13:20–14:8, 19:13–20); and (d) Banerjee's mother sends him his distributions through his Trust Card (*Id.* at 21:21–22:2, 22:10–19, 25:9–18).

Banerjee can, therefore, simply ask his mother to provide him the Trust Card Statements just has he has received them in the past, just as she has provided him with other documents in this action, and just as he receives other trust documents in the normal course of his business. See United States v. Freidus, No. 88 CIV. 6116 (RWS), 1989 WL 140254, at *3 (S.D.N.Y. Nov. 13, 1989) ("Freidus may not evade the discovery rules by claiming access to those files for purposes of the normal course of business he conducts in the Dock Hollow Road residence and then denying control over the files for purposes of discovery."); Cooper Indus., Inc. v. British Aerospace, Inc., 102 F.R.D. 918, 919–20 (S.D.N.Y. 1984) ("The documents plaintiff seeks all relate to the planes that defendant works with every day; it is inconceivable that defendant would

not have access to these documents and the ability to obtain them for its usual business."). Because Banerjee has the practical ability to obtain the Trust Card Statements, the first prong for finding an adverse inference has been satisfied.

> 2. *Banerjee's Feigned Inability to Produce the Trust Card is in Bad Faith, Demonstrating a Culpable State of Mind and the Relevancy of the Trust Card Statements*

"Just as the intentional or grossly negligent *destruction* of evidence in bad faith can support an inference that the destroyed evidence was harmful to the destroying party, ... so, too, can intentional or grossly negligent acts that hinder discovery support such an inference." Residential Funding Corp., 306 F.3d at 110. This includes a party's "blatant disregard of their obligation to search for and produce responsive documents" which "reflected a cavalier attitude toward the discovery process." Valentini v. Citicorp Fin. Servs. Corp., 589 F. App'x 1, 2 (2d Cir. 2014); accord Xiao Hong Zheng v. Perfect Team Corp., 739 F. App'x 658, 661 (2d Cir. 2018) ("Given Defendants-Appellants' manifest noncompliance with their discovery obligations to produce information pertaining to the relationship among and between certain defendants, we conclude that the adverse inference sanction was not an abuse of discretion."). And where a party withholds the production of documents in bad faith, "that bad faith alone is sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to the party." In re Pfizer Inc. Sec. Litig., 288 F.R.D. 297, 315–16 (S.D.N.Y. 2013); accord Residential Funding Corp., 306 F.3d at 109.

Here, Banerjee's feigned inability to obtain the Trust Card Statements despite all of the facts set forth above in Section II(1), is a "willful failure to answer a discovery request relating to a particular issue" and therefore the Court is permitted "to presume issue that the facts of that issue are established against the noncompliant party." S. New England Tel. Co. v. Glob. NAPs Inc., 624 F.3d 123, 147 (2d Cir. 2010) (citing Ins. Corp. of Ireland v. Compagnie des Bauxites de

Guinee, 456 U.S. 694, 705 (1982)).  Because Banerjee's refusal to produce the Trust Card Statements is in bad faith the second prong for finding an adverse inference has been satisfied. Because—as explained above in Section I—the detailed information in credit card statements is relevant for determining Banerjee's domicile and because there is presumption of relevance for documents withheld in bad faith, the third prong for finding an adverse inference has also been satisfied.

The Court should, therefore, draw an adverse inference that if produced the Trust Card Statements would show Banerjee used his trust credit card primarily in the United States—particularly in the Pittsburgh, PA area—throughout 2013 and 2014.

## **CONCLUSION**

For all of the above reasons, Sadis requests that the Court sanction Banerjee and impose an adverse inference that the Axis Card Statements and the Trust Card Statements show that Banerjee used those credit cards primarily in the greater Pittsburgh, PA area in 2013 and 2014.

Dated:  New York, NY  
May 24, 2019

SADIS & GOLDBERG LLP

/s/ Ben Hutman

By:  Ben Hutman  
551 Fifth Avenue, 21st Floor  
New York, New York 10176  
Telephone:  (212) 573-6675  
Email:  bhutman@sadis.com