**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SADIS & GOLDBERG, LLP,** | Case No.    **14-cv-00913(LTS)(OTW)** |
| **Plaintiff,** | |
| **- against -** | |
| **SUMANTA BANERJEE,** | |
| **Defendant.** | |

**PLAINTIFF'S POST-HEARING BRIEF IN SUPPORT OF FINDING DEFENDANT WAS DOMICILED IN PENNSYLVANIA AT THE TIME THIS ACTION WAS COMMENCED**

SADIS & GOLDBERG LLP
551 Fifth Avenue, 21st Floor
New York, NY 10176
(212) 573-6675

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ....................................................................................III

PRELIMINARY STATEMENT .................................................................................1

FACTS OF BANERJEE'S DOMICILE ......................................................................2

I.     EVIDENCE BANERJEE WAS DOMICILED IN PITTSBURGH, PA ............................2

    A.    Banerjee's Tax Returns Demonstrate a Pittsburgh Domicile ................................ 2

        (i)    Banerjee's 2013 Tax Returns ..................................................... 2

        (ii)    Banerjee's 2014 Tax Returns ..................................................... 3

        (iii)    Banerjee's 2015 Tax Returns ..................................................... 6

    B.    Banerjee's PA Court Filings Evidence a Pittsburgh Domicile ............................. 6

        (i)    Banerjee's Legal Dispute with a Contractor Who Worked on 1514 Cook School .......................................................................... 6

        (ii)    Banerjee's Traffic Violations in PA List His Home Address as Pittsburgh ................................................................................ 7

    C.    Banerjee's Available Financial Accounts Evidence a PA Domicile .................... 8

        (i)    Banerjee's Fidelity Investment Accounts ................................... 8

        (ii)    Banerjee's Debit and Credit Card Use in the United States ...................... 9

        (i)    Banerjee's Involvement in Pittsburgh-based Non-Profit Organizations ............................................................................ 10

        (ii)    Banerjee's Interests in Various American Entities ................................. 11

    D.    Banerjee Was in the United States for the Vast Majority of 2013 & 2014 .......... 12

II.    EVIDENCE BANERJEE WAS DOMICILED IN WESTON, CT FROM 2009-2012.......................................................................................................13

III.    EVIDENCE THE BANERJEES WERE NOT ACTUALLY SEPARATED IN 2013 AND 2014 ......................................................................................14

ARGUMENT ...................................................................................................17

I.      THE EVIDENCE IS INCONTROVERTIBLE—BANERJEE WAS A PENNSYLVANIA CITIZEN ON FEBRUARY 13, 2014 .................................................17

        (i)      Banerjee's Current Residence in Pittsburgh at the Time of the Filing ........................................................................................... 18

        (ii)     Banerjee's Tax Returns Demonstrate a PA Domicile.............................. 19

        (iii)    Banerjee's Only Brokerage Accounts Show a PA Domicile.................... 20

        (iv)    Banerjee's Involvement in Pittsburgh Non-Profits Shows his PA Domicile.................................................................................... 20

        (v)     Banerjee's Business Ventures in the United States Support a PA Domicile.................................................................................... 20

        (vi)    Banerjee's Wife and Children Were Domiciled in Pittsburgh.................. 21

II.     PRIOR TO PENNSYLVANIA, BANERJEE WAS DOMICILED IN CONNECTICUT, NOT INDIA........................................................................22

III.    BANERJEE'S CONTRADICTORY ATTEMPTS TO EXPLAIN AWAY THE EVIDENCE ARE NOT CREDIBLE..............................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Bank of India v. Subramanian,
    No. 06-cv-2026, 2007 WL 1424668 (S.D.N.Y. May 15, 2007) ...............................................18

Ceglia v. Zuckerberg,
    772 F. Supp. 2d 453 (W.D.N.Y. 2011) ...........................................................................20, 21

Choupak v. Rivkin,
    No. CIV.A. 11-1281-RGA, 2012 WL 2365903 (D. Del. June 21, 2012) ...............................19

District of Columbia v. Murphy,
    314 U.S. 441 (1941) ...........................................................................................................17

Durst v. Siegler,
    No. 04 CIV. 6981 RMB, 2005 WL 3358599 (S.D.N.Y. Dec. 7, 2005) .............................18, 22

Francke v. Martin,
    1994 WL 132293 (S.D.N.Y. Apr. 14, 1994) .........................................................................20

Hammond v. Sessions,
    710 F. App'x 19 (2d Cir. 2018) ...........................................................................................22

Hicks v. Brophy,
    839 F. Supp. 948 (D. Conn. 1993) .......................................................................................21

Jelen v. United States Marshals Serv.,
    No. 18CV680, 2020 WL 1503566 (S.D.N.Y. Mar. 30, 2020) ................................................17

Kennedy v. Trustees of Testamentary Tr. of Will of Kennedy,
    633 F. Supp. 2d 77 (S.D.N.Y. 2009), aff'd, 406 F. App'x 507 (2d Cir. 2010) .................17, 18

Kenosha Unified Sch. Dist. v. Stifel Nicolaus & Co. Inc.,
    607 F. Supp. 2d 967 (E.D. Wis. 2009) ..................................................................................18

Krechmer v. Tantaros,
    747 F. App'x 6 (2d Cir. 2018) ........................................................................................17, 19

Nat'l Artists Mgmt. Co. v. Weaving,
    769 F. Supp. 1224 (S.D.N.Y. 1991) ................................................................................18, 21

New Canaan Capital Mgmt., LLC v. Ozado Partners LLC,
    No. 16 CIV. 1395 (PGG), 2017 WL 1157153 (S.D.N.Y. Mar. 25, 2017) ..............................19

Paul Revere Life Ins. Co. v. Segal,
    No. 99 CIV. 3022 (MBM), 2000 WL 1448626 (S.D.N.Y. Sept. 28, 2000) ...........................20

Reviakine v. Mednikov,
    No. 15-CV-00227(KAM), 2016 WL 8711206 (E.D.N.Y. Apr. 29, 2016) .............................19

Semack v. 35 Hamden Hills Drive, LLC,
    No. 3:12CV1057 JBA, 2013 WL 395486 (D. Conn. Jan. 31, 2013) ......................................21

Spanos v. Skouras Theatres Corp.,
    364 F.2d 161 (2d Cir. 1966)......................................................................................................17

State of Texas v. State of Florida,
    306 U.S. 398 (1939)..................................................................................................................17

Steuben Foods, Inc. v. Int'l Dispensing Corp.,
    No. 09-CV-989S, 2010 WL 2925954 (W.D.N.Y. July 23, 2010) ...........................................19

**Statutes**

28 U.S.C. § 1332.................................................................................................................................24

## PRELIMINARY STATEMENT

The evidence presented at the March 3, 2020 hearing and set forth in below demonstrates that Sumanta Banerjee ("Banerjee") was domiciled in Pennsylvania ("PA") in February of 2014 when this action was filed. But Banerjee has been attempting to avoid paying the debt he owes to Sadis & Goldberg, LLP ("Sadis") for over a decade. Banerjee's latest attempt to present himself as domiciled in India in 2014 should be rejected as a frivolous gambit that has wasted this Court's time and Sadis' money. The evidence of Banerjee's PA domicile is overwhelming:

- Banerjee filed U.S. and PA income tax returns for the years 2013-2014—but not Indian returns—before this issue of domicile was raised, and each showed a PA home address.

- In a PA litigation related to work on his PA home where he was a defendant and counterclaimant, Banerjee listed his PA home address in every filing and never claimed to reside elsewhere.

- Banerjee committed multiple traffic violations from 2013-2016 and his home address is listed on the docket as PA in every one.

- Banerjee's investment account statements for 2013 and 2014 all list his PA home address.

- Banerjee's only debit and credit cards were used almost exclusively in the U.S. and primarily in PA during 2013 and 2014.

- Banerjee was joined the governing bodies of two PA non-profits over 2013 and 2014 and, together with his wife, started multiple US and PA entities over 2013-2015.

Additionally, although Banerjee lived temporarily in India from 2009 through part of 2012, the evidence set forth below shows that he never relinquished his Connecticut domicile in those years. Although the Banerjees signed a separation agreement in June 2012, it was never filed with a court, no legal separation was ever entered, and it was never implemented as drafted.

Throughout this action Banerjee has repeatedly tried to withhold documents, change his story, and mislead this Court. The Court should disregard Banerjee's attempts to explain the overwhelming evidence away as not credible, hold that Banerjee was a PA domiciliary at the time this action was filed, and finally hold Banerjee accountable for refusal to pay what he owes.

<u>**FACTS OF BANERJEE'S DOMICILE**</u>

The parties agree that prior to 2009, Banerjee was domiciled in the United States in the state of Connecticut ("CT").  Joint Stipulation of Facts, Dkt. No. 191 ("JS") ¶ 3.  And the parties agree that "since 2016, Banerjee has been domiciled—together with his wife and his children—in Pittsburgh, PA" in a house "jointly owned by Mrs. Banerjee and her father." *Id.* ¶ 16.  Thus there is no dispute that had this lawsuit been brought in 2008 or 2016, there would have been diversity jurisdiction.  The only point of dispute is where Banerjee was domiciled in the intervening years.

The overwhelming evidence shows that from 2013 through 2015 Banerjee was living with his family in Pittsburgh, PA—including on February 13, 2014, the day this action was filed.

**I.**    <u>**EVIDENCE BANERJEE WAS DOMICILED IN PITTSBURGH, PA**</u>

      **A.**    ***Banerjee's Tax Returns Demonstrate a Pittsburgh Domicile***

      *(i)  Banerjee's 2013 Tax Returns*

Banerjee and his wife filed joint federal and state income tax returns for the tax year of 2013.  Exs. 25 & 37.[1]  Their 2013 federal income tax return listed the couple's "Home address" as 304 Harvester Circle, Pittsburgh, PA 15241 ("304 Harvester").  Ex. 25 at 1.  Similarly, Banerjee's 2013 joint state PA income tax return listed the couple's address as 1514 Cook School Road, Pittsburgh, PA 15241 ("1514 Cook School").  Ex. 37 at 1.  Moreover, this 2013 state tax return categorized the couple as PA residents for the entirety of 2013.[2]  <u>Id.</u>; Hearing Tr. 14:10-13.  The 2013 state return also identifies both Banerjee and his wife as "Consultants."  Ex. 37 at 1.

Schedule C of the 2013 state return shows Banerjee earning $107,346 in "gross profits" from "advise on investment advice" through an entity called "ZBAC LLC" with an address of 23

---

[1] For the sake of consistency, Plaintiff will use the exhibit numbers already ascribed to the various documents as found in the Joint Exhibit List, Dkt. No. 192.  New exhibits will be numbered consecutively starting from Exhibit 126.

[2] The return provides the option of recording the filers as "Part-Year Resident" but the Banerjees did not select that option.  Ex. 37 at 1.

Soundview Farm Road, Weston CT 06883 ("23 Soundview").[3]  Id. at 4, heading and line 3. Schedule C also shows Banerjee took an $82,654 expense deduction for a "home office."  Id. at 4, line A.  Critically, this schedule is for Banerjee's business earnings—not those of his wife.  Id. at 5 (showing "name of owner" of the Schedule C business as "Sumanta Banerjee"); compare Id. at 4-5 with Ex. 46 at 10-11 (Schedule C for Mrs. Banerjee's business).

Schedule D of the 2013 state return shows Banerjee deducting a loss of $419 from a "PA S corporation" or "partnership."  Ex. 37 at 6.  And Mrs. Banerjee deducted a loss of $105.  Id. at 7.  This indicates that Banerjee and his wife each held an interest in a PA S corporation or partnership in 2013.  Hearing Tr. 28:16-20.  The 2013 state tax return contain two signatures, one on behalf of Banerjee and one on behalf of his wife.[4]  Ex. 37 at 2.

*(ii) Banerjee's 2014 Tax Returns*

Banerjee and his wife filed separate income tax returns for 2014.  Exs. 38 & 45.  Like the 2013 joint state return, Banerjee's 2014 PA state income tax return lists his address as 1514 Cook School.  Ex. 38 at 1.  And like the 2013 return, Banerjee's 2014 state return identifies him as a PA resident for the entirety of 2014 with an occupation of Investment Consultant.  Id.

Banerjee's 2014 state tax return was prepared by HRB Tax Group, Inc. ("HRB") and filed on October 17, 2017—prior to the issue of domicile being remanded to this Court.  Id. at 2.  And the return contains Banerjee's signature.[5]  Id.  This return lists interest and dividend income

---

[3] ZBAC LLC is a Delaware entity formed by Banerjee and his wife in April of 2008.  Ex. 75 at 2. "Zbacllc@gmail.com" is also the email address used by Banerjee for communications with the Court and others.  E.g., Ex. 79 at 1; Ex. 73.

[4] Banerjee claims that his wife signed both signatures.  Hearing Tr. 15:20-16:2.  But Mrs. Banerjee testified that Banerjee approved her signing on his behalf—albeit after the fact.  Ex. 87 at 96:12-14.

[5] At the Hearing, Banerjee claimed that it was his wife who signed the return and it was without his permission. Hearing Tr. 33:10-16.  Banerjee went so far as to claim that HRB had told him the previous year that he did not need to file a 2014 PA state return and he did not know about the filing of Exhibit 38.  Id. at 33:5-12.  However, at deposition, Mrs. Banerjee testified regarding the 2014 state taxes that "Sumanta asked me to file on his behalf because wasn't

Banerjee "reported on [his] federal return" but does not report any PA income.  Id. at 1, 3-4.

However, on April 14, 2017, the PA Department of Revenue had informed Banerjee that he had

earned $431,610 in PA income 2014 and therefore owed PA $13,250 in taxes for 2014.  Ex. 35 at

3.  Banerjee claims to have earned the $431,610 in 2014 from his ownership interest in a U.S.-

based fund.[6]  Hearing Tr. 37:4-22.  On January 1, 2018 the PA Department of Revenue filed a tax

lien against Banerjee for PA taxes he failed to pay on his income in 2013 and 2014.  Ex. 80 at 1.

On March 22, 2018, the Second Circuit Court of Appeals remanded this action for a

determination of where Banerjee was domiciled at the time this action was filed in February of

2014.  Dkt. No. 82 at 3.  Sadis served Plaintiff's First Set of Document Request (the "Requests")

on Banerjee's counsel on August 3, 2018.  Ex. 48.  Request No. 2 asked for all of Banerjee's tax

returns.  Id. at 6.  After many delays, Banerjee eventually produced a federal income tax return for

2014.  Ex. 36.  This 2014 federal return is the only Banerjee tax return filed for the years between

2012 and 2015 that shows an Indian address for Banerjee.  Id. at 1.  However, this return is dated

November 3, 2018—after the question of Banerjee's domicile in 2014 was at issue before this

Court and after Sadis requested the return.  Id. at 2.

Moreover, the evidence shows that Exhibit 36 was not the 2014 federal tax return that was

actually filed by Banerjee with the IRS—at least not initially.  Instead, Exhibit 36 was prepared

with an Indian address specifically so that it could be produced in discovery in this litigation.  On

November 1, 2018—after receiving the Requests and two days before the signature date on Exhibit

36—Banerjee's wife, Akshita Banerjee ("Akshita") emailed the Banerjees' accountant, Walter

---

physically there to file them" but that "the information would have been given by [her] husband."  Ex. 87 at 146:19-
147:2.

[6] However, the PA Department of Revenue's file contains a 1099-MISC for Banerjee categorizing the $431,610 in
2014 and the $107,346 in 2013 as "Nonemployee Compensation."  Ex. 126 at 1.

Jack ("Jack") of HRB asking him to "send over the first two pages of Sumanta's 2014 1040 with your signature on it" because "Krista didn't print out the right one.  The address should in [sic] an Indian address."[7]  Ex. 93 at 1.  Jack replied "I think this is what you want," attaching the version of the Banerjee's 2014 federal return that is now Exhibit 36.  Id. at 1-3.  Not only does this exchange indicate that Exhibit 36 contains an Indian address because Akshita specifically asked that an Indian address be used before the document was produced in discovery—but their exchange indicates that Banerjee had an earlier 2014 federal tax return with a U.S. address he wanted to hide.

That Banerjee withheld his 2014 federal tax return in discovery is further evidenced by his 2014 PA tax return, filed in October 2017, which shows taxable interest of $31 and dividends of $81 as "reported on [his] federal return."  Compare Ex. 38 at 3-4 with Ex. 36 at 1, lines 8a, 9a.  But the 2014 federal return produced by Banerjee was not filed until November 2018. Ex. 36 at 2.  Banerjee must have had an earlier 2014 federal return—from October 2017 or earlier—which the 2014 PA return could take information from.  Additionally, although Banerjee only produced the first two pages of his 2014 federal tax return, HRB produced additional pages of his tax return in response to Sadis' subpoena.[8]  These pages included a Schedule E showing the depreciation of the Banerjee's CT house, Ex. 88, and a Form 4684 calculating the theft of household items, Ex. 89, both showing tens of thousands in deductions.  But the 2014 federal tax return produced by Banerjee shows "itemized deductions" of only $551.  Ex. 36 at 2.  HRB also produced a Form 5489 stating Banerjee's 2014 IRA contribution and showing Banerjee's address as 304 Harvester. Ex. 90.  The above evidence demonstrates conclusively that Banerjee deliberately withheld an earlier version of his 2014 federal tax return because it has a PA address.

---

[7] Exhibit 93 was produced by HRB in response to a *subpoena duces tecum* after the depositions of both Banerjees.

[8] HRB did not produce Banerjee's full 2014 federal tax return.

*(iii) Banerjee's 2015 Tax Returns*

Banerjee and his wife filed joint 2015 federal and state income tax returns.  Both their 2015 federal return and their 2015 PA return show a home address of 1514 Cook School and the latter shows PA residency.  Ex. 43 at 17; Ex. 46 at 2.  And Banerjee's 2015 PA return, like his 2013 PA return, shows Banerjee having an interest in a "PA S corporation" or "partnership."  Ex. 46 at 13.  And includes "PA-taxable interest income" and "PA-taxable dividend and capital gains distribution income" specifically attributed to Banerjee (designated as "Spouse").  Id. at 7, 9.

In contrast to all of the U.S. federal and state income tax returns described above, Banerjee did not file an Indian income tax return for any year from 2012 through 2016.  Ex. 74 at 25:5-8.

**B.**      ***Banerjee's PA Court Filings Evidence a Pittsburgh Domicile***

*(i)  Banerjee's Legal Dispute with a Contractor Who Worked on 1514 Cook School*

While still living at 304 Harvester, the Banerjees began building a new house at 1514 Cook School.  In September of 2014, Banerjee and his wife were sued by a contractor, Robert Schiff ("Schiff"), who worked on the 1514 Cook School house between June 15, 2014 and August 14, 2014.  Ex. 17 at 1-2.  Schiff's complaint lists Banerjee's then-current address as 304 Harvester.  Id. at 2. Although the property was purchased in the name of Akshita and her father, Banerjee was the primary contact for Schiff who listed Banerjee's name first throughout his Complaint and included Akshita as Banerjee's "spouse."  Id. at 1-2, 4; Ex. 87 at 32:4-10.  Indeed, evidence submitted by Schiff showed that his mailings, work estimates, and invoices were addressed to "Sam Banergi" or "Sam Banergee" or both Banerjee and his wife—but never Akshita alone.  Ex. 39 at 2-4, 6, 8.  Moreover, all of the receipts submitted by Schiff as evidence for his expenses were signed off on by "Sam" not Akshita.  Id. at 9-22.

On September 26, 2014, Banerjee and his wife filed a cross-claim against Schiff, and the magistrate judge rejected both Schiff's claim and Banerjee's cross-claim.  Ex. 19 at 1.  Banerjee's

address, as plaintiff in the cross-claim, is listed as "304 Harvester Cir. Pittsburgh, PA 15241."  <u>Id.</u> at 2.  On December 12, 2014, Schiff appealed the decision to Court of Common Pleas of Allegheny County ("Court of Common Pleas").  <u>See</u> Ex. 24 at 2 (Appeal Docket showing filing of appeal). On January 13, 2015, the Banerjees filed two documents in response to Schiff's appeal.  Akshita filed a Counterclaim and Answer as Document 5 on the Court of Common Pleas docket and Banerjee filed an Answer and Counterclaim as Document 4.  <u>Id.</u> at 2.  The Answer and Counterclaim filed by Banerjee lists his and Akshita's address as "1514 Cook School Rd., Pittsburgh, PA 15241" and states "Mr. Schiff severely damaged **my** newly built **home**. He pierced **my** new plumbing."  Ex. 23 at 1 (emphasis added).  This statement signed by Banerjee referring to 1514 Cook School as "my newly built home" is clear evidence that Banerjee considered 1514 Cook School in Pittsburgh PA to be his home.[9]

Similarly, in the Counterclaim and Answer filed by Akshita she included Banerjee, writing "**we** had him cease to do the work and had another contractor finish the job" and "[i]n **our** case … **we** were the counter plaintiff and the judge found for **us** in Schiff's case."  Ex. 40 at 2 (emphasis added).  At no point during the litigation with Schiff did Banerjee argue that there could be no claim against him because 1514 Cook School was not his house and he had not hired Schiff. Hearing Tr. 75:5-16.  The PA court ultimately found in favor of Schiff and held both Banerjee and Akshita liable to pay Schiff.  <u>Id.</u> at 75:17-19.

*(ii) Banerjee's Traffic Violations in PA List His Home Address as Pittsburgh*

On April 17, 2013, Banerjee was charged for a traffic violation in Allegheny County, Pennsylvania and his "Home" address is recorded on the docket as "Pittsburgh, PA 15241."  Ex.

---

[9] Banerjee claims that his wife signed this Answer and Counterclaim on his behalf. Ex. 74 at 200:4-7, 201:7-24; Hearing Tr. at 72:23-73:4.  However, the docket shows that Banerjee himself filed the Answer and Counterclaim that is Exhibit 23 to this brief.  Regardless, Akshita testified that she signed Banerjee's name on his behalf with his approval. Ex. 87 at 57:12-58:2.

20 at 1-2.  On September 15, 2015, Banerjee was charged for another traffic violation in Allegheny County, Pennsylvania and again his "Home" address is "Pittsburgh, PA 15241."  Ex. 21 at 1.  On January 30, 2016, Banerjee was again charged for a traffic violation in Allegheny County, Pennsylvania and once again his "Home" address is "Pittsburgh, PA 15241."[10]  Ex. at 22.

Banerjee's consistent use of Pittsburgh PA as his home address in local court filings from April 2013 through January of 2016—including in counterclaims he filed on his own behalf—demonstrates that he considered  Pittsburgh PA to be  his home in 2013, 2014, 2015 and 2016.

### C.   *Banerjee's Available Financial Accounts Evidence a PA Domicile*
   *(i)  Banerjee's Fidelity Investment Accounts*

Sadis' August 3, 2018 Requests also asked for all for "All of Your, and Your Wife's, bank accounts, investment accounts, or brokerage accounts, including account opening documents, monthly statements, …"  Ex. 48 at 6, Req. 1.  Banerjee did not produce any investment account documents in response to this request.  Nor were any produced in response to a similar request in Sadis' subpoena on Akshita.  See Ex. 83 at 4.  However, Sadis discovered reference to Fidelity accounts in Akshita's bank statements and the Court ordered Akshita to produce "all of her investment account and brokerage account statements from 2013 and 2014."  Dkt. No. 124 at 1.  Eventually Sadis received a full set of the Banerjee's account documents from Fidelity Investments ("Fidelity") in response to a subpoena.

These documents revealed that Banerjee had two Fidelity accounts in 2013 and 2014: one joint account with his wife and one solo account.  E.g., Exs. 61-62, 65-66.  Both accounts list a Pittsburgh address, 304 Harvester in 2013 and 2014.  Id.  On October 23, 2013, $107,346 was deposited into Banerjee's joint Fidelity account, matching the $107,346 reported as income

---

[10] Banerjee's name is listed on the docket as "Sumeet Banerjee," a variation on his name that Banerjee sometimes used.  Ex. 74 at 194:14-195:20.

Banerjee earned in his 2013 joint PA tax return.  Compare Ex. 61 at 2 with Ex. 37 at 4.  And as of February 2014, when this action was initiated, Banerjee's solo account was valued at $71,148.96.

On April 26, 2011, when Banerjee and his family were still spending much of the year in India, Banerjee's Fidelity account information showed a CT address, at 23 Soundview.  Ex. 55 at 1, 3.  However by January of 2013, Banerjee had changed his address with Fidelity to 304 Harvester.  Ex. 57 at 1.  Having taken the steps to change his account information, Banerjee could have switched his address to India or transferred the account to his wife.  But he did neither— further evidence that his home address in 2013 and 2014 was 304 Harvester in Pittsburgh, PA.

*(ii) Banerjee's Debit and Credit Card Use in the United States*

Banerjee initially produced a variety of documents heavily redacted, including an Axis Bank statement covering the years 2013 and 2014.  Ex. 26.  The Court ordered these documents be reproduced in unredacted form (Dkt. No. 101) and Banerjee produced a poor but unredacted copy.  Ex. 27.  The Axis Bank statements, although from an Indian bank and showing an Indian address, list all withdrawals from January 19, 2013 onward—for which a location can be made out—taking place in the United States, and primarily in Pittsburgh PA.  Ex. 27 at 1-9.[11]

Banerjee also produced a heavily redacted series of Axis credit card statements (the "Axis Card Statements").  Ex. 28.  The Axis Card Statements covered the period of June 2013 through January 2015 but all of the transaction details, including where the credit cards were used, are redacted.  Id. at 1-22.  Banerjee claims that the original copies were redacted by his mother, and that he could only obtain unredacted versions by going to India and requesting them in person.  Ex. 72, ¶¶ 5-6.  Banerjee told Sadis that he would be travel to India to retrieve the Axis Card

---

[11] Banerjee has claimed that these withdrawals, through the use of a debit card, were made by his wife.  Ex. 74 at 215:18-2:16:3.

Statements, id. at ¶ 7, but he has still not produced them.[12]   Banerjee has conceded that if unredacted, the Axis Card Statements would show that they were used primarily in Pittsburgh in 2013 and 2014.  Id. at ¶ 4; Ex. 127, Feb. 6, 2019 Tr. 5:15-22; Dkt. No. 153 at 9.  Banerjee claims that his Axis credit cards were used exclusively by his wife. Ex. 72, ¶¶ 4-5; Ex. 74 at 230:15-18.  But the Axis Card Statements show that Banerjee's account had at least two credit cards that were used in 2013 and 2014—one in Banerjee's name and one is Akshita's name. Ex. 28 at 3-4, 13-14.  And both cards were used on the same day.  Id. at 13-14 (both cards showing purchases on July 19, 20, 22, 23, and 26, 2014).

Although initially concealing the fact, Banerjee also claimed to have used a credit card owned by his family's trust but his then counsel, Robert Chan, wrote that "[i]t is not his (Banerjee) practice to retain credit card statements after he receives and reviews them." Ex. 50 at 2.  Banerjee later claimed that because this other credit card was in the name of a trust, he was unable to obtain copies of the statements (the "Trust Card Statements")—despite managing the Trust's investments and being its sole beneficiary.  Ex. 52 at 2:23-3:10, 3:20-4:5; Ex. 72 at ¶ 8.[13]

### A.  *Banerjee's Board Membership in Fraternal and Business Organizations and Formation of Businesses Evidence a Pittsburgh Domicile*

#### *(i)  Banerjee's Involvement in Pittsburgh-based Non-Profit Organizations*

In 2013 and 2014, Banerjee got involved with two local Pittsburgh organizations, the Forbes Funds and the MIT Enterprise Forum Pittsburgh.  See Exs 14 & 16.  The Forbes Funds is a Pittsburgh-based "not-for-profit organization that's set up to help other not-for-profit

---

[12] Plaintiff has requested the Court sanction Banerjee and draw and adverse inference that the redacted information would show that Banerjee was using his Axis credit card primarily in the Pittsburgh PA area throughout 2013 and 2014—including at the time Sadis filed this action.  Dkt. No. 145 at 6-11.

[13] Plaintiff has requested that the Court draw an adverse inference that if produced the Trust Card Statements would show Banerjee used his trust credit card primarily in the United States—particularly in the Pittsburgh, PA area— throughout 2013 and 2014. Dkt. No. 145 at 11-14.

organizations in managing their affairs."   See The Forbes Funds, What We Do, https://forbesfunds.org/what-we-do-new; Ex. 74 at 54:22-55:4.  Banerjee first got involved with the Forbes Funds in 2013 and joined its Advisory Board sometime in 2014.  Hearing Tr. at 76:3-8.  Banerjee was listed on the Forbes Fund website as member of the Advisory Board holding a three-year term with a business affiliation of Crossway Yield Partners ("Crossway").  Id.  Banerjee formed Crossway as a Delaware entity in July of 2013 to raise investor capital and purchase property in the United States on behalf of Banerjee's family trust.  JS ¶ 21; Ex. 74 at 57:12-19.

Banerjee also got involved with the MIT Enterprise Forum Pittsburgh ("MIT Pittsburgh"), the Pittsburgh branch of a global non-profit organization seeking "to advance the entrepreneurial community of the Greater Pittsburgh Region."[14]  Ex. 16 at 1.  Starting in 2013, Banerjee attended MIT Pittsburgh networking events.  Ex. 74 at 52:9-53:10.  Representatives of the MIT Pittsburgh asked Banerjee to join their Board of Directors.  Id. at 53:14-25.  Although Banerjee testified that he rejected the offer to join (Hearing Tr. at 76:9-15), as of July 2016 he was listed on the MIT Pittsburgh's website as a member of their Board of Directors.  Ex. 16 at 3-4.

*(ii)   Banerjee's Interests in Various American Entities*

In addition to Crossway, in 2014 Banerjee and his wife formed Harvester Energy, LLC ("Harvester Energy"), an Ohio entity.[15]  Ex. 29 at 1, 4.  The Banerjees held their interest in Harvester Energy through an entity called Harvester Partners, LLC ("Harvester Partners").  Ex.

---

[14] In 2017, MIT Pittsburgh split from the global MIT Enterprise and rebranded itself as the "Pittsburgh Entrepreneurs Forum."  See Pittsburgh Entrepreneurs Forum, About, https://www.pittsburghentrepreneursforum.com/

[15] At deposition, Akshita claimed she included Banerjee in the e-signature for the formation of Harvester Energy because she "was hoping that he would be able to work with me on helping with this business," Ex. 87 at 18:3-5, but that he refused and she later amended the articles of organization to remove him.  Id. at 17:5-24.  Although she filed an amended certificate a few days later, there is no indication from the amended certificate that Banerjee was being removed as a representative of the company.  Rather, the certificate was amended to change the ownership percentages of Harvester Energy to 66.6% for Harvester Partners and 33.3% for an unrelated entity, JDDD.  Ex. 129 at 4.  Banerjee did not sign the amendment but that only indicates that he was not the filer.

129 at 4.  Harvester Partners is a PA entity owned in part by Akshita's father, and SSA Capital Advisors ("SSA Advisors"), a Delaware LLC the Banerjees have operated in Pittsburgh PA since May 2014.  Ex. 130 at 1; Ex. 131 at 2.  The Banerjees both initially testified that Banerjee has no involvement in SSA Advisors.  Hearing Tr. at 77:16-18; Ex. 87 at 14:5-10.  But Banerjee later conceded that he has a SSA Advisors email address.  Hearing Tr. at 78:16-20.

On March 19, 2015, SSA Advisors—together with other investors—formed SSA Capital Partners ("SSA Capital") to invest in multi-family real estate.  Ex. 132 at 1-2; Ex. 95 at 4.  Included among those other investors were John Whitehill and Steven Cherin—Banerjee's colleagues at MIT Pittsburgh.  Ex. 16 at 1-2; Ex. 132 at 1.  The Banerjees also invested in SSA Capital through the SASB Irrevocable Trust which they created while still living at 304 Harvester.  Ex. 133.

In addition to these entities, Banerjee held an interest in an unnamed PA S corporation or LLC for which he reported a loss and income in his state tax returns in 2013 and 2015, respectively.  Ex. 37 at 6; Ex. 46 at 13.  The Banerjees also held a joint interest in Commonfund Distressed Debt Partners II, L.P. ("Commonfund II"), a Delaware entity, in 2013 & 2014.  Ex. 91 at 2, 7.

### D.    *Banerjee Was in the United States for the Vast Majority of 2013 & 2014*

Banerjee's passport stamp shows that he left India on January 9, 2013 and arrived in the United States that same day.  Ex. 13 at 2-3.  Banerjee was still in the United States on April 17, 2013.  Ex. 20 at 2 (showing Banerjee's traffic offense in Pittsburgh).  Additionally, Banerjee's passport shows no further stamps in 2013 and Banerjee conceded that he did not know if he returned to India at all in 2013.  Ex. 74 at 172:2-17; Ex. 13 at 1-6; Ex. 134.  Similarly, Banerjee was not in India in early February 2014 when Sadis attempted to serve through Hague Convention service.  Ex. 77 at 2 (Reba Banerjee's affidavit saying she did know "the probable timeline of [Banerjee] returning to India).  Thus, it appears that at the time Sadis filed this action on February 13, 2014 Banerjee had not been to India in more than a year.

Banerjee was still in Pittsburgh in June and July of 2014 when he hired and supervised Schiff in Schiff's work on 1514 Cook School.  Ex. 17 at 2; Ex. 39 at 5-6, 8-22 (receipts approved by Banerjee range from June 23 to July 11, 2014).  At some point in the latter half of 2014, Banerjee visited India, but returned to the United States on November 9, 2014.[16]  Ex. 134 at 2; Hearing Tr. 52:1-3.  Thus, it appears that Banerjee spent a large majority of both 2013 and 2014 in the United States—not India.  See Ex. 74 at 40:22-41:4.

## II.   EVIDENCE BANERJEE WAS DOMICILED IN WESTON, CT FROM 2009-2012

It is undisputed that prior to 2009 the Banerjees were domiciled in Weston, CT.  JS ¶ 3. And it is undisputed that the reason the Banerjees moved to India in 2009 was so Banerjee could care for, and spend time with, his terminally ill father before he died and understand the extent of his family's assets in India.  JS ¶ 4; Ex. 74 at 68:16-24.  None of these reasons imply long-term intent to stay in India.  Banerjee also initially told Sadis in 2009—his attorneys at the time—that his stay in India was temporary and he would be back in CT in October of 2009.  Ex. 1 at 1-2.

Between 2009 and 2011—when Banerjee's wife and children returned to CT full-time— Banerjee kept his CT home fully furnished and the family stayed there during school vacations. JS ¶¶ 10, 12; Ex. 74 at 68:25-69:7.  Banerjee maintained a CT driver's license throughout this time period.  JS ¶ 20.  On July 21, 2011, under oath at a deposition in another matter, Banerjee testified "I reside in India, but I also have a residence in Connecticut" and that "[i]t's kind of a shuttling-back-and-forth situation."  Ex. 2 at 8:8–9:5. On June 27, 2012, during a status conference in the District of Massachusetts, the district court judge said to Banerjee "indeed you were residing in Connecticut, I understand."  Ex. 8 at 9:19-10:2.  Banerjee responded saying "we have a house in India and in Connecticut" and agreed to accept service at his "home in Connecticut.  Id. at 10:3-

---

[16] Banerjee never produced a fully unredacted copy of his passport.  See Ex. 134 at 2 (covering page 8 of the passport).

13.  And Banerjee concedes that he "split his time between India and Connecticut between June 2011 and June 2012."  JS ¶ 13.

Moreover, after his family returned full time to CT in 2011, Banerjee never got his own apartment or home in India—despite his family's substantial wealth.  Ex. 74 at 20:14-21, 21:16-20.  Rather, he rented a spare bedroom as a "Paying Guest" from someone in his mother's apartment building in India for a small monthly sum.[17]  Ex. 122 at 1-2.

Finally, the separation agreement signed by Banerjee on June 19, 2012 shows he had been continuously residing in Fairfield County, CT for the entire period of 2009 through June 2012. The Banerjee's became CT residents in 1997—after previously living in Westchester County, NY.[18]  Ex. 7 at ¶ 3.  Yet in Section 1, the separation agreement states that "Sumanta Banerjee and Akshita Banerjee acknowledge they have both resided in Fairfield County for 15+ years which satisfied the residency requirements of the State of Connecticut."  Ex. 6 at 1.  1997 to 2012 is fifteen years—but only if Banerjee resided in CT from 2009 through June 2012.[19]  Ex. 74 at 118:13-119:10, 122:2-9.

## III.  EVIDENCE THE BANERJEES WERE NOT ACTUALLY SEPARATED IN 2013 AND 2014

Acknowledging that his wife and children have lived in Pittsburgh PA from late 2012 onward, JS ¶ 15, Banerjee's claim that he was domiciled elsewhere hinges on a separation agreement he and his wife signed on June 19, 2012 and again in front of a notary on September

---

[17] The monthly guest payment was 15,000 rupees, Ex. 122 at 2, 4, 6, 8, which was the equivalent of $235 to $333 per month depending on the exchange rate over the lifetime of the agreement from June 1, 2011 to June 1, 2015.  See XE, US Dollar to Indian Rupee Chart, https://www.xe.com/currencycharts/?from=USD&to=INR&view=10Y.

[18] They previously lived in Stamford Connecticut for less than a year in 1994.  Ex. 7 at ¶ 3.

[19] Banerjee signed the separation agreement swearing that to his "knowledge the information contained in the agreement was full and complete," including that he resided in CT from 2009-2012.  Id. at 124:19-125:2; Ex. 6 at 8.

18, 2012 (the "SA"). Ex. 6 at 1, 8-9. But the evidence shows that the SA was never implemented and the Banerjees were never legally separated. *First*, the SA clearly states that it itself is not a "formal" separation but contemplates a future filing of a formal "Separation or Divorce." Id. at 1. And the SA specifically requires the SA to be submitted to a court for a judge's approval of the terms in advance of any "formal grant of either Separation or Divorce." Id. at 7, § 19. But Banerjee concedes the SA was never filed with any court, JS ¶ 14, and no divorce decree was entered. Ex. 74 at 126:16-18. Therefore, the SA is not a formal or legal separation. Indeed, Akshita conceded that other than Akshita's parents, the Banerjees did not tell anyone—including their children— that they were separated at all. Ex. 87 at 23:11-16, 25:15-26:9.

*Second*, Banerjee claimed that his wife used his credit cards and debit card "pursuant to the separation agreement" as a form of child support and spousal support. Ex. 72 ¶ 4; Ex. 74 at 127:6-11. But the SA clearly states that child and spousal support will only start "following the entry of the divorce decree." Ex. 6 at 3 §9, 6 §14. Moreover, Akshita still uses Banerjee's Indian debit card to withdraw money whenever she wants. Ex. 74 at 140:15-141:3. Further evidence the SA was never implemented and the use of Banerjee's cards was never for child and spousal support.

*Third*, under the SA, Akshita was to "remain in the home located at 23 soundview … and have sole and absolute ownership of the same." Ex. 6 at 4, §11(a). But Banerjee continued to use their 23 Soundview home. Hearing Tr. at 87:4-22. Indeed, on July 27, 2012, a month after executing the SA, Banerjee wrote in an email to John Hassett "[w]e have no power due to the storm in CT," referring to he and his family not having power at 23 Soundview. Ex. 9 at 3; Ex. 74 at 151:12-152:5. Similarly, on September 22, 2014, Banerjee filed a document with the District of Massachusetts requesting the court "release the Lien that was placed on his property, 23 Soundview Farm Road Weston CT" and that a copy of the release be mailed to "Akshita Banerjee

15

at 304 Harvester Circle, Pittsburgh PA."[20]  Ex. 10.  And in his 2013 PA joint state tax return, Banerjee deducted $82,654 for a "home office" at 23 Soundview. Ex. 37 at 4.

Most importantly, on August 26, 2016, in a letter filed in this matter, Dkt. No. 71, Banerjee claimed that he owned his CT home until it "was sold in 2015," referring to it as "my home in CT" and "my residence in CT."  Ex. 12 at 2.  Indeed Banerjee claimed that between October 2013 and July 2014 he "visited Pittsburgh but stayed in CT (at my residence) when I was in the US."  Id.

*Fourth*, the SA says that Akshita was to receive 100% of ZBAC, LLC.  Ex. 6 at 4 §11(b). But, as set forth above, Banerjee reported on his 2013 PA joint state tax return that he earned $107,346 through ZBAC, LLC.  Ex. 37 at 4.  Akshita has admitted that this $107,346 was earned by Banerjee, not her, and that she would not have reported it had she and her husband filed separate 2013 tax returns.   Ex. 87 at 129:8-22.   Additionally, Banerjee uses the email address zbacllc@gmail.com to this day—after previously using sbaner@gmail.com until at least 2013.  Ex. 30 at 1, 13-14; Ex. 73.  Similarly, although the SA states that Banerjee and his wife agreed to "divide the any remaining US assets equitably," Ex. 6 at 5 §11(d).  Banerjee never transferred or assigned any portion of his individual Fidelity brokerage account to Akshita or his interests in the entity that paid him over $531,000 over 2013 and 2014.  Hearing Tr. at 39:24-41:1.

In sum, the above evidence overwhelming proves that Banerjee was domiciled in Pittsburgh, PA in 2013 and 2014—including on February 13, 2014 when the Complaint in this matter was filed—just like his wife and children were, and just like he reported in his contemporaneous tax returns and state court filings where his domicile or residence had not been raised as an issue.

---

[20] Banerjee claims that this document was signed by Akshita using Banerjee's signature but concedes that he knew she was filing it on his behalf.  Hearing Tr. at 59:23-60:7.

## ARGUMENT

I.  **THE EVIDENCE IS INCONTROVERTIBLE—BANERJEE WAS A PENNSYLVANIA CITIZEN ON FEBRUARY 13, 2014**

The objective indicia of Banerjee's actual residence and intent overwhelming show he was domiciled in Pittsburgh, PA on February 13, 2014—the day the Complaint was filed.  Banerjee's self-serving statements to the contrary here and in other court filings where he attempts to evade service and jurisdiction are undermined by his actions and official government documents.

The essential elements of domicile are "Residence in fact, coupled with the purpose to make the place of residence one's home."  State of Texas v. State of Florida, 306 U.S. 398, 424 (1939); Spanos v. Skouras Theatres Corp., 364 F.2d 161, 163 (2d Cir. 1966).  While a party's statements may supply evidence of intention, "they cannot supply the fact of residence," Texas, 306 U.S. at 425, are "subject to the infirmity of any self-serving declaration, and may frequently lack persuasiveness or even be contradicted or negatived by other declarations and inconsistent acts." District of Columbia v. Murphy, 314 U.S. 441, 456 (1941).  As this Court has said:

> To ascertain intent, a court must examine the entire course of a person's conduct in order to draw the necessary inferences as to the relevant intent. … The party's own statements concerning his intentions are relevant, but they are of slight weight when they … are belied by **objective indicia of actual residence and intent**. Nat'l Artists Mgmt. Co. v. Weaving, 769 F. Supp. 1224, 1227–28 (S.D.N.Y. 1991) (emphasis added)

In determining domicile, courts generally look at a variety of factors as objective indicia of actual residence and intent, including:

- the Defendant's "Current residence," Kennedy v. Trustees of Testamentary Tr. of Will of Kennedy, 633 F. Supp. 2d 77, 81 (S.D.N.Y. 2009), aff'd, 406 F. App'x 507 (2d Cir. 2010);

- where the Defendant "filed taxes" and the state "listed" as their "home state" on those taxes,  Krechmer v. Tantaros, 747 F. App'x 6, 10 (2d Cir. 2018);

- "location of brokerage and bank accounts," Jelen v. United States Marshals Serv., No. 18CV680, 2020 WL 1503566, at *11 (S.D.N.Y. Mar. 30, 2020).

17

- "membership in fraternal organizations, churches, and other associations," <u>Bank of India v. Subramanian</u>, No. 06-cv-2026, 2007 WL 1424668, at *3 (S.D.N.Y. May 15, 2007);

- "places of employment or business." <u>Kennedy</u>, 633 F. Supp. 2d at 81.

And although "no single factor is conclusive … the residence of a married person's spouse and children (if the couple has not separated) is given considerable weight." <u>Nat'l Artists Mgmt. Co.</u>, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991); <u>accord</u> <u>Kenosha Unified Sch. Dist. v. Stifel Nicolaus & Co. Inc.</u>, 607 F. Supp. 2d 967, 974–75 (E.D. Wis. 2009) (citing Restatement (Second) of Conflict of Laws, Ch. 2, Topic 2, Special Note on Evidence for Establishment of a Domicil [sic] of Choice (1971)). This factor applies even if the couple was "separated in fact" so long as "the couple are not legally separated." <u>Durst v. Siegler</u>, No. 04 CIV. 6981 RMB, 2005 WL 3358599, at *7 (S.D.N.Y. Dec. 7, 2005). Here, each of the objective indicia set forth above show Banerjee was domiciled in Pittsburgh, PA in 2013 and 2014.

*(i) Banerjee's Current Residence in Pittsburgh at the Time of the Filing*

The following evidence shows Banerjee's actual residence in Pittsburgh PA around the time the Complaint was filed:

1. Banerjee's 2013 & 2014 PA state returns list Banerjee as a PA all-year resident with a Pittsburgh address. Exs. 37 at 1, 38 at 1.

2. Banerjee's traffic violation dockets and lawsuit, including counter-claims against 1514 Cook School contractor Schiff, list Banerjee as having a Pittsburgh home address and identify Schiff as having worked on Banerjee's Pittsburgh home. Exs 19-24.

3. From late January 2013 through late 2014 all withdrawals from Banerjee's Indian bank account were in the United States with a large majority made in the Pittsburgh area. Ex. 27.

4. Banerjee has conceded his Indian credit card was used primarily in the Pittsburgh area in 2013 and 2014. Exs. 72 ¶ 4, Ex. 127, Feb. 6, 2019 Tr. at 5:15-22.

Each of these items shows Banerjee's actual residence in 2013 and 2014 was in Pittsburgh, PA.[21] Furthermore, Banerjee's passport, testimony, and documents from the Schiff action, indicate that between January 19, 2013 and at least the end of July 2014, he was not in India at all.  Ex. 13 at 1-6; 134 at 2-5; Ex. 17 at 2; Ex. 74 at 172:2-17; Ex. 39 at 5-6, 8-22.

   *(ii) Banerjee's Tax Returns Demonstrate a PA Domicile*

   For the years 2013 through 2015, Banerjee filed PA and federal income tax returns in the United States.  Exs. 25, 36-38, 43 at 17, 46.  In contrast, he filed no income tax in India over this time period.  Moreover every tax return Banerjee filed for the years 2013-2015 listed his Pittsburgh home address, 304 Harvester and later 1514 Cook School.  Exs. 25 at 1, 37 at 1, 38 at 1, 43 at 17, 46 at 2.  The sole possible exception is Banerjee's 2014 federal return—the produced version of which shows an Indian address—but the original complete version has never been produced.  See Ex. 36 at 1; Ex. 93 at 1; Exs. 88-89.  Filing PA state income taxes and U.S. federal income taxes— and not filing income taxes in India—and listing a Pittsburgh, PA address is an objective indicator that Banerjee was domiciled in PA and the United States from 2013 through 2015.  Krechmer, 747 F. App'x at 10; (affirming district court finding of New York domicile based, in part, on the defendant having "filed taxes in New York State and listed New York as her home state in 2016"); Reviakine v. Mednikov, No. 15-CV-00227(KAM), 2016 WL 8711206, at *2 (E.D.N.Y. Apr. 29, 2016) (holding defendant "and his wife's joint Pennsylvania state and federal income tax returns that list the address of the Pennsylvania Home" were evidence of PA domicile).

---

[21] All of these items—state tax return residency, prior court filings, bank and credit card use—have been used by Courts as evidence of current actual residence during the relevant time period.  See e.g., Steuben Foods, Inc. v. Int'l Dispensing Corp., No. 09-CV-989S, 2010 WL 2925954, at *4 (W.D.N.Y. July 23, 2010) (establishing the defendants "current residence" based on his "New York State Tax return" showing that "he lived there" for the entire year); Choupak v. Rivkin, No. CIV.A. 11-1281-RGA, 2012 WL 2365903, at *10-11 (D. Del. June 21, 2012) (using the address the defendant "represented as his residence in prior court filings" to help establish domicile); New Canaan Capital Mgmt., LLC v. Ozado Partners LLC, No. 16 CIV. 1395 (PGG), 2017 WL 1157153, at *8 (S.D.N.Y. Mar. 25, 2017) (relying on credit card billing to show that defendants spent the majority of the relevant years in Florida).

*(iii) Banerjee's Only Brokerage Accounts Show a PA Domicile*

The only brokerage account documents produced by Banerjee for the years 2013 and 2014 show that he had two U.S. based Fidelity accounts, both of which showed Banerjee having a Pittsburgh address.  E.g. Exs. 61-62 & 65-66.  Although Banerjee did have an Indian bank account in 2013 and 2014, the account statements show that after mid-January 2013 all of the withdrawals were made in the United States.  Ex. 27 at 1-10.  Having personal investment accounts in the U.S.—and not India—and which record a Pittsburgh address is another objective indicator that Banerjee was domiciled in PA.  See Ceglia v. Zuckerberg, 772 F. Supp. 2d 453, 456 (W.D.N.Y. 2011) (finding the defendant was domiciled in California because his "brokerage accounts list his California residence and his investment advisors are located in California"); Paul Revere Life Ins. Co. v. Segal, No. 99 CIV. 3022 (MBM), 2000 WL 1448626, at *2 (S.D.N.Y. Sept. 28, 2000) (citing Segal's continued maintenance of "two investment accounts opened in New York" as evidence of a New York domicile).

*(iv) Banerjee's Involvement in Pittsburgh Non-Profits Shows his PA Domicile*

Starting in 2013 Banerjee got involved in two Pittsburgh non-profits, the Forbes Funds and MIT Pittsburgh.  Hearing Tr. at 76:3-8; Ex. 74 at 52:9-53:10.  In 2014 Banerjee joined the Forbes Funds' Advisory Board and was selected to MIT Pittsburgh's Board of Directors.  Hearing Tr. at 76:3-15; Ex. 14 at 1; Ex. 16 at 3-4.  Banerjee's joining Pittsburgh non-profit associations is further objective indicia that he was domiciled in PA in 2013 and 2014.  See Francke v. Martin, 1994 WL 132293, at *3 (S.D.N.Y. Apr. 14, 1994) (citing defendant's membership in "clubs and associations in Hong Kong," including the "Chamber[s] of Commerce" as evidence of a Hong Kong domicile).

*(v) Banerjee's Business Ventures in the United States Support a PA Domicile*

Over 2013, 2014, and 2015, Banerjee formed or helped his wife and partners form a number of business entities in the United States: (1) Crossway, a Delaware entity, JS ¶ 21; (2) Harvester

Energy an Ohio entity, Ex. 29 at 1, 4; (3) SSA Advisors, a Delaware entity, with its principal business address in Pittsburgh and which owns the Banerjees' portion of Harvester Energy, Exs. 129 at 4, 130 at 2; and (4) SSA Capital, a Pennsylvania entity, Ex. 95 at 4. Additionally, Banerjee held an interest in an unnamed PA S corporation or LLC in 2013 and 2015. Ex. 37 at 6; Ex. 46 at 13. And Banerjee and his wife created a trust in Pittsburgh in 2013 or 2014, SASB Irrevocable Trust, which invested in SSA Capital. Ex. 133. The formation of all of these entities between 2013 and 2015, plus Banerjee's continued interest in Commonfund II, a Delaware entity, Ex. 91 at 7, are additional objective indicia of Banerjee's US and PA domicile. See Ceglia 772 F.Supp.2d at 456 (defendant's founding and owning large corporation in California evidence that he changed his domicile to California); Hicks v. Brophy, 839 F. Supp. 948, 951 (D. Conn. 1993) (citing the operation of the plaintiffs' business in New York as a basis for determining domicile).

### (vi) Banerjee's Wife and Children Were Domiciled in Pittsburgh

It is undisputed that Banerjee's wife and children moved to Pittsburgh PA and have been domiciled there since at least 2013 when Akshita purchased a property for a new house. JS ¶ 15; Ex. 82 at ¶ 7 (stating that Akshita purchased the land to build a new house in Pittsburgh in "April 2013"). The residence of his wife and children in a newly built house in Pittsburgh PA is substantial evidence of Banerjee also being domiciled there. Nat'l Artists Mgmt., 769 F. Supp. at 1228; accord Semack v. 35 Hamden Hills Drive, LLC, No. 3:12CV1057 JBA, 2013 WL 395486, at *3 (D. Conn. Jan. 31, 2013) (establishing domicile for Defendant based on his living "in a custom-built home with his wife in Weston, Massachusetts").

Although, Banerjee and his wife signed a separation agreement, the SA was never filed with any Court—despite such a filing being a requirement in the SA itself—and therefore never effected a legal separation. Ex. 6 at 7 § 19 (requiring the SA "be submitted to the Court for a judge's approval" and stating that it will be the "operative agreement … **if** determined by the

parties for a formal grant of either Separation or Divorce.") (emphasis added).  Even if the Banerjees were physically separated—a dubious proposition in light of the evidence—"the couple [we]re not legally separated" for the purposes of domicile.  Durst v. Siegler, No. 04 CIV. 6981 RMB, 2005 WL 3358599, at *7 (S.D.N.Y. Dec. 7, 2005); cf. Hammond v. Sessions, 710 F. App'x 19, 20 (2d Cir. 2018) (holding that "legal separation" as used in a naturalization statute "requires a formal act which, under the laws of the state or nation having jurisdiction of the marriage, alters the marital relationship ... recognizing the separate existence of the marital parties").  And, as explained in Section III of the Facts, *supra*, the evidence shows that the Banerjees never implemented the SA but continued to share the same house, accounts, and business entities.

The combination of all of these objective indicia of domicile is overwhelming.  Banerjee and his family were all domiciled in Pittsburgh, PA from 2013 onward, including on February 13, 2014 when this action was filed.

## II.   PRIOR TO PENNSYLVANIA, BANERJEE WAS DOMICILED IN CONNECTICUT, NOT INDIA

Even if Banerjee had not established a new domicile in PA his legal domicile would still not be India.  Rather, his domicile would be his admitted prior domicile, CT (JS ¶ 3) because his move to India was not intended to be permanent and he maintained his CT residence throughout.

"One may have more than one residence in different parts of . . . the world, but a person may have only one domicile."  United States v. Venturella, 391 F.3d 120, 125 (2d Cir. 2004). There is a "century-old presumption that a long-time domicile in a particular jurisdiction is presumed to continue ... [m]ere absence from a fixed home, however long continued, cannot work the change."  Gutierrez v. Fox, 141 F.3d 425, 427–28 (2d Cir. 1998).  If the parties agree to the existence to a prior domicile it is incumbent upon the party arguing that this domicile has changed "to show by clear and convincing evidence that [the party] had the required intent to give up the

old and take up the new domicile, coupled with an actual acquisition of a residence in the new locality." Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238, 243–44 (2d Cir. 1984).

Here, the parties agree that prior to January 1, 2009 Banerjee and his family were domiciled in CT. JS ¶ 3. Therefore, Banerjee, bears the burden of showing by clear and convincing evidence that his domicile changed to India. The evidence shows otherwise:

- The reasons Banerjee gives for moving to India—spending time with his dying father and figuring out the extent of his family's assets—do not require a permanent move. JS ¶ 4.

- In August of 2009, Banerjee told Sadis—his attorneys at the time—that his stay in India was temporary and he would be back in CT in October of 2009. Ex. 1 at 1-2.

- From 2009-2011, the Banerjees kept their CT home fully furnished and the family would live in CT when the children were off from school. JS ¶¶ 10, 12; Ex. 74 at 68:25-69:7.

- In May 2011, Banerjee's wife and children moved back to CT full-time and Banerjee split his time between India and CT between June 2011 and, at least, June 2012. JS ¶¶ 12-13.

- At a deposition in another matter in July 2011, Banerjee testified "I reside in India, but I also have a residence in Connecticut" and gave his CT address. Ex. 2 at 8:8–9:5.

- In June 2012, during a status conference in the District of Massachusetts, Banerjee stated that he lived in both India and CT and agreed to accept service in CT. Ex. 8 at 10:3-13.

- Banerjee never got his own apartment or home in India, despite his family's substantial wealth, and only rented a spare bedroom as a "paying guest" for a small sum. Ex. 122.

- In the SA, Banerjee states that he had been residing in CT for "15+ years" which necessarily includes 2009-2012. Ex. 6 at 1.

- Banerjee maintained a CT driver's license throughout the entire relevant time. JS ¶ 20.

Taken together, these facts demonstrate Banerjee maintained his residence in CT—in the very period he is now claiming to have been domiciled in India—and never demonstrated objective intent to change his domicile to India. In Katz, the plaintiff helped move his parents to Florida and then stayed with them there for 10 months, used his parents address on an employment form, tax form and insurance application, obtained a Florida driver's license, and moved in for a time with his girlfriend in Florida. 737 F.2d at 244–45. Still, the Second Circuit held that it was a

23

mistake for the District Court to rule that Katz had changed his domicile because there was evidence that Katz maintained ties to New York—visiting often—throughout his time in Florida and other travels.  Id. at 245.  This case is even easier.  As outlined above, the Banerjees reason for going to India was temporary in nature and they continually maintained their CT home and returned regularly.  Banerjee cannot demonstrate by clear and convincing evidence that his domicile ever changed from CT to India.  Therefore, even if the Court fails to find Banerjee established a PA domicile—which he did—the Court should still find that it has jurisdiction under 28 U.S.C. § 1332(a)(1) because Banerjee is CT citizen and still completely diverse from Sadis.

## III.   BANERJEE'S CONTRADICTORY ATTEMPTS TO EXPLAIN AWAY THE EVIDENCE ARE NOT CREDIBLE

Banerjee's self-serving testimony is not credible because his representations to this Court and prior sworn statements are "riddled with inconsistencies" and contradicted by the documentary evidence. See Apollo Fuel Oil v. United States, 195 F.3d 74, 76 (2d Cir. 1999) (upholding district court's finding that testimony was not credible).  For example,[22] Banerjee submitted an affidavit in this matter on December 18, 2018 making the following statements—now proven false:

- "I have not had U.S. income since 2009 and have not filed Pennsylvania state resident taxes as result." Ex. 7 ¶ 7.[23]  In truth, Banerjee earned US income in 2013 & 2014, e.g., Exs. 34 & 35, and filed PA state resident taxes for those years. Exs. 37 & 38.

- "From 2009 to 2016, I did not have a permanent mailing address in the US … did not have any bank accounts in the US." Ex. 7 ¶ 18.  In truth, Banerjee maintained his 23 Soundview CT address from 2009-2012, e.g. Ex. 2 at 8:8–9:5, and repeatedly used a Pittsburgh address from 2013-2016 in his lawsuit with Schiff, his tax returns, and on his Fidelity account statements. Exs. 25 at 1, 37 at 1, 38 at 1, 43 at 17, 46 at 2, 19 at 1, 23 at 1, 61-62, 65-66.

- "I did not have any interest in any corporate entities in the U.S." Ex. 7 ¶ 18.  In truth Banerjee had interests in multiple U.S. corporate entities, including Crossway, ZBAC,

---

[22] This listing is a sample of Banerjee's most egregious contradictory statements out of a much larger set.

[23] Banerjee made a similar false claim in his Response to Plaintiff's Opposition of Vacating or Setting Aside Default, Dkt. No. 65, in this matter. Ex. 31 at 13 (claiming Banerjee "does not earn in the US or pay any State or local taxes").

LLC, Commonfund II, Harvester Energy, SSA Advisors, SSA Capital, and an unnamed PA entity.  JS ¶ 21; Exs. 37 at 4, 91 at 2, 7, 29 at 4, 130, 95 at 4, 37 at 6, 46 at 13.

Perhaps most telling of Banerjee's false statements was his repeated misrepresentation to this Court in August through October of 2016—when the issue was proper service and not domicile—that he was still living in India and not Pittsburgh.  For example, on August 10, 2016, Banerjee filed a brief stating "Banerjee is not a PA resident" and "Banerjee continues to be permanent resident of India."  Ex. 31, Dkt. No. 65, at 3, 11.  On August 26, 2016, Banerjee filed a letter with the Court stating that "58/1 Ballygunje Circular Rd … remains my current permanent address."  Ex. 12, Dkt. No. 71, at 2.  And on October 6, 2016, Banerjee filed another letter with claiming he had received a document "at my home address in India."  Ex. 79, Dkt. No. 75, at 1.

Banerjee has since revealed that these claims were all false and he was already living with his family at 1514 Cook School before August 10, 2016.  First, his December 2018 affidavit states that Banerjee "resided in Kolkata, India from 2009 to **early** 2016."  Ex. 7 ¶ 10 (emphasis added).  At his deposition, Banerjee conceded that it was "true" that by "August 10, 2016" he was "already living together with [his] wife in Pittsburgh" and "no longer living in the 47-G apartment at 58/1 Ballygunje Circular Road."  Ex. 74 at 253:11-17; accord Ex. 87 at 25:7-14 (Akshita testifying that he moved back in "Sometime in the early part of the year"); JS ¶ 16 ("Since 2016, Banerjee has been domiciled … in Pittsburgh, PA.").

Banerjee has already demonstrated a willingness to mislead the Court on this matter.  Therefore, Court should not credit his self-serving and contradictory just-so stories.  See In re Adelphia Commc'ns Corp., 512 B.R. 447, 493 (Bankr. S.D.N.Y. 2014) (discounting testimony because it was "self-serving, contradicted by his previous testimony … and contradicted by the bulk of the documents").  Rather the Court should follow the overwhelming documentary evidence and find that Banerjee was domiciled in Pittsburgh, PA on February 13, 2014.

Dated:   New York, NY                         SADIS & GOLDBERG LLP
         July 10, 2020

                                              /s/ Ben Hutman
                                         _____
                                         By:   Ben Hutman
                                               551 Fifth Avenue, 21st Floor
                                               New York, New York 10176
                                               Telephone:  (212) 573-6675
                                               Cell: (914) 357-0731
                                               Email:  bhutman@sadis.com