**UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SADIS & GOLDBERG, LLP | Case no :14-cv-000913 (LTS) |
| Plaintiff | |
| vs. | |
| SUMANTA BANERJEE | |
| Defendant | |

REPLY BRIEF TO POST EVIDENTIARY HEARING

Table of contents                                    Page

| | | |
|---|---|---|
| Introduction | | 1 |
| I. | EVIDENCE – DOMICILE IN INDIA STARTING 2009 | 5 |
| II. | BANERJEE'S DOMICILE UNCHANGED—FAMILY BACK TO US | 10 |
| III. | BANERJEE AND WIFE SIGN SEPARATION AGREEMENT-MID 2012 | 10 |
| IV. | BANERJEE DOMICILE REMIAN IN INDIA | 14 |
| CONCLUSION | | 28 |

### UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SADIS & GOLDBERG, LLP | Case no :14-cv-000913 (LTS) |
| Plaintiff | |
| vs. | |
| SUMANTA BANERJEE | |
| Defendant | |

## INTRODUCTION

The claim in this case is allegedly unpaid legal fees Sadis & Goldberg ("SG" or "Sadis") had charged the Defendant, Banerjee ("SB" or "Banerjee"), on account of its work for him in Tuckerbrook Alternative Investments, LP v. Banerjee, an action in the District of Massachusetts.

1.  In 2008, SB was a 50% partner along with Tuckerbrook Alternative Investments, LP ("TB") in a Fund. In 2009, SB and TB (who provided back office support) had disagreements and there was a litigation for control of the Funds managed by SB. At that time, SB hired SG to represent him. During the start of the litigation, there came a time when SB pointedly asked Doug Hirsch of SG, what should be the total cost of fighting this litigation and Hirsh answered "should not be more than $100,000 **Ex. 137**[1] (Please see Exhibit submitted to this Court in 2016) It was then that SG and SB entered into an agreement authored by SG that would allow SG to be paid. The Pledge Agreement is included as **Ex. 136**.

2.  The Pledge Agreement allowed SG to foreclose on SB's GP interest in his fund to satisfy the SG's bills.

---

[1] This document has been presented before during the course of this litigation, it doesn't appear in the list that was presented to the court in the Joint Ex. List. Its number will be **Ex. 136**

3. Upon careful review of the bills provided by Sadis, there are several charges on SB's bill that were not his (See **Ex. 152**). This was not an isolated incident. This is an ethical abuse by SG/Doug Hirsch.

4. The Banerjee family had moved and was living and domiciled in India when SB reached out to SG (see **Ex. 136** Email trail and time stamps).

5. SG and its partner, Doug Hirsch, breached the Pledge Agreement - by not foreclosing on Banerjee's GP carried interest in the Fund and instead filed a litigation in NYSD in 2014.  The Pledge Agreement was drafted by SG/Hirsch and was negotiated for over a month so that SG could get paid their fees. The Initial Service was allowed by Alternate Means of FRCP by Hon Judge Laura Taylor Swain via email.

6. Banerjee was not aware of the Case since it was served to a defunct email address and that resulted in a Default Judgement.

7. The Default Judgment was subsequently overturned by the 2nd Circuit of Appeals and was remanded to the District Court to decide the domicile of Banerjee.

8. During the course of the case, SG/Doug Hirsch went so far as to file in the public domain, Court documents which contained the private personal information, such as social security numbers, birth dates, driver's license, tax information of Banerjee, his wife's, his minor children's in violation of ethical conduct and Privacy Laws. The goal was simply to harm Banerjee and his family.

9. Upon further in-depth review, he also discovered that SG/Hirsch had engaged in significant padding of his bills and was not only padding his bills by over 150K but also including other clients bills from 2014.  Banerjee will ensure that the unethical

tactics of this firm is reported to the relevant regulatory authorities (attached is the padded bill **Ex. 152**).

10. Banerjee will prove his domicile shift to India in 2009 beyond a shadow of doubt. A person's domicile persists until a new one is acquired or it is clearly abandoned. *Lew v. Moss,* 797 F.2d 747 (9th Cir.1986); *Mas v. Perry,* 489 F.2d 1396 (5th Cir.) *cert. denied,* 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70 (1974). There is a presumption in favor of the continuing domicile which requires the party seeking to show a change in domicile to come forward with enough evidence to that effect to withstand a directed verdict. *Lew v. Moss,* 797 F.2d at 751. While some opinions seem to imply that the burden of persuasion rests with the party attempting to show a change of domicile. The proper rule is that the party attempting to show a change assumes the burden of going forward on that issue. The ultimate burden on the issue of jurisdiction rests with the plaintiff or the party invoking federal jurisdiction.  J. Moore, Moore's Federal Practice § 0.74[3.3], n. 8, (1996) citing *Lew v. Moss,* 797 F.2d 747, 751 (9th Cir.1986); *Slaughter v. Toye Bros. Yellow Cab Co.,* 359 F.2d 954, 956 (5th 251*251 Cir.1966); *Gregg v. Louisiana Power & Light Co.,* 626 F.2d 1315 (5th Cir.1980). ***Sadis/Plaintiff now has the burden of proving that Banerjee's domicile shifted back to the US.***

11. Banerjee will suffer irreparable harm if denied the opportunity to litigate against this law firm and its Partner, Doug Hirsch. Banerjee was prevented from counterclaiming earlier. Banerjee will gladly settle for $50,000-75,000. Sadis can easily file the lawsuit using the "tolling statutes" of New York instead and then Banerjee could look forward

to litigating against them and counter claiming against them for the damages that they have caused.

12. These evidentiary hearing papers are a direct answer to the U.S. Court of Appeals for the Second Circuit remanding of the case back to the magistrate court to determine Banerjee's domicile in February of 2014. These Evidentiary Hearing papers will prove that Banerjee was in fact domiciled in India and as such there is no diversity of jurisdiction.

13. Natural persons can be sued in federal court under the diversity jurisdiction statute if they are either "citizens of a State," *see* 28 U.S.C. § 1332(a)(1), or "citizens or subjects of a foreign state," *see id.* § 1332(a)(2). "In order to be a citizen of a State within the meaning of the diversity statute, a natural person must be both a citizen of the United States and be domiciled within the State." *Newman-Green, Inc. v. Alfonzo-Larrain,* 490 U.S. 826, 828, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989). Important to this case, an ***American citizen domiciled abroad is not domiciled in a particular state***,[emphasis added]  and therefore such a person is not a citizen of any state—"stateless"— for purposes of diversity jurisdiction. *Swiger v. Allegheny Energy, Inc.,* 540 F.3d 179, 184 (3d Cir.2008). Thus, American citizens domiciled abroad ***cannot sue or be sued in federal court*** [emphasis added] under the diversity jurisdiction statute because they are neither "citizens of a state," *see* 28 U.S.C. § 1332(a)(1), nor "citizens or subjects of a foreign state," *see id.* § 1332(a)(2). *Id.*

14. Banerjee although a citizen of the United States, was not a citizen of a State (i.e. PA or CT or any other) at the time this case was filed and based on the law,

I.      **EVIDENCE—DOMICILE IN INDIA STARTING IN 2009.**

A. *The Banerjee family moves to India*

Banerjee and his wife lived in Connecticut from 1994-1995 and then again from 1997 to 2009. In Jan of 2009, the Banerjees decided to move. They changed their domicile to India and put their house on the market, but continued to visit the residence as a vacation home.  Despite the fact that Banerjee and his family moved to India, they still owned the property together as a residence until mid-2012, when the sole ownership of the residence shifted to Mrs. Banerjee. See. **Ex. 6**, at 6.

*(i)      Documents that prove that domicile had changed to India*

Banerjee and his wife owned the house together in Connecticut ("CT house") from 1997 until 2012, when the ownership shifted solely to Mrs. Banerjee. When the Banerjees moved to India, they listed their house on the market, and it was even rented for a period of time in 2013 until it was sold in late 2014 (closing was in early 2015). See **Ex. 100**, Lease of the CT house. While the house was empty, they visited from time to time during vacations, twice a year, as shown by passport stamps.

In January of 2009, Banerjee shifted his residency and his domicile to India along with the rest of his family. See **Ex. 111**.  In India, Banerjee and his family established their domicile:

a. *Indian bank accounts*, with a home address of 58/1 Ballygunje Cir Rd E**x.27,28**
b. *Indian bank savings account* **Ex. 114**
c. *Credit cards & debit cards of Indian banks* **Ex.27,28**
d. *Driver's License* **Ex. 99**
e. *Purchased real assets* (home furniture, a car), **Ex.140**- Banerjee purchased a car in Delhi large enough for his family of 5.
f. *Car registration and insurance* **Ex 110**
g. *Hired personnel* **Ex. 110, 115, 117**– Banerjee hired a driver- receipt of payments included.
h. *Enrolled his children in school*, **Ex.102**

i.  *Obtained employment*, **Ex.151**- Banerjee worked as a consultant for an Indian corporation, and was tasked with identifying and acquiring assets, globally. Mrs. Banerjee also obtained employment.

j.  *Started two business entities* **Ex.113**-Banerjee and his wife both started businesses and paid taxes for those entities. SASSA Partners and ZBAC Enterprises

k.  *Paid taxes*, **Ex.116**- Banerjee and his wife paid income taxes on their earnings

l.  *Joined local social clubs*, **Ex.109**- They joined social clubs in both Kolkata and Delhi. These clubs are exclusive to permanent residents of India.

m.  *Embassy Library Membership* **Ex 121**- This library was exclusive to American citizens in India with cultural programs for children.

n.  *Established a doctor-patient relationship*, **Ex. 138**- Banerjee needed hospitalization for a condition and was treated by local physicians in a local hospital.

o.  *Lab/Pharmacy for his medicines*. **Ex. 138**- Banerjee and his family used a national lab/pharmacy for their medication needs.

p.  *Got cell phones* **Ex. 112**- Obtaining a cell phone number requires proof of residency, identity and a bank account.

q.  *Resident life insurance policy*-sold by the Indian Government only to resident Indians. **Ex. 118**- Policy required one year of residency before underwriting

r.  *PAN Card* also known as "Permanent Account Number",[21.]  The PAN is required by all employers prior to being paid. It is similar to the U.S. Social Security card. Companies also are required to obtain a PAN, similar to a TIN or EIN. **Ex. 99**

s.  *Aadhar card*[3]- this is a newly created form of identity that was introduced in 2009 to try and create one number, verified by biometric data (eye scans) identification. Only Indians with domicile proof are eligible to receive this card.  **Ex. 99**

The Banerjee family had no intention of returning to the United States and listed their house on the market in January 2009. Once the property was sold (late 2014-2015), they had no other real estate assets in the United States, jointly.

The US District Court of Massachusetts in Boston regularly sent mail to Banerjee regarding another case, 1:12-cv-11643-LTS, at the Indian address of 58/1 Ballygunje

---

[2][1] This is a unique 10-digit alphanumeric identity allocated to each taxpayer by the Income Tax Department under the supervision of the Central Board of Direct Taxes (in India). It also serves as identity proof. PAN is mandatory  for financial transactions such as receiving taxable salary or professional fees, sale or purchase of assets above specified limits, buy mutual funds and more. The PAN number remains unaffected by change of address throughout India. In order to obtain a PAN number, an application is needed with proof of identity and address. The PAN allows the government to process employees tax payments by employers.

[3] An **Aadhaar card** is a unique number issued to every citizen in India and is a centralized and universal identification number. The Aadhaar **card** is a biometric document that stores an individual's personal details in a government database, and is fast becoming the government's base for public welfare and citizen services. Aadhaar Card enrollment is presently available to *residents in India* (emphasis added). OCI Cardholders who stay in India for a long time (over 182 days in twelve months immediately preceding the date of application for enrolment) and have an Indian address can also enroll for Aadhaar Card in India.
https://www.indiainnewyork.gov.in/pages?id=WEEvaENpL3VyK3BxTER3cTFYYVJqUT09&subid=TkxlMlU0MUpGWFdqbEM3cFNUZzhUUT09 .

Circular Rd Kolkata-19, included in the **Ex.153**. That Court was aware that Banerjee had moved to India. This Court also sent mail to the India address which is attached as **Ex. 153**-letter from the Court.

All the documents that Banerjee has provided to the court overwhelmingly demonstrate that the Banerjees shifted and that their new domicile was now India. The objective indicia of Banerjee and his family's actual residence and intent overwhelmingly show he was domiciled in *India starting in 2009.*

The black-letter law is that a US citizen domiciled abroad cannot be party to a diversity jurisdiction case. Under *Herrick Co. v. SCS Communs., Inc.,* 251 F.3d 315, 323-24 (2d Cir. 2001), the party invoking the Court's jurisdiction (here, Sadis & Goldberg) has the burden to prove an initial domicile, and if it meets that burden, then the other party has the burden to show a change of domicile that destroys diversity. The evidence strongly supports the view that Mr. Banerjee's domicile changed in 2009. He and his wife have testified that they moved to India with no intent to return. *See Brignoli v. Balch, Hardy & Scheinman, Inc.,* 696 F. Supp. 37, 41 (S.D.N.Y. 1988) (location of family is a factor in domicile analysis). Banerjee and his family resided in India. *See Willis v. Westin Hotel Co.,* 651 F. Supp. 598, 601 (S.D.N.Y. 1986) (residence is *prima facie* evidence of domicile). His employment, sources of income, and banking relationships have been exclusively in India since 2009.[4] *See Nat'l Artists Mgmt. Co. v. Weaving,* 769 F. Supp. 1224, 1228 (bank accounts and place of business or employment are relevant factors). See **Ex. 27, 28, 99**. He and his wife took jobs and enrolled their children in school. See **Ex. 102**. They leased an apartment in Kolkata and placed their Connecticut real estate

---

[4] With the exception of one US credit card account, and the balance of which never exceeded $1,000.00.

property on the market on January 28, 2009 with Halstead Real Estate, renting it out for a time (See Lease-100. 2013-2014) and eventually selling it. *See National Artists Mgmt. Co. v. Weaving,* 769 F. Supp. 1224, 1228 (location of real property is a relevant factor). Banerjee made the decision to sell his house in 2009, and it was never off the market until its sale in 2014 (closing happened in 2015). Banerjee ceased voting in Connecticut, *see Altimore v. Mount Mercy College,* 420 F.3d 763, 769 (8th Cir. 2005) (voting history is a relevant factor of domicile).  In fact, only in 2020 did Banerjee register to vote in the state of Pennsylvania, after a hiatus in voting of nearly 12 years.

The essential elements of domicile are "Residence in fact, coupled with the purpose to make the place of residence one's home."  State of Texas v. State of Florida, 306 U.S. 398, 424 (1939); Spanos v. Skouras Theatres Corp., 364 F.2d 161, 163 (2d Cir. 1966).  While a party's statements may supply evidence of intention, "they cannot supply the fact of residence," Texas, 306 U.S. at 425, are "subject to the infirmity of any self-serving declaration, and may frequently lack persuasiveness or even be contradicted or negatived by other declarations and inconsistent acts."  District of Columbia v. Murphy, 314 U.S. 441, 456 (1941).  Banerjee is able to substantiate his claims of change of domicile through his statements, actions and his relinquishment of his previous address for his new address in India.  As this Court has said:

> To ascertain intent, a court must examine the **entire course of a person's conduct** in order to draw the necessary inferences as to the relevant intent. … The party's own statements concerning his intentions are relevant, but they are of slight weight when they … are belied by **objective indicia of actual residence and intent**.  Nat'l Artists Mgmt. Co. v. Weaving, 769 F. Supp. 1224, 1227–28 (S.D.N.Y. 1991) (emphasis added).

In determining domicile, courts generally look at a variety of factors as objective indicia of actual residence and intent, including:

- the Defendant's "Current residence," <u>Kennedy v. Trustees of Testamentary Tr. of Will of Kennedy</u>, 633 F. Supp. 2d 77, 81 (S.D.N.Y. 2009), <u>aff'd</u>, 406 F. App'x 507 (2d Cir. 2010); *Banerjee has repeatedly and consistently maintained that his address in India was 58/1 Ballygunje Cir. Rd. Even the District Court of MA and NY have acknowledged and sent communication to that address*.

- where the Defendant "filed taxes" and the state "listed" as their "home state" on those taxes, <u>Krechmer v. Tantaros</u>, 747 F. App'x 6, 10 (2d Cir. 2018); *The Banerjees filed taxes in India from 2009- 2011 when they had income. They did not file US taxes during that time*.

- "location of brokerage and bank accounts," <u>Jelen v. United States Marshals Serv.</u>, No. 18CV680, 2020 WL 1503566, at *11 (S.D.N.Y. Mar. 30, 2020). *Banerjee did not open any brokerage accounts in India, but opened several bank accounts. Banerjee did have an IRA in the United States that he did not liquidate due to the penalties*.

- "membership in fraternal organizations, churches, and other associations," <u>Bank of India v. Subramanian</u>, No. 06-cv-2026, 2007 WL 1424668, at *3 (S.D.N.Y. May 15, 2007); *The Banerjee belonged to the family temple, the social clubs and several fitness facilities*.

- "places of employment or business." <u>Kennedy</u>, 633 F. Supp. 2d at 81. *In addition to being employed, both Banerjee and his wife started businesses in India.*

Again, here, each of the objective indicia set forth above show *Banerjee and his family established domicile in India in 2009.*

The Plaintiff is aware and has previously acknowledged that Banerjee was in fact domiciled in India. When this case's initial complaint was to be served to the Defendant, the Plaintiff pleaded and was approved to serve the Defendant via alternate means, i.e. email. In making his argument, the Plaintiff stated that Banerjee was "a citizen of….India, residing at 58/1 Ballyjunge Circular Road, Kolkata, West Bengal, India 700019". This is a judicial admission that binds Sadis & Goldberg through the course of the proceeding. *See Official Comm. Of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,* 322 F. 3d 147, 167 (2d Cir.2003). But despite this early position taken by the

13

Plaintiff, he has reversed himself and taken the view that really, Banerjee, was actually domiciled in the US, thereby establishing diversity.

Despite the Plaintiff's inconsistency in his positions, Banerjee reasserts and continues to maintain that his domicile changed in 2009 from the United States to India. His domicile did not change again until mid to late-2016, when he surrendered his apartment and established an address in PA.

## II.   BANERJEE'S DOMICILE UNCHANGED--FAMILY BACK TO THE U.S.

### A.   *Mrs. Banerjee changes her domicile to U.S. – CT and then PA:*

As stated in her deposition (Pg.7, line 21-23 deposition of Mrs. Banerjee), in mid-2011, Mrs. Banerjee and the couple's children moved back to the United States, initially to Connecticut and then to Pennsylvania, while *Mr. Banerjee remained in India*. He himself did not make the move as he was responsible for managing his family's real estate businesses. Mrs. Banerjee enrolled the children in the local US school system (see **Ex**. **102**-school records) first in CT and then in PA. Mrs. Banerjee also started the job search to re-establish her career in the United States after being in India for over 2 years. (see **Ex. 151**-employment emails).

## III.   BANERJEE AND HIS WIFE SIGN SEPARATION AGREEMENT- MID 2012

The couple had a serious difference of opinion about where the family should live, and that difference of opinion led to a separation formalized by a 2012 Separation Agreement ("SA") that included agreements on division of property and child custody. (**Ex. 6**, at 9 and 11). The SA was jointly *signed on June 19, 2012 and notarized on Sept 18, 2012.*

***It was a legal and binding contract***, signed by both parties with a witness. Like most states, Connecticut offers legal separation to couples as an option for ending a relationship. The process begins when one spouse files a motion (request), which should include the date of the wedding and separation and a statement that at least one spouse has lived in the state for a minimum of **12 months.**  There's no timeframe for a legal separation in Connecticut, meaning you can remain separated indefinitely or you can ask the court to terminate the agreement by filing a "declaration of resumption of marital relations." This SA was drafted by legal counsel as well.

The SA had contemplated all parts of a separation including (**Ex. 6** Introduction):

> *Sumanta Banerjee was residing at 23 [S]oundview [F]arm Rd. Weston, CT 06883, but is a **permanent resident at 58/1 Ballygunje Circular Rd. Kolkata, West Bengal, India 700019**, … and Akshita Banerjee of **23 Soundview Farm Rd, Weston, Connecticut 06883**, ….The parties agree this agreement contains a fair, just and equitable division of property and debts and is satisfactory to both parties. This Separation Agreement **will not be filed in Court at this time but will govern marital separation and remain in effect from the date signed.** Any formal separation or petition for divorce can be filed by either party  to this Separation Agreement, however, this Agreement and the arrangements hereunder will remain in force and cannot be altered or modified unless by mutual consent. If mutual consent cannot be obtained at the time of formal filing of Separation or Divorce, this Agreement and the arrangements hereunder will remain in effect in the formal Separation or Divorce filed with the Courts. (emphasis added).*

The SA also included the language below (**ex.6** at 19):

> *19. SUBMISSION OF AGREEMENT TO COURT. The parties each agree that this **Separation Agreement shall be submitted to the Court for a judge's approval of the terms and entry of Judgement of Divorce at a date to be determined by the parties.** However, this Agreement and the arrangement hereunder will remain in effect from the date of execution of this Agreement and form the basis of the separation of marriage. This will also be the operative document for the filing with the Court if determined by the parties for a formal grant of either Separation or Divorce. This Agreement can be terminated by mutual consent only.*

As a condition of the SA, the assets of the marriage were also split based on the SA (**Ex. 6** section 11a,b,c), such as (1) *Marital home* – surrendered to Mrs. Banerjee by virtue of the resignation of Banerjee from ZBAC LLC (**see Ex. 117**).  (2) *cars* – all surrendered to Mrs. Banerjee (3) *Other Assets* (**Ex. 6** section d) would include all the assets not explicitly stated such as brokerage assets and any bank accounts that were U.S. based, explicitly included in the Addendum to Separation Agreement (**Ex. 125**).

The Plaintiff seems to be confused when it comes to adding the number of years that were mentioned in the SA. We were in CT in 1994 and 1995 and then continuously from 1997-2009. The language of the SA does not state or require continuous years of residency. And until the house was sold, and from 1997 to 2012, the CT House was considered a joint residence and subsequent to that time, owned solely by Mrs Banerjee, as a result of the SA.

Mrs. Banerjee moved to Pittsburgh in 2012 after the signing of the legally binding Separation Agreement. While Banerjee departed to India, the CT house remained on the market and was rented out in 2013 until shortly before its sale in late 2014.  Mrs. Banerjee did not own any other real estate at that time (2012). Her domicile changed from Connecticut to Pennsylvania. Mrs. Banerjee restarted her domicile in the United States in CT in 2011 and then moved to Pittsburgh, PA in September of 2012. Banerjee returned to India in September of 2012.  As part of her shift back to the US, Mrs. Banerjee obtained PA Driver's License (**Ex. 159**), Started a new business venture with father (OH company) and established a company (see **Ex. 120),** new bank accounts (**Ex. 155),** participation and board seat member two non-profit organizations of Pittsburgh Youth Symphony and Wesley Spectrum (see **ex. 156**) and finally, purchased land and constructed a home with

an occupancy certificate  of mid-September 2014. (**Ex. 147** -Owners by Occ.) – joint ownership with father. The bank accounts in PA were only in her name while the house was deeded to Mrs. Banerjee and her father.

Here, each of the objective indicia set forth above show that Mrs. Banerjee shifted her domicile to the United States starting in 2011, first to CT and then to PA where she still remains, more than seven years later. ***Banerjee's domicile remained unchanged in India after the separation in 2012.***

As a result of the SA, one of the conditions of domicile were not longer applicable. The husband's domicile is with the wife and family assuming there has been ***no change or separation in the family dynamic.*** [emphasis added]  And although "no single factor is conclusive … the residence of a married person's spouse and children (***if the couple has not separated***) is given considerable weight."  [emphasis added] Nat'l Artists Mgmt. Co., 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991); accord Kenosha Unified Sch. Dist. v. Stifel Nicolaus & Co. Inc., 607 F. Supp. 2d 967, 974–75 (E.D. Wis. 2009) (citing Restatement (Second) of Conflict of Laws, Ch. 2, Topic 2, Special Note on Evidence for Establishment of a Domicil [sic] of Choice (1971)).  This factor applies even if the couple was "separated in fact" so long as "***the couple are not legally separated***." [emphasis added] Durst v. Siegler, No. 04 CIV. 6981 RMB, 2005 WL 3358599, at *7 (S.D.N.Y. Dec. 7, 2005). As mentioned previously, the SA was a **legally binding separation between the Banerjees.**

The SA was a legally binding contract between the Banerjees and as evidenced in SA at 19, it would form the basis of the Divorce in the future. Although a written separation

agreement is a *sine qua non* to a divorce, it is evidentiary in nature and admissible under general rules of evidence (*see Richardson, Evidence [Prince — 10th ed], § 643*). Generally, separation agreements which are regular on their face are binding on the parties, unless and until they are put aside (2 Foster & Freed, Law and the Family, p 476; see, also, *Schmelzel v Schmelzel, 287 N.Y. 21, 26*; 2 Lindey, Separation Agreements and Ante-Nuptial Contracts [rev ed], § 36, subd 1, p 36-3). In Banerjee's case the Separation Agreement was adhered to by the parties.

The Separation Agreement entered into in June of 2012, was a legal binding agreement, with both parties signing and agreeing to all parts of the contract. There was no evidence that at the time of that contract, that there would be a case on domicile of the Defendant two years into the future. The Plaintiff cannot surmise that the Banerjees planned to "separate" in order to avoid a Court case two years into the future. The burden of proof is on the Plaintiff to prove that Banerjee's domicile once again changed from India to the United States, in 2011. The Plaintiff cannot point to once concrete piece of evidence that shows **Banerjee has an US address**, a bank account, real property, company or any of the standard items of residency. **Banerjee's domicile of India remained unchanged in 2011.**

IV.     **BANERJEE DOMICILE REMAINS IN INDIA- 2011-2016**

Domicile is established by one's physical presence in a state—e.g., residence—and intent to remain there indefinitely. *Washington v. Hovensa LLC, 652 F.3d 340, 344 (3d Cir.2011)*. When determining a person's domicile, courts consider declarations; place of employment; exercise of political rights; payment of personal taxes; house of residence; place of business; location of brokerage and bank accounts; location of spouse and family; membership in unions and other organizations; and driver's license and vehicle

registration. _McCann,_ 458 F.3d at 286. "More generally, the court must locate the center of one's business, domestic, social and civic life." _Washington,_ 652 F.3d at 344 (citation omitted) (internal quotation omitted).

   After his family moved back to the United States, Mr. Banerjee continued to center his business life in India. He continued to work for the family trust and continued to consult with his former employer **(Ex. 143)** and had all of his banking accounts there. Banerjee's domicile had not changed. The list of his domicile evidence includes:

a. He leased an apartment **(Ex. 122,** paying lease document- started in June 2011) and

b. Banerjee still had all his Indian bank accounts- both credit cards, savings accounts and checking accounts. **(Ex. 27, 28)**

c. His saving accounts (the Passbook **Ex. 145**) continued to be updated monthly **(Ex.114)**

d. His cell phone was re-newed on a monthly basis (it was pay as you go service) **(Ex. 144)**

e. Banerjee maintained his car and driver, despite his extensive travel schedule.(see **Ex. 115**, car and registration). He did **not** own any car in the United States.

f. Banerjee continued to pay the taxes on his business – SASSA Partners and ZBAC Enterprises (these corporations were transferred to Banerjee as part of the SA, See **Ex. 6**, **at 12**, **Ex. 113** corp taxes receipt)

g. His Indian driver's license (**Ex. 99**) remained valid, though he retained his Connecticut driver's license as well (**Ex 99**).

h. Banerjee had no interest in any real estate in the United States (**Ex. 117**) .

i. Banerjee had no bank accounts in the United States. No 1099-INT to show that he received taxable interest from a savings or checking account.

j. Banerjee had handed all brokerage accounts to Mrs. Banerjee. (She changed access codes) See **Ex. 6** at 11

k. Passport pages did not always get stamped as Banerjee had an OCI, but USA stamps passport pages. (**Ex 13**)

   In the federal courts, including matters where Sadis & Goldberg represented him, Banerjee (see **Ex.153**) has consistently stated that he was domiciled in Connecticut until 2009 and that thereafter he was domiciled in India. Nothing changed for Banerjee when his family moved back to the United States. In addition, this Court continued to

communicate with Banerjee at his address of domicile in India. (See letters from the Court **Ex. 153**).

There was no change in Banerjee's domicile. He did not return permanently to live with his family, which caused the SA to be signed. He rented an apartment for himself when the family moved back in 2011, see **Ex. 122** Paying guest lease. Banerjee has consistently maintained that despite his travels, his domicile did not change; besides **his Indian address, he had no other**. Additionally, Banerjee used his Indian cards for his form of payment. He did not open a US bank account or obtain a US apartment, he was updated on mail he received in India when he spoke to his staff, and his car was maintained and serviced for Banerjee's use upon arrival back to India.

In *Wokman v DAIIE,* 404 Mich 477, 496-497*;* 274 NW2d 373 (1979); *Dobson v Maki*, 184 Mich App 244, 252; 457 NW2d 132 (1990). This Court stated that the following factors are also relevant in determining the domicile of an individual: (1) the person's mailing address; (2) whether the person maintains possessions at the insured's home; (3) whether the [insured's] address appears on the person's driver's license and other documents; (4) whether a bedroom is maintained for the person as the [insured's] home.; *Dairyland Ins Co v Auto-Owners Ins Co,* 123 Mich App 675, 682 333 NW2d 322 (1993). With regard to Banerjee, his mailing address of that of 58/1 Ballygunje Circular Road, Kolkata, India started in 2009 and remained the same until sometime in mid to late 2016. His bank accounts contained the address of Kolkata.  Banerjee maintained a car, an apartment, a house full of furniture, a driver and other possessions in India. He traveled globally but his possessions remained in India. ***His address never changed*** from 2009 onwards until sometime in 2016.

Even if Banerjee wanted to get domicile in the US, he could not satisfy any of  the prerequisites. According to Pennsylvania domicile requirements, included as **Ex. 146,** Banerjee would have to have (1) *a residence*, whether rented, leased or purchased a property that Banerjee has "***made a primary residence in this Commonwealth***." (2) A PA license (3)voter registration in PA (4) payment of state and local taxes. The Plaintiff cannot point to Banerjee satisfying any of the criteria.

Domicile has been defined generally as a person's "home" or permanent base of operations. "[H]ome is the place where a person dwells and which is the center of his domestic, social and civil life." Restatement of Conflicts 2d §§11, 12(1971) (quoted in 1 J. Moore, J. Lucas, et al., *Moore's Federal Practice* ¶ 0.74[3-3] at 707 .65 n. 21(2d ed. 1991) (hereinafter "Moore's Federal Practice"). The "[d]omicile of a person is the place where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning. Domicile therefore, has both a physical and  a mental dimension and is more than an individual's residence, although the two typically coincide." 13B C. Wright & A. Miller, *Federal Practice and Procedure* § 3612 at 525-27 (1984). Banerjee, despite all the locations to which he traveled, kept returning to India, where his permanent home was located. India was the only address that he could point as his from 2011 onwards.

Here in Banerjee's case, his intent was to return to India as that is where his possessions were, where his doctor was located, where his bank accounts were located, where his social clubs were located, where is driver and car were located, where he had a place that he called his own and where mail was delivered, including communication from the Court.  While traveling to visit his children, which he did often and for long periods,

something that Banerjee has consistently maintained, he stayed with his cousin in Pittsburgh. When Banerjee was in New York for work purposes, on behalf of an Indian family trust, he stayed with his aunt in eastern PA and when travelling in Canada, he stayed with another cousin. See **Banerjee deposition at pg 39, line 2**.

In <u>Bevilaqua v. Bernstein,</u> 642 F. Supp. 1072, 1074 (S.D.N.Y. 1986) (Weinfield, <u>J.).</u> "Although intent is crucial to domicile, mere subjective statements of affiliation with a particular state or of an intent to make it one's home, of course cannot suffice for a finding of state citizenship if such statements are believed by objective indicia of actual residence and intent." <u>Willis v Westin Hotel Co.,</u>598, 601 (S.D.N.Y. 1986).  Banerjee had no other residence besides his India domicile, despite the allegations made by the Plaintiff.

## V.    MISLEADING/MISREPRESENTATIONS BY PLAINTIFF -DOMICILE NEVER CHANGED – NO EVIDENCE.

### A.  *Mrs. Banerjee's legal dispute with a contractor that she hired to work on her house*

Mrs. Banerjee and her father purchased land in 2013 ( see **Ex. 104**) and were planning to live in a joint family structure prevalent in their family. The land and house located at 1514 Cook School Rd. ("PA house") is deeded only to Mrs. Banerjee and her father. Banerjee never had any ownership of that land or house. (see Mrs. Banerjee's declaration)

During the course of the construction of her house, Mrs. Banerjee got into a dispute about the quality of the work of a contractor that she had hired to work on her house. (**see Ex. 19**, counterclaim). This contractor incorrectly assumed that Banerjee was an owner of the home, simply because he was tasked with supervision (while he was visiting Pittsburgh). Mrs. Banerjee was the one who signed his contract and the one who

22

paid for the work (**Ex.23**). After Mrs. Banerjee fired the contractor for his subpar work and damage that he caused to the newly installed plumbing, he decided to sue. He included Banerjee on the claims. Due to Mrs. Banerjee's lack of legal knowledge of Small Claims Court, she filed a counterclaim and included Banerjee as a counterclaimant. Mrs Banerjee was the one who wrote the counterclaim in her own handwriting (see. **Ex.19**). Mrs. Banerjee erred in the inclusion of Banerjee in her filings. The Plaintiff has represented that Banerjee "lived" in Pittsburgh, but fails to present the address that he is referring to. He states that Banerjee stayed in "Pittsburgh" but fails to clearly state the address. In the Affidavit of Dr. Gandhi, **Ex 123,** he categorically states that Banerjee never stayed at 304 Harvester Circle. Mrs Banerjee's house was not even ready to occupy until late September (see **Ex. 147)** as shown by the Occupancy certificate.

A person can sue another in Small Claims Court, even if the defendant is not domiciled in the state where the incident took place. So technically, the contractor was allowed to file a case against Banerjee, but Mrs. Banerjee's mistake was continuing to include Banerjee in any counterclaim argument against Schiff. Again, this instance of a contractor's mistake of assuming that just because Banerjee was tasked with ensuring that the work was being performed correctly, *it somehow made his domicile the United States.* Banerjee never received any notification of the case, only Mrs Banerjee received notification and took action. *In fact,* the certified envelopes from Schiff, the contractor, sent to Banerjee were returned to Sender (Schiff) as Banerjee did not reside at the address that the envelopes was mailed to. (see **Ex. 157)** There were two envelopes, one addressed to "1415 Cook School Road," and one to "304 Harvester Cir," both were returned.

As in previous assertions by the Plaintiff, this far-reaching notion introduced by the Plaintiff that a Small Claims Court case against a someone makes them a U.S. domiciled person is ludicrous. Additionally, Mrs. Banerjee response with a counterclaim was her own decision and in her own handwriting and should not be construed as an indication of ownership or residency of Banerjee. Additionally, the incident that the Plaintiff is discussing happened towards the end of 2014, and there was no "our" house as the Plaintiff alleges, as the occupancy certificate (See **Ex. 147)** was dated on 9/14/2014. Even if the Plaintiff can make the case that Banerjee was domiciled in PA based on the fact that because someone included him in a civil suit, the time frames are do not sync to the decision that this Court has been tasked to make---where was Banerjee domiciled at the start of this case, mid-February of 2014.

### B.  *Banerjee's traffic violations in PA in 2013, 2015, 2016—not 2014.*

Banerjee received some traffic violations while driving around Pittsburgh. His license that was produced at the time of those violations had the address of Weston, CT (see **Ex. 99**, CT license). The registration and insurance of the car that he was driving (owned by Mrs. Banerjee's father) listed the address of the car as 304 Harvester. Please see **ex. 148**. Banerjee's CT license had validity until 2020 and a CT address (see **Ex. 99)**.  The police officer used the car registration as the "home" address of Banerjee. The standard procedure of the police is to take the license, insurance and registration of the car (see **Ex. 148**). But in this case, the address put on the license was the most prevalent one, the local address in Pittsburgh where he was driving. The car that Banerjee was driving was not his, rather it was the car of Anant Gandhi, the registration holder.

Even if Banerjee had wanted to get a PA license, he was not even eligible to get a PA license, he could not meet the criteria. The documents

> "… must show the same name and date of birth, or an association between the information on the documents. Additional documentation may be required if a connection between documents cannot be established (e.g. Marriage Certificate, Court Order of name change, Divorce Decree, etc.). In addition, you will need to show proof of identification and residency and your Social Security card." PA DMV website for requirement to get a license.

The fact that Banerjee received a ticket, in early 2013, is *not relevant* to the case at hand, which is focused on the domicile of the Defendant in February 2014. Furthermore, Banerjee has maintained that he did in fact visit the United States often but those visits do not constitute domicile, if there is no corresponding address where Banerjee identifies as "home".   Banerjee had no address in the US.

The Plaintiff also points to tickets received in 9/15/15 and 2/3/16, over one and two years, respectively, after the time that this pleading is focused on. This is yet another instance of the Plaintiff stating facts that are *completely irrelevant* to the matter at hand in order to mislead the Court. While Banerjee's domicile remained in India, he was not even able to obtain a PA license due to the fact that ***he had no address proof*** to provide to the Dept. of Motor Vehicles.

## C. Mrs Banerjee's Financial Accounts Evidence a PA Domicile for Her

### (i)  Banerjee's Fidelity accounts

As part of the SA, Banerjee gave control and possession of any and all U.S.-based assets to Mrs. Banerjee, see **Ex. 6** at 11d. The Plaintiff was well aware of the ownership of those assets as he had seen the SA in several pleadings and motions. The Plaintiff 's Document list listed documents that are within the possession, control and access of the

Defendant. These assets were no longer Banerjee's assets. The previous counsel of Banerjee made this assertion several times, but obviously it fell on deaf ears because the Plaintiff's primary objective is to confuse and mislead the court in order to try to make his case. Banerjee didn't even have access to those assets online and he didn't receive any of those statements, they went to Mrs. Banerjee's address. Banerjee didn't manage those accounts, he left them to the control of Mrs. Banerjee as part of the SA which was dated June 19, 2012, **Ex. 6**. Mrs. Banerjee states in her declaration, that she changed all the online access to those accounts and did not give that information to Banerjee as those assets were no longer his (**see Ex. 125**).

Banerjee did not need to "transfer" the assets to his wife's name, access was all that she needed to have control of them to use as needed.

*(i)      Banerjee's Debit and Credit card use in the United States*

The address on all of Banerjee's accounts, the checking, savings and credit – were all titled with the address that Banerjee has consistently maintained to be his permanent domicile since 2009. Banerjee produced his debit and credit card statements as per the request of the Plaintiff. Banerjee concedes that they were initially redacted. But to reiterate, the Plaintiff has shown that he is incapable of being a morally and ethically upstanding person, despite being tasked with those traits as an attorney. Banerjee was concerned that the Plaintiff would use any and all information obtained from those statements against his family, based on past experience. However, Banerjee did provide the non-redacted copies of all the statements for all accounts, with the exception of one, which has been explained to this court to be outside the control and possession of Banerjee.

The Plaintiff fails to draw attention to the fact that all the debit and credit cards are addressed to the Defendant at his India address, not CT or PA. These credit cards' statements did not come to any address in the United States or even Mrs. Banerjee. They were mailed to Defendant's permanent address, ***his domicile, in India***.

Additionally, again, as part of the SA **Ex. 6**, Banerjee provided the debit and credit cards to Mrs. Banerjee so that she could use them for herself and the children's needs as well as anything that she might need. The address of the credit cards and the debit cards was Banerjee's only address, India.

**D. Banerjee's Board Membership in Fraternal and Business Organizations and formation of business evidence a Pittsburgh Domicile.**

*(i)      Pittsburgh non-profit organizations*

As a result of Banerjee's reputation, his involvement was sought by nonprofits based out of Pittsburgh. During his career, Banerjee had visited Pittsburgh for several transactions and had made many contacts.

The Plaintiff included in his exhibits a website snapshot of the list of Board Members of some of a non-profit organization. See Deposition of Sumanta Banerjee taken 2/14/2019, where he states that Pg. 52 lines 9-23. The organization had asked Banerjee to join and he attended one or two meetings, but was not able to commit to as he could not attend the regularly scheduled meetings. Forbes Funds and MIT Enterprise had many members in common.

MIT Enterprise Forum was another organization that tried to recruit Banerjee. MIT's members included Banerjee on their website, but upon further inspection, one will notice that under "Sam Banerjee" there is *no* bio. It is blank. Despite his declination of the offer of board membership, they placed his name on the website, with the bio section blank.

As mentioned previously, despite requests for Banerjee to join these organizations, he did not join. And his domicile did not change. Additionally, membership in these organizations required to fee to become a member, and he did not pay to join.

Banerjee formed Crossway Yield Partners with the expectation that it would be used for investment opportunities, as stated in Banerjee's deposition at Pg 57 line 3. Banerjee closed down the entity when it was apparent that no investments would be made by the Indian family trust.

Banerjee has never denied being in the United States, nor has he denied that he spent time in PA. *He simply never changed his domicile from India to the United States until 2016*. During all his travels, he continued to return to India to his single residence, his apartment in Kolkata, India that was his "home." In the United States, he did not rent an apartment, buy furniture, open bank accounts, get credit cards, or obtain a PA license— he had no address with which he could even get a US license[5]. He did none of the things that would indicate that he had, in fact, changed his domicile back to the United States.

### E.  Business entities that Banerjee had no interest

In 2014, Mrs. Banerjee formed Harvester Energy, an entity based in Ohio. The Plaintiff, again, erroneously included in the exhibits, a registration that was incomplete as the formation documents were not signed and without a signature they are invalid. The Amended version of the formation of Harvester Energy can be found in **Ex. 120**.  Harvester Energy was owned by Harvester Partners.

SSA Capital Advisors is a Delaware LLC that was started by Mrs. Banerjee in May of 2014. Banerjee has no ownership thereof and received no financial consideration from

---

[5] The Dept of Motor Vehicles requires proof of address prior to being given a license.

that entity. Banerjee was given an unregistered corporate email but not until 2016, after reconciliation. Banerjee did serve as a senior advisor to SSA Capital Advisors after the Banerjees reconciled in late 2016.

SSA Capital Partners is a partnership that invests real estate which was started in 2015. This entity was formed after the relevant period of this pleading. Again, the Plaintiff is including information that is irrelevant to the matter at hand of domicile proof in 2014.

The Plaintiff references "an unnamed PA S Corporation or LLC" for which he reported a loss and income in state tax returns in 2013 and 2015, which the Defendant has no idea what he is referencing. Banerjee has no affiliations with any PA S corporation or LLC. If the Plaintiff can provide any proof to the contrary, the defendant would welcome an opportunity to understand what he is referencing.  Please see redacted **ex. 149.** which is the **actual copy of the 2015 taxes** with the actual signature of tax professional. Also see note from tax professional who explains that the date on the return, is the date that it is printed, not the date of the filing with the Revenue Service. (see **Ex. 158)**

The Plaintiff makes frivolous, erroneous, inaccurate statements and outright lies without any basis of fact in order to mislead the Court as seen from the above shell again.

**F.  Tax Returns, on a stand-alone basis are not sufficient to prove domicile.**

*(i)  Banerjee 2013 tax returns*

Banerjee and his wife filed joint taxes for 2013. For the time period between 2010 and 2012, Banerjee and his wife did not file any US federal or state taxes. When Mrs. Banerjee did file the taxes in 2013, she filed them late, and incorrectly.  She used a tax program that calculated her return. As she has maintained during affidavits and also during her deposition, she made several mistakes, signed Banerjee's name and placed the address

where the IRS could reach her, in the event of any issues, as the address on the return. The 2013 taxes were filed jointly, with a filing date of 2014. Please see **Ex. 25,** although the copy is hard to read.

As previously mentioned and repeated, Mrs. Banerjee had already changed her domicile from India to the United States effective in 2011, late spring. Additionally, the taxes in 2013, were only the earnings of Mrs. Banerjee, as Banerjee had no earnings in the United States. See W2 of Mrs Banerjee, **ex.124**.

The fact that Mrs. Banerjee filed the returns incorrectly is not an indication that Banerjee was domiciled in PA. A US citizen is required to file taxes (if there were earnings above a certain dollar threshold) regardless of where they are domiciled. The filing of US taxes as a stand-alone activity does not show domicile. US citizens are required to file taxes if income level warrants.

Since 2009, Banerjee has been domiciled in India. Banerjee filed taxes in India from the time frame of 2009 onwards. He had bank accounts, doctors, club memberships, a job, a home, a car, only Indian credit cards, an Aadhaar card- given only to residents, a PAN card which allows him to earn income in India that will be taxed, and a resident life insurance policy (only available to residents of India, not visitors).

*(ii) Banerjee 2014  tax returns*

Banerjee and his wife filed separate returns as Mrs. Banerjee obtained professional aid in filing. Mrs. Banerjee gave all the information to the tax preparer and they prepared the both federal and state returns. All the forms (both Federal and PA state returns) were filed on October 16, 2017 which the Plaintiff acknowledges in Dk. 200 pg. 3. (**see Ex.150** – Client copy of the filed return and mail proof)

Plaintiff then goes on to *incorrectly* state that, the taxes were "actually filed on November 1, 2018" in Dk, 200 pg. 4. Despite having proof that the taxes were actually filed on 10/16/2017 and stating so on the previous page. This tactic of trying to confuse, obscure, obfuscate and blatantly lying seems to be the Plaintiff's one modus operandi. (**see Ex.150** – Client copy of the filed return and mail proof)

The 2014 taxes were filed separately. The earnings on those taxes were Mrs. Banerjee's income only as represented on her W2's. (see **Ex 124**, redacted for SS number). Banerjee filed his taxes but only had the earnings from his brokerage accounts, which was minimal. The address on the taxes was correct for Federal but initially incorrectly filed in PA. The tax preparer did file an appeal stating that the returns filed for PA were incorrect because Banerjee was NOT a resident of PA. (See **Ex. 106**).

## G. Banerjee was NOT in the United States for the vast majority of 2013 & 2014

*(i)     Passport stamps*

Banerjee has consistently maintained that he traveled extensively in India, the United States and Canada from 2013 onwards. Banerjee has also consistently maintained that despite his travels, he has no address *other than India*, all his mail went to India, including credit and debit card statements.  As his family had already changed their domicile to the United States, and as a result of the separation agreement, he had no ties to anywhere except India.

Banerjee made several trips to Canada to visit and evaluate investment opportunities, staying with relatives. While in Pittsburgh, Banerjee had relatives that he stayed with when he was visiting his children. He didn't stay with his family at 304

Harvester Cir as his in-laws house was too small. (see. **Ex. 123** affidavit of Gandhi). While in New York for Trust work, he stayed with relatives who lived closed to NYC.

**Despite Banerjee's extensive travels, his domicile did not change. India was still his singular address.** The Plaintiff has not been able to show **an address for Banerjee in the United States, specifically PA**. All he has done is make misleading, erroneous statements and outright lies about "evidence".

A person's domicile persists until a new one is acquired or it is clearly abandoned. *Lew v. Moss,* 797 F.2d 747 (9th Cir.1986); *Mas v. Perry,* 489 F.2d 1396 (5th Cir.) *cert. denied,* 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70 (1974). There is a presumption in favor of the continuing domicile which requires the party seeking to show a change in domicile to come forward with enough evidence to that effect to withstand a directed verdict. *Lew v. Moss,* 797 F.2d at 751.

Again, the totality of the evidence must be considered in order to make a determination of the domicile of the Defendant. As Banerjee has stated and proven several times, the Plaintiff has lied, told half-truths, and misstated facts to suit his story. In doing so, he has misled the Court by asking the Defendant questions then he misstates the answers that were recorded in a deposition or affidavit. The Plaintiff continues to demonstrate a complete and utter lack of morality. He has placed with malice, personal information of the Defendant and his family in the public domain over and over again. The reprimand of the Court doesn't seem not to be a strong enough deterrent to the repetition of the behavior.

## CONCLUSION

**Please see Ex. 160.**   The Defendant, Banerjee has provided evidence of the change of his domicile in 2009 from the United States to India. The proper rule is that the party

attempting to show a change assumes the burden of going forward on that issue. The ultimate burden on the issue of jurisdiction rests with the plaintiff or the party invoking federal jurisdiction. J. Moore, Moore's Federal Practice § 0.74[3.3], n. 8, (1996) citing *Lew v. Moss,* 797 F.2d 747, 751 (9th Cir.1986); *Slaughter v. Toye Bros. Yellow Cab Co.,* 359 F.2d 954, 956 (5th 251*251 Cir.1966); *Gregg v. Louisiana Power & Light Co.,* 626 F.2d 1315 (5th Cir.1980). ***The Plaintiff now has the burden of proving that Banerjee's domicile shifted back to the US, which he has not done since Banerjee has proven overwhelmingly that Banerjee's domicile shifted to India in 2009. Plaintiff has not demonstrated or shown that Banerjee had an address, bank accounts, driver's license, club memberships, a job, or real assets (car, furniture, etc.) in the US from 2009 onwards. He has fallen woefully short of providing any evidence that Banerjee was domiciled in PA on February 13, 2014.***

The Plaintiff has demonstrated a willingness to mislead the Court on this matter. Therefore, Court should not credit his self-serving and contradictory statements, stories and fabrications. See In re Adelphia Commc'ns Corp., 512 B.R. 447, 493 (Banr. S.D.N.Y. 2014) (discounting testimony because it was self-serving, contradicted by his previous testimony…and contradicted by the bulk of the documents"). Rather the Court should follow the overwhelming documentary evidence and find that indeed Banerjee was domiciled in India on February 13, 2014.

Dated: February 5, 2021      Pittsburgh, PA


Sumanta Banerjee

/s/ Sumanta Banerjee
1514 Cook School Road
Pittsburgh, PA 1524
Cell: (203)501-0707